STATE OF NORTH CAROLINA

COUNTY OF CARTERET

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV001780-150

GRADY F. SMITH and WAVETAMER
GYROS, LLC,

          Plaintiffs,

vs.

SUTTON NATIONAL INSURANCE
COMPANY; KEMAH CAPITAL
HOLDING, LLC d/b/a KEMAH
MARINE; MARKS INSURANCE
GROUP, INC. d/b/a MARKS MARINE
INSURANCE AGENCY; and KENNETH
MARKS,

          Defendants.

## NOTICE OF REMOVAL TO FEDERAL COURT

      PLEASE TAKE NOTICE that Defendants Sutton National Insurance Company and Kemah Capital Holding, LLC d/b/a Kemah Marine, by and through their undersigned counsel, have removed this action to the United States District Court for the Eastern District of North Carolina, Eastern Division. A copy of the Notice of Removal filed with the Federal Court is attached hereto as **Exhibit A**.

**<span style="color:red">Exhibit 1</span>**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No.

| | |
|---|---|
| GRADY F. SMITH and WAVETAMER GYROS, LLC,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>SUTTON NATIONAL INSURANCE COMPANY; KEMAH CAPITAL HOLDING, LLC d/b/a KEMAH MARINE; MARKS INSURANCE GROUP, INC. d/b/a MARKS MARINE INSURANCE AGENCY; and KENNETH MARKS,<br><br>　　　　　　Defendants. | **<u>NOTICE OF REMOVAL</u>** |

PLEASE TAKE NOTICE that Defendants, Sutton National Insurance Company ("Sutton") and Kemah Capital Holding, LLC d/b/a Kemah Marine ("Kemah") (Sutton and Kemah are collectively "Defendants"), by and through the undersigned counsel of record, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and Rule 81 of the Federal Rules of Civil Procedure, respectfully remove the above-entitled action from the Superior Court of Carteret County, North Carolina.  In support of such removal, Defendants state the following:

1. On or about June 30, 2025, Plaintiffs filed their Verified Complaint in the Superior Court of Carteret County, North Carolina (File No. 25CV001780-150 ("Superior Court Action")).

2. Defendants Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Agency and Kenneth Marks were dismissed from the Superior Court Action on 30 July 2025, and only

**Exhibit A**

Sutton and Kemah remain as Defendants in the Superior Court Action.

3. Plaintiffs allege multiple causes of action against Defendants including: Fraud, Constructive Fraud, Breach of the Implied Covenant of Good Faith and Fair Dealing, Unfair and Deceptive Trade Practices, Unjust Enrichment/Quantum Meruit, Breach of Contract, Judicial Estoppel, Negligence, Negligent Misrepresentation and Declaratory Judgment.

4. Defendants were purportedly served on July 2, 2025.

5. The United States District Court for the Eastern District of North Carolina has original jurisdiction over the Superior Court Action pursuant to 28 U.S.C. §§ 1332(a), and it may be removed by Defendants pursuant to 28 U.S.C. § 1441(b) and 28 U.S.C. § 1446 for the following reasons:

   a. At the commencement of this action and at all relevant times, Sutton was a foreign corporation existing under and by virtue of the laws of the State of Oklahoma, with a principal place of business in Delray Beach, Florida.

   b. At the commencement of this action and at all relevant times, Kemah was a limited liability company existing under and by virtue of the laws of the State of Texas, with a principal place of business in League City, Texas. Kemah has two individual members, with one domiciled in Texas and the other domiciled in New York. As such Kemah is a citizen of Texas and New York, by virtue of its members' citizenship.

   c. At the commencement of this action and at all relevant times, upon information and belief and as alleged in Plaintiffs' Complaint, Plaintiff Grady F. Smith was a citizen and resident of Pitt County, North Carolina.

d. At the commencement of this action and at all relevant times, upon information and belief and as alleged in Plaintiffs' Complaint, Plaintiff Wavetamer Gyros, LLC ("Wavetamer") was a limited liability company existing under and by virtue of the laws of the State of North Carolina, with a principal place of business in Carteret County, North Carolina. Upon information and belief and as alleged in Plaintiffs' Complaint, Wavetamer's sole member is Plaintiff Grady Smith, who alleges that he is a citizen and resident of Pitt County, North Carolina. As such, upon information and belief, at the commencement of this action and at all relevant times, Wavetamer was a citizen of North Carolina, by virtue of its sole member's citizenship.

e. Upon information and belief, the incident as alleged in the Superior Court Action occurred in Carteret County, North Carolina.

f. The matter in controversy between Plaintiffs and Defendants is one in which complete diversity of citizenship exists.

g. Defendants are filing this removal within the 30-day time period provided under 28 U.S.C. § 1446(b)(3) based on the service date of July 2, 2025.

h. Upon information and belief, while reserving all defenses and rights of Defendants to maintain otherwise in the defense of Plaintiffs' claims, the amount in controversy between Plaintiffs and Defendants in this action, exclusive of interest and costs, exceeds $75,000.00 as evidenced by: (i) paragraphs 39 and 139 of the Complaint in the Superior Court Action which allege that "Plaintiffs' loss, in excess of $600,000.00…", and "Mr. Smith experienced a loss, in excess of $600,000.00…"; (ii) Plaintiffs are prohibited in the State Court Action from alleging a specified

quantum of damages greater than $25,000.00 except to say that the damages are greater than $25,000.00 (N.C. Gen. Stat. § 7A-243); and (iii) as otherwise may be shown if and as appropriate in this action.

6. The United States District Court for the Eastern District of North Carolina, Eastern Division, embraces the District in which the Superior Court Action is now pending: Carteret County. Therefore, the undersigned files this Notice of Removal from the Superior Court of Carteret County, North Carolina, to the United States District Court for the Eastern District of North Carolina, Eastern Division.

7. In accordance with 28 USC § 1446(a), Defendants attach all process, pleadings, and Orders as Exhibits hereto. *See* Exhibits 1–11.

8. Written notice of the filing of this Notice will be served upon Plaintiffs in this action, through counsel, as required by law.

9. A copy of this Notice of Removal is being submitted for filing with the Clerk of the Superior Court of Carteret County, North Carolina, contemporaneously with the filing of this Notice of Removal.

WHEREFORE, Defendants respectfully request that this action be removed from the Superior Court of Carteret County, North Carolina to the United States District Court for the Eastern District of North Carolina, Eastern Division, and request that this Court assume jurisdiction over this action and proceed to final determination thereof.

Dated: 31 July 2025

CLARK, NEWTON & EVANS, P.A.
/s/ Seth P. Buskirk
N.C. State Bar No. 36664
509 Princess St.
Wilmington, NC 28401
(910) 762-8743 Telephone
(910) 762-6206 Fax
spb@clarknewton.com
*Attorney for Defendants Sutton National Insurance*
*Company and Kemah Capital Holding, LLC d/b/a*
*Kemah Marine*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and will send the foregoing document via email to the following:

James M. Ayers, II
Jack W. Ayers
Ayers & Haidt, P.A.
307 Metcalf St.
New Bern, NC 28563
jim@ayershaidt.com
jack@ayershaidt.com
*Attorneys for Plaintiffs*


Dated: 31 July 2025

CLARK, NEWTON & EVANS, P.A.
/s/ Seth P. Buskirk
N.C. State Bar No. 36664
509 Princess St.
Wilmington, NC 28401
(910) 762-8743 Telephone
(910) 762-6206 Fax
spb@clarknewton.com
*Attorney for Defendants Sutton National Insurance Company and Kemah Capital Holding, LLC d/b/a Kemah Marine*

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

GRADY F. SMITH and WAVETAMER GYROS, LLC,

**DEFENDANTS**

SUTTON NATIONAL INSURANCE COMPANY; KEMAH CAPITAL HOLDING, LLC d/b/a KEMAH MARINE

**(b)** County of Residence of First Listed Plaintiff    Pitt County, NC
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Palm Beach County, FL
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ayers & Haidt, P.A., 307 Metcalf St., New Bern, NC 28563, (252) 638-2955

Attorneys *(If Known)*

Clark, Newton & Evans, P.A., 509 Princess St., Wilmington, NC 28401, (910) 762-8743

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(a)

Brief description of cause:
Alleged Breach of Marine Insurance Contract and Related Causes of Action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $600,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE    31 July 2025

SIGNATURE OF ATTORNEY OF RECORD    /s/ Seth P. Buskirk

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)  County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)  Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.  Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.  Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.  Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.  Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.  Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.**  This section of the JS 44 is used to reference related cases, if any.  If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

EASTERN ▾ DIVISION

No. _____

GRADY F. SMITH and WAVETAMER GYROS, LLC, )
)
)
Plaintiff(s), )
)
)
v. )
)
SUTTON NATIONAL INSURANCE COMPANY; )
KEMAH CAPITAL HOLDING, LLC d/b/a KEMAH )
MARINE; MARKS INSURANCE GROUP, INC. d/b/a )
MARKS MARINE INSURANCE AGENCY; and )
Defendant(s). )

**SUPPLEMENTAL REMOVAL COVER SHEET**

　　The removing party must complete this Supplemental Removal Cover Sheet and comply with Local Civil Rule 5.3. Attach separate sheets as necessary to provide complete responses.

## Section A—Plaintiffs

List the full name of each plaintiff from the state court action and indicate whether the plaintiff is pending (i.e., in case currently), dismissed, or otherwise terminated at the time of removal. If dismissed or terminated, indicate the date of dismissal/termination

| Full Name of Plaintiff | Pending at time of removal – Yes/No? | Dismissed or terminated? Yes/No? | Date of Dismissal or Termination |
|---|---|---|---|
| GRADY F. SMITH | yes | | |
| WAVETAMER GYROS, LLC, | yes | | |
| | | | |
| | | | |
| | | | |

## Section B—Defendants

List the full name of each defendant from the state court action and indicate whether the defendant is pending, dismissed or otherwise terminated at the time of removal. If dismissed or terminated, indicate the date of dismissal/termination. If known, indicate if and when each defendant was served with process and whether the defendant joins in the removal.

| Full Name of Defendant | Pending at time of removal? Yes/No? | Dismissed or terminated? Yes/No? (If yes, state date of termination) | Has defendant been served with process? Yes/No/Unknown? | If served with process, date of service? | Does the defendant join in removal? Yes/No? |
|---|---|---|---|---|---|
| SUTTON NATIONAL INSURANCE COMPANY | yes | no | yes | 07/02/2025 | yes |
| KEMAH CAPITAL HOLDING, LLC d/b/a KEMAH MARINE | yes | no | yes | 07/02/2025 | yes |
| MARKS INSURANCE GROUP, INC. d/b/a MARKS MARINE INSURANCE | no | yes - 07/30/2025 | yes | 07/02/2025 | n/a |
| KENNETH MARKS | no | yes - 07/30/2025 | yes | 07/02/2025 | n/a |
| | | | | | |
| | | | | | |

## Section C—Removal pursuant to 28 U.S.C. § 1442(d)(1)

Is only part of the state court action being removed pursuant to 28 U.S.C. § 1442(d)(1)?
Yes _____      No __✔__

If "Yes," specify what portion of the state court action is being removed, and then proceed to the signature page. If "No," proceed to Section D.

_____

_____

_____

2

## Section D—Pending State Court Motions as of Date of Removal

Is there currently a temporary restraining order or preliminary injunction in place in this action from state court?  Yes _____       No ___✔___

List every known motion pending at the time of removal.  Indicate the name of the filer, the date of filing, whether the motion has a supporting memorandum, and whether the motion is time sensitive, such as a motion for preliminary injunction.

| Title of Pending Motion | Name of Filer | Date of Filing | Memorandum-- Yes/No? | Time sensitive? Yes/No? |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

## Section E—Scheduled State Court Hearings as of Date of Removal

| Date and Time of Hearing | Hearing Type | Assigned State Court Judge |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Date: 31 July 2025                                    /s/ Seth P. Buskirk
_____          _____
                                 Signature of Attorney for Removing Party or
                                 Unrepresented Removing Party

                                 Printed Name Seth P. Buskirk
                                 _____

                                 Law Firm Clark, Newton & Evans, P.A.
                                 _____

                                 Address 508 Princess St., Wilminton, NC 28401
                                 _____

                                 _____

                                 Telephone Number 910-762-8743
                                 _____

                                 Fax Number 910-762-6206
                                 _____

                                 Email Address: spb@clarknewton.com
                                 _____

                                 State Bar No. 36664
                                 _____

# STATE OF NORTH CAROLINA

CARTERET _____ County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

*Name And Address Of Plaintiff 1*
GRADY F. SMITH

*Name And Address Of Plaintiff 2*
WAVETAMER GYROS, LLC

# GENERAL
# CIVIL ACTION COVER SHEET

☒ INITIAL FILING  ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

## VERSUS

*Name And Address Of Attorney Or Party, If Not Represented*
*(complete for initial appearance or change of address)*
Jack W. Ayers
3725 National Drive, Suite 125

*Name And Address Of Defendant 1*
Sutton National Insurance Company

| | | |
|---|---|---|
| Raleigh | NC | 27612 |

*Telephone No.* | *Cellular Telephone No.*

*Summons Submitted*
☒ Yes  ☐ No

| *NC Attorney Bar No.* 62240 | *Attorney Email Address* jack@ayershaidt.com |

*Name And Address Of Defendant 2*
Kemah Capital Holding, LLC d/b/a Kemah Marine

☒ Initial Appearance in Case  ☐ Change of Address

*Name Of Firm*
Ayers & Haidt, PA

*Fax No.*

*Summons Submitted*
☒ Yes  ☐ No

*Counsel For*
☒ All Plaintiffs  ☐ All Defendants  ☐ Only: *(list party(ies) represented)*

☒ Jury Demanded In Pleading  ☐ Complex Litigation  ☐ Stipulate to Arbitration

## TYPE OF PLEADING

*(check all that apply)*

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) *(see Note)*
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) *Assess Court Costs*
☐ Crossclaim *(list on back)* (CRSS) *Assess Court Costs*
☐ Dismiss (DISM) *Assess Court Costs*
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other *(specify and list each separately)*

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

(Over)

## CLAIMS FOR RELIEF

- ☐ Administrative Appeal (ADMA)
- ☐ Appointment Of Receiver (APRC)
- ☐ Attachment/Garnishment (ATTC)
- ☐ Claim And Delivery (CLMD)
- ☐ Collection On Account (ACCT)
- ☐ Condemnation (CNDM)
- ☐ Contract (CNTR)
- ☐ Discovery Scheduling Order (DSCH)
- ☐ Injunction (INJU)

- ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)
- ☐ Medical Malpractice (MDML)
- ☐ Minor Settlement (MSTL)
- ☐ Money Owed (MNYO)
- ☐ Negligence - Motor Vehicle (MVNG)
- ☐ Negligence - Other (NEGO)
- ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN)
- ☐ Possession Of Personal Property (POPP)

- ☐ Product Liability (PROD)
- ☐ Real Property (RLPR)
- ☐ Specific Performance (SPPR)
- ☒ Other *(specify and list each separately)*

Fraud, Constructive Fraud, Breach of the Implied Covenant of Good Faith & Fair Dealing, Unfair & Deceptive Trade Practice, Unjust Enrichment, Quantum Meruit, Breach of Contract, Judicial Estoppel, Negligent Misrepresentation, ⊞

| Date | Signature Of Attorney/Party |
|------|------------------------------|
| 6-30-25 | Jack W. Wyn |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|-----|---------------------------|
| | |
| | |
| | |
| | |
| | |

| No. | ☒ Additional Defendant(s)  ☐ Third Party Defendant(s) | Summons Submitted |
|-----|--------------------------------------------------------|-------------------|
| 3 | Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Agency | ☒ Yes  ☐ No |
| 4 | Kenneth Marks | ☒ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

# STATE OF NORTH CAROLINA

CARTERET _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

**Name Of Plaintiff**
GRADY F. SMITH and WAVETAMER GYROS, LLC

**Address**

**City, State, Zip**

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

### VERSUS

**Name Of Defendant(s)**
Sutton National Insurance Company; Kemah Capital Holding, LLC d/b/a Kemah Marine; Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Agency; and Kenneth Marks

**Date Original Summons Issued**

**Date(s) Subsequent Summons(es) Issued**

**To Each Of The Defendant(s) Named Below:**

**Name And Address Of Defendant 1**
Kenneth Marks
203 N. Princeton Avenue

Wenonah                NJ        08090

**Name And Address Of Defendant 2**

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

**Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)**
Jack W. Ayers
Ayers & Haidt, PA
3725 National Drive, Suite 125
Raleigh            NC        27612

**Date Issued**
6/30/2025
**Time** 2:00:33 pm ☐ AM ☐ PM

**Signature**
/s/ Rhonda Jenkins

☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

**Date Of Endorsement**            **Time**            ☐ AM ☐ PM

**Signature**

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 1.<br>☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 2.<br>☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

# STATE OF NORTH CAROLINA

_____CARTERET_____ County

File No.
25CV001780-150

In The General Court Of Justice
☐ District ☒ Superior Court Division

*Name Of Plaintiff*
GRADY F. SMITH and WAVETAMERGYROS, LLC

*Address*

*City, State, Zip*

**VERSUS**

*Name Of Defendant(s)*
Sutton National Insurance Company; Kemah Capital Holding, LLC d/b/a Kemah Marine; Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Agency; and Kenneth Marks

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Agency c/o Michael Contarino, Registered Agent 71 Cooper Street Woodbury          NJ      08096 | |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)* | *Date Issued* 6/30/2025 | *Time* 2:00:33 pm ☐ AM ☐ PM |
|---|---|---|
| Jack W. Ayers Ayers & Haidt, PA 3725 National Drive, Suite 125 Raleigh          NC      27612 | *Signature* /s/ Rhonda Jenkins | |
| | ☒ Deputy CSC ☐ Assistant CSC | ☐ Clerk Of Superior Court |

| ☐ ENDORSEMENT (ASSESS FEE) This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC ☐ Assistant CSC | ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 1. ☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|
| | | |

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 2. ☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|
| | | |

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

# STATE OF NORTH CAROLINA

_____CARTERET_____ County

File No.
25CV001780-150

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>GRADY F. SMITH and WAVETAMER GYROS, LLC | **CIVIL SUMMONS** |
| *Address* | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *City, State, Zip* | G.S. 1A-1, Rules 3 and 4 |

| **VERSUS** | |
|---|---|
| *Name Of Defendant(s)*<br>Sutton National Insurance Company; Kemah Capital Holding, LLC d/b/a Kemah Marine; Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Agency; and Kenneth Marks | *Date Original Summons Issued* |
| | *Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1*<br>Sutton National Insurance Company<br>c/o J. Angela Ables, Reg. Agent/Kerr, Irvine, Rhodes & Ables<br>201 Robert S. Kerr Ave., Ste 600<br>Oklahoma City      NC   73102 | *Name And Address Of Defendant 2*<br>Sutton National Insurance Company<br>c/o Corporation Service Company, Registered Agent<br>1201 Hays Street<br>Tallahassee      FL   32301 |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Jack W. Ayers<br>Ayers & Haidt, PA<br>3725 National Drive, Suite 125<br>Raleigh      NC   27612 | *Date Issued* 6/30/2025 *Time* 2:00:33 pm ☐ AM ☐ PM |
| | *Signature* /s/ Rhonda Jenkins |
| | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement*   *Time* ☐ AM ☐ PM |
| | *Signature* |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 1.<br>☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 2.<br>☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

# STATE OF NORTH CAROLINA

_____ CARTERET _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff | |
| --- | --- |
| GRADY F. SMITH and WAVETAMER GYROS, LLC | |

**CIVIL SUMMONS**

☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

Address

City, State, Zip

G.S. 1A-1, Rules 3 and 4

## VERSUS

| Name Of Defendant(s) | Date Original Summons Issued |
| --- | --- |
| Sutton National Insurance Company; Kemah Capital Holding, LLC d/b/a Kemah Marine; Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Agency; and Kenneth Marks | Date(s) Subsequent Summons(es) Issued |

### To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| --- | --- |
| Kemah Capital Holding, LLC d/b/a Kemah Marine<br>c/o Reg. Agent, Corporation Service Co. d/b/a SCS-Lawyers Inc. Ser<br>211 E. 7th Street, Suite 620<br>Austin               TX   78701-3218 | |

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**

**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
| --- | --- | --- |
| Jack W. Ayers<br>Ayers & Haidt, PA<br>3725 National Drive, Suite 125<br>Raleigh               NC   27612 | 6/30/2025 | 2:00:33 pm ☐ AM ☐ PM |
| | Signature /s/ Rhonda Jenkins | |
| | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time |
| --- | --- | --- |
| | | ☐ AM ☐ PM |
| | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** _Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM  ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service. <br> Summons and complaint received by: ☐ Defendant 1. <br> ☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM  ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service. <br> Summons and complaint received by: ☐ Defendant 2. <br> ☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid <br> $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

NORTH CAROLINA

CARTERET COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: _____CVS_____

GRADY F. SMITH and WAVETAMER
GYROS, LLC;

    Plaintiffs,

V.

SUTTON NATIONAL INSURANCE
COMPANY; KEMAH CAPITAL
HOLDING, LLC d/b/a KEMAH MARINE;
MARKS INSURANCE GROUP, INC.
d/b/a MARKS MARINE INSURANCE
AGENCY; and KENNETH MARKS;

    Defendants.

25CV001780-150

**VERIFIED COMPLAINT**

NOW COME Plaintiffs Grady F. Smith ("Mr. Smith") and Wavetamer Gyros, LLC ("Wavetamer") (hereinafter jointly "Plaintiffs"), by and through undersigned counsel, and hereby submit this Verified Complaint against Defendants Sutton National Insurance Company ("Sutton National"), Kemah Capital Holding, LLC d/b/a Kemah Marine ("Kemah Marine"), Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Agency ("Marks Marine"), and Kenneth Marks; alleging and stating the following:

<u>**JURISDICTION AND PARTIES**</u>

1.    Mr. Smith is a citizen and resident of Pitt County, North Carolina and is the manager and sole member of Wavetamer.

2.    Wavetamer is a limited liability company existing under and by virtue of the laws of the State of North Carolina and with a principal place of business in Carteret County, North Carolina.

1

3.     Sutton National is a foreign corporation existing under and by virtue of the laws of the State of Oklahoma and with a principal place of business in Delray Beach, Florida that is conducting business in the State of North Carolina. Its Oklahoma Registered Agent is J. Angela Ables of Ables, Kerr, Irvine, Rhodes & Ables, located at 201 Robert S. Kerr Avenue, Suite 600, Oklahoma City, Oklahoma 73102 and its Florida Registered Agent is Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

4.     Kemah Marine is a foreign limited liability company existing under and by virtue of the laws of Texas and with a principal place of business in League City, Texas that is conducting business in the State of North Carolina. Its Texas Registered Agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

5.     Defendant Marks Marine is a foreign corporation existing under and by virtue of the laws of the State of New Jersey and conducting business in the State of North Carolina, whose corporate registration with the State of New Jersey is suspended and has been since January 16, 2012. Its New Jersey Registered Agent is Michael Contarino, located at 71 Cooper Street, Woodbury, New Jersey 08096.

6.     Kenneth Marks is the owner of Marks Marine and the broker who sold the insurance policy at issue to Plaintiffs. Kenneth Marks is a citizen and resident of the State of New Jersey, with a primary residence in Wenonah, New Jersey.

7.     This Court has subject matter jurisdiction over this lawsuit pursuant to N.C.G.S. §§ 7A-340 and 7A-243 because the amount in controversy is in excess of $25,000. Furthermore, this Court has concurrent jurisdiction over this matter to the extent it raises issues of admiralty law because this Court has concurrent jurisdiction over *in personam* admiralty actions and by virtue of

2

the "savings to suitors" clause of 28 U.S.C. § 1333(1).  Madruga v. Superior Court, 346 U.S. 556, 560 (1954).

8.      This Court has specific personal jurisdiction over Sutton National pursuant to N.C.G.S. §§ 1-75.4(1)(d), (4)(a), (6)(c), and (10)(a) and by virtue of its contacts with the State of North Carolina.

9.      This Court has specific personal jurisdiction over Kemah Marine pursuant to N.C.G.S. §§ 1-75.4(1)(d), (4)(a), (6)(c), and (10)(a) and by virtue of its contacts with the State of North Carolina.

10.     This Court has specific personal jurisdiction over Marks Marine pursuant to N.C.G.S. §§ 1-75.4(1)(d), (4)(a), (6)(c), and (10)(a) and by virtue of its contacts with the State of North Carolina.

11.     This Court has specific personal jurisdiction over Kenneth Marks pursuant to N.C.G.S. §§ 1-75.4(1)(d), (4)(a), (6)(c), and (10)(a) and by virtue of his contacts with the State of North Carolina.

12.     Venue is appropriate in this Court pursuant to N.C.G.S. §§ 1-79(a)(3) and 1-80(1), as Wavetamer maintains its principal place of business in Carteret County and the Plaintiffs' injury occurred in Carteret County.

## FACTS

13.     Wavetamer is a limited liability company formed under and by virtue of the laws of the State of North Carolina on or about December 19, 2014, for the sole purpose of owning and operating a fifty-four-foot (54') sportfishing yacht named "Wave Tamer" that was built by Ocean Yachts in 2008.

14.     Mr. Smith is the sole member of Wavetamer and treats Wavetamer as a disregarded entity for tax purposes.

15.     Wavetamer acquired the vessel on or about December 30, 2014, secondhand from a seller in Florida.

16.     Wavetamer and Mr. Smith jointly took out a twenty-year Marine Installment Note with SunTrust Bank on or about December 30, 2014, in the amount of $500,000 to facilitate the acquisition of the vessel.

17.     The vessel has been titled in the name of Wavetamer since the vessel was acquired. A true and accurate copy of the title abstract for the vessel, issued on October 29, 2024, by the United States Coast Guard is attached hereto as **Exhibit A.**

18.     The vessel has been continuously and meticulously maintained by Plaintiffs since its acquisition, with tens of thousands of dollars being spent on both routine and preventative maintenance each year.

19.     Various insurers have issued policies covering the boat over the years and Kenneth Marks, through his business Marks Marine, has periodically sold Wavetamer and Mr. Smith insurance policies on the vessel and other vessels Mr. Smith has owned previously.

20.     A survey was conducted on May 4, 2022, by an accredited marine surveyor that found the boat to be in "above average condition."

21.     The survey, which was required by another insurer when the Plaintiffs submitted an insurance application to such insurer, was conducted one year before the policy at issue was applied for.

22.     Marks Marine, Kemah Insurance, and Sutton National did not require a boat survey to evaluate the insurance application or issue the policy at issue.

4

23.     In 2023, Mr. Smith reached out to Kenneth Marks via email seeking a new policy on the vessel Wave Tamer.

24.     Kenneth Marks is the owner of Marks Marine and is also the broker who facilitated the sale of the policy at issue to Wavetamer.

25.     The Marks Marine entity was formed in New Jersey in 1990.

26.     The New Jersey Department of Revenue suspended the entity's corporate registration on or about January 16, 2012.   A true and accurate copy of the Filing History is attached hereto as **Exhibit B.**

27.     It appears that the company's status with the New Jersey Department of Revenue is "Reinstatement Procedures Pending" and has been since the suspension was initiated on January 16, 2012.

28.     Kenneth Marks is therefore named in this lawsuit individually by virtue of his involvement as both the broker who sold the policy at issue in this matter and as the owner of the suspended entity, Marks Marine, that is holding itself out as being in business under the laws of the State of New Jersey and through which the Policy at issue was sold.

29.     Kenneth Marks asked a few basic questions about coverage needs and filled out a "Recreational Yacht Insurance Application" ("Application") on Wavetamer's behalf.  A true and accurate copy of the Application is attached hereto as **Exhibit C**.

30.     The Application contained several non-material errors including mistakenly using "self" in the space marked "Vessel ownership, per title" instead of the Wavetamer entity name when Mr. Smith was named as the "Applicant," some incorrect contact information (such as an old address), and the incorrect purchase year.

5

31.     Sutton National, Kemah Marine, Marks Marine, and Kenneth Marks all failed to conduct any due diligence on the title ownership of the vessel, as none of them ever inquired whether the "Vessel ownership, per title" portion was correct or acquired a title abstract from the United States Coast Guard to verify record title ownership.

32.     Kenneth Marks then gave Mr. Smith a quote from Kemah Marine, which was written on Sutton National paper.

33.     Mr. Smith accepted the quote and paid the insurance premium quoted.

34.     The policy was renewed on June 19, 2024.  A true and accurate copy of the policy is attached hereto as **Exhibit D.**

35.     The policy period at issue ran from July 28, 2024, through July 28, 2025.

36.     In the early morning hours of September 9, 2024, Mr. Smith received a call from an individual at the Atlantic Beach Causeway Marina, which is the marina where the boat is primarily moored, informing him that the boat was listing and appeared to be sinking.

37.     Mr. Smith immediately got in his car at his fiancée's home in Cary, North Carolina and drove straight to the marina.

38.     By the time Mr. Smith got to the marina, the vessel Wave Tamer had sunk in the slip where it was docked.

39.     Mr. Smith immediately informed his broker, Kenneth Marks, of the loss, who in turn notified Sutton National of the loss on the same day, September 9.  Plaintiffs' loss, in excess of $600,000.00, exceeds the value of the policy. Plaintiffs continue to suffer additional costs related to storage and interest (a non-exclusive list).

40.     On September 10, Sutton National acknowledged receipt of the Loss Notice and represented to Plaintiffs that it assigned a marine surveyor to inspect the damaged vessel.

41. Sutton National represented that it had their marine surveyor conduct a survey of the damaged vessel, but, as of the date of the filing of this Complaint, never shared the results of the survey with Plaintiffs or Plaintiffs' counsel despite both Mr. Smith and his counsel making repeated requests for such survey. Presumably, no such survey exists.

42. On September 10, Kenneth Marks told Sutton National that "insured sent me an email on 12/27/23 that the boat was put into an llc. I totally missed it as I was on vacation... I was doing an account audit last night while watching football game and found said email. Wavetamer Gyros LLC. Boat was never used commercially." [*See* **Exhibit G**].

43. Kenneth Marks has sold Wavetamer policies covering the boat in the past and was aware that vessel Wave Tamer was titled to the Wavetamer entity at all times relevant to this dispute.

44. On October 9, 2024, Sutton National sent Plaintiffs a "Reservation of Rights Letter" informing Plaintiffs that Sutton National was reserving its right to disclaim coverage because "[i]t has come to [Sutton National's] attention that in or about December 2023, you transferred title to the vessel to a limited liability company without notice to Sutton National." A true and accurate copy of the Reservation of Rights Letter is attached hereto as **Exhibit E.**

45. The alleged transfer of title referenced in the Reservation of Rights Letter not only did not occur, but is alleged to have occurred before the policy in place at the time of the loss was issued.

46. Mr. Smith quickly informed Sutton National via email that their assertion was incorrect and also sent several documents supporting his assertion, including a sworn and notarized statement stating that he is the "sole owner of Wavetamer Gyros, LLC. I purchased my Ocean 54 ft.... in December of 2014. The LLC, Wavetamer Gyros LLC, was formed for the sole purpose of

7

ownership and operation of said vessel. The LLC was formed December 19th 2014 just prior to purchase and the yacht has been here this entire time with no change of ownership." [*See* **Exhibit G**].

47.     Sutton National then issued a second "Reservation of Rights Letter" on October 16, 2024, that added a reservation to decline coverage for "Concealment, Fraud or Misrepresentation." The Second Reservation of Rights Letter is attached hereto as **Exhibit F.**

48.     Sutton National then commenced an investigation, by and through its agent Raphael & Associates, its third-party claim administrator, and conducted an Examination Under Oath of Mr. Smith on December 17, 2024, after Plaintiffs provided extensive documentation to Raphael & Associates.

49.     After the investigation was conducted, Sutton National, by and through Raphael & Associates, issued a letter dated February 19, 2025, (the "Denial Letter") stating that "the policy is void from inception, and there is no coverage for the loss." A true and accurate copy of the Denial Letter is attached hereto as **Exhibit G.**

50.     The Denial Letter also stated "[b]ecause the Policy is void from inception, a return premium payment will be issued under separate cover from Kemah Marine."

51.     Per the Denial Letter, Sutton National asserts that the "Policy is void from inception based on the misrepresentations made in the application for insurance" and focuses its justification and reasoning exclusively on the representation that Mr. Smith owned the vessel personally.

52.     Nowhere in the Denial Letter does Sutton National assert that the misrepresentations made in the application for insurance are material, nor does it assert that it would not have issued the policy but-for the misrepresentation of record title ownership.

8

53.     Neither the terms of the insurance policy nor the Denial Letter provide for any appeal of Sutton National's decision to consider the policy *void ab initio*.

### FIRST CAUSE OF ACTION
**FRAUD**
(Against Sutton National and Kemah Marine)

54.     The allegations contained in Paragraphs 1-53 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

55.     Plaintiff paid Sutton National, through Kemah Marine, Six Thousand Three Hundred and Fifty-Nine Dollars ($6,359) for an insurance policy covering the vessel Wave Tamer for a term of one (1) year.

56.     Sutton National represented to Plaintiffs that there was in fact insurance coverage of the boat pursuant to the terms of the insurance policy.

57.     The insurance policy was issued to Mr. Smith, who is the sole member of Wavetamer and a co-debtor with Wavetamer on the purchase money promissory note taken out to facilitate the acquisition of the vessel.

58.     Mr. Smith is the sole member of Wavetamer and treats it as a disregarded entity for tax purposes, as it has no source of income and no other assets aside from the vessel.

59.     Mr. Smith has, and at all times relevant had, an insurable interest in the vessel Wave Tamer by virtue of his being the sole member of Wavetamer and a co-debtor on the promissory note with Wavetamer.

60.     A loss event occurred – the sinking of the vessel Wave Tamer – during the term of the insurance policy.

9

61.     After conducting a coverage investigation, Sutton National issued a letter denying the existence of the policy under a theory of its being *void ab initio* for Plaintiffs' purported misrepresentation of record title ownership of the vessel.

62.     In this case, as to Sutton National, there is no material difference between the boat being titled in the name of Wavetamer versus in Mr. Smith's name. Furthermore, Mr. Smith has an insurable interest in the boat irrespective of any issue of title both substantively and under the long-established rules of both North Carolina and New York insurance law, as well as those of Admiralty.

63.     If there were a material difference between Mr. Smith owning the boat individually versus his disregarded limited liability company, then Sutton National or Kemah Marine would have acquired a copy of the title abstract from the United States Coast Guard before writing a $600,000 insurance policy on the vessel – which neither did – and would have caught the discrepancy.

64.     Upon information and belief, neither Sutton National nor Kemah Marine sought a Title Abstract to verify title on the vessel, indicating that it is not material to their underwriting.

65.     Sutton National is aware that, irrespective of record title to the vessel, Mr. Smith has an insurable interest in the vessel Wave Tamer and that any issue of ownership is immaterial by virtue of the structure of the Wavetamer entity due to Mr. Smith being the sole member and a co-debtor on the associated promissory note.

66.     During the entirety of the relationship between the parties, Wavetamer was administratively dissolved with the North Carolina Secretary of State and had been since 2018, which further supports Plaintiff's contention that the assertion that misrepresenting Mr. Smith as being the record title owner of the vessel is completely immaterial.

10

67.     Upon information and belief, the underwriting standards of Sutton National and Kemah Marine do not support the contention that representing Mr. Smith as the record title owner instead of Wavetamer is material to whether Sutton National would have issued the insurance policy or not.

68.     Furthermore, if either Sutton National or Kemah Marine did acquire a title abstract from the United States Coast Guard and issued an insurance policy knowing that the boat was titled to Wavetamer, then it defrauded Mr. Smith by issuing a policy it intended to not honor in the case of a loss.

69.     Despite having such knowledge, Sutton National, by and through its agent Raphael & Associates, denies the existence of the policy on the basis that the policy is *void ab initio* due to misrepresentations made in the insurance application, specifically regarding the ownership of the vessel.

70.     Furthermore, Sutton National, by and through its agent Raphael & Associates, appears to acknowledge that the alleged misrepresentation is immaterial, as the Denial Letter specifically states that "the Policy is void from inception based on the misrepresentations made in the application for insurance," leaving out any allegation of materiality.

71.     Pursuant to the terms of the Policy (Section 8.5), the "policy will be void from inception if you conceal or misrepresent to us any *material fact* relating to this insurance at any time."

72.     Not only did Sutton National draft the Policy at issue, but it, by and through its agent Raphael & Associates, specifically quotes this provision in its Denial Letter, but yet nowhere in the Denial Letter does it allege that the purported misrepresentation is material.

11

73.     Thus, Sutton National represented that there was insurance coverage, accepted payment of insurance premiums for said coverage, a loss occurred during the term of the policy, denied the existence of the policy, and purportedly directed Kemah Marine to issue a check for the premiums paid.

74.     Sutton National is also aware of the long-established rules of insurance and admiralty law regarding insurable interests and has intentionally misconstrued such principles in an effort to avoid coverage of the incident in question.

75.     The representations Sutton National and Kemah Marine made regarding the existence of the policy were made with the intent to deceive Plaintiffs and induce them into paying substantial insurance premiums.

76.     Sutton National intended that Plaintiffs act upon such representations and pay such premiums.

77.     Plaintiffs were in fact deceived by the false representations and acted upon them by paying the premiums.

78.     Plaintiffs suffered substantial damages proximately caused by the false representations of Sutton National and Kemah Marine, including, but not limited to, the loss of the boat, repair costs, costs of complying with Sutton National's coverage investigation, costs of counsel, costs of storing the vessel at the boat yard during Sutton National's coverage investigation, the cost of hiring marine surveyors to inspect the vessel and give opinions on the cause of the loss, and continuing payments towards the purchase money promissory note on a sunken and inoperable vessel.

79.     Plaintiffs were damaged, by Defendants' fraud, in an amount to be proven at trial that exceeds $25,000. Plaintiffs are entitled to have and recover, jointly and severally, from Sutton

National and Kemah Marine, said damages, plus such punitive and exemplary damages proven at trial.

## SECOND CAUSE OF ACTION
### CONSTRUCTIVE FRAUD
(Against Sutton National and Kemah Marine)

80.     The allegations contained in Paragraphs 1-79 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

81.     A relationship of trust and confidence existed between Mr. Smith and Sutton National by virtue of their contractual relationship, the existence of which Sutton National now denies as *void ab initio*.

82.     As an insurer, Sutton National had a duty to act in good faith and with due regard to the interests of Mr. Smith.

83.     Mr. Smith placed confidence in Sutton National that he would have insurance coverage on the vessel Wave Tamer in accordance with the terms of the insurance policy, the existence of which Sutton National now denies as *void ab initio*.

84.     Sutton National breached its duty of good faith and to act with due regard for the interests of Mr. Smith by inducing him to pay substantial insurance premiums on a policy it now considers to be non-existent.

85.     Furthermore, Sutton National breached its duty of good faith and to act with due regard for the interests of Mr. Smith by denying the existence of the insurance policy on a basis that is not only substantively dubious and immaterial, but is in clear contravention to the established principles of both insurance and admiralty law regarding insurable interests.

13

86. Sutton National has sought to benefit itself by asserting that the policy is *void ab initio* only after Mr. Smith experienced a loss he believed was covered by the insurance policy, thereby avoiding paying a substantial insurance claim.

87. Mr. Smith had a clear insurable interest in the vessel, irrespective of the inadvertent and immaterial misrepresentation that he owned the boat individually.

88. Mr. Smith is the sole member of the Wavetamer entity and has been since the acquisition of the vessel in December 2014.

89. Wavetamer is a disregarded entity for tax purposes.

90. Wavetamer was administratively dissolved by the North Carolina Secretary of State from 2018 through February 2025.

91. Mr. Smith is a co-debtor on the promissory note used to acquire the vessel.

92. Even though the vessel is technically titled in the name of Wavetamer, Mr. Smith is by all means the *de facto* owner of the vessel.

93. The only party that is substantively affected by the loss of the vessel is Mr. Smith.

94. Plaintiffs suffered substantial damages proximately caused by the constructive fraud of Sutton National and Kemah Marine, including, but not limited to, the loss of the boat, repair costs, costs of complying with Sutton National's coverage investigation, costs of counsel, costs of storing the vessel at the boat mechanics during Sutton National's coverage investigation, the cost of hiring marine surveyors to inspect the vessel and give opinions on the cause of the loss, and continuing payments towards the purchase money promissory note on a sunken and inoperable vessel.

95. Plaintiffs were damaged by Defendants' constructive fraud in an amount that exceeds $25,000. Plaintiffs are entitled to have of and recover from Sutton National and Kemah Marine, jointly and severally, such damages proven at trial, plus punitive and exemplary damages.

## THIRD CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(Against Sutton National and Kemah Marine)

96. The allegations contained in Paragraphs 1-95 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

97. Mr. Smith and Sutton National entered into, what Mr. Smith believed to be, a contract in the form of an insurance policy.

98. Under the supposed contract, Mr. Smith paid insurance premiums in exchange for what he believed to be insurance coverage.

99. A loss occurred under the provisions of the purported insurance policy.

100. Sutton National and Kemah Marine now deny the existence of the contract on the basis that the contract is *void ab initio* and initiated a refund of the premiums paid by Mr. Smith.

101. Sutton National and Kemah Marine violated the covenant of good faith and fair dealing by denying the existence of an enforceable contract only after a loss occurred for which it would be bound to pay the claim if the contract existed and did so on a basis that, if material, they were or should have been aware of through their underwriting practices.

102. Plaintiffs suffered substantial damages proximately caused by Sutton National and Kemah Marine's breach of the covenant of good faith and fair dealing, including, but not limited to, the loss of the boat, repair costs, costs of complying with Sutton National's coverage investigation, costs of counsel, costs of storing the vessel at the **boat yard** during Sutton National's coverage investigation, the cost of hiring marine surveyors to inspect the vessel and give opinions

15

on the cause of the loss, and continuing payments towards the purchase money promissory note on a sunken and inoperable vessel.

103. Plaintiffs were damaged, by Defendants' breach of covenant of good faith and fair dealing, in an amount to be proven at trial that exceeds of $25,000. Plaintiffs are entitled to have of and recover from Sutton National and Kemah Marine damages proven at trial, jointly and severally.

**FOURTH CAUSE OF ACTION**
**UNFAIR AND DECEPTIVE TRADE PRACTICES**
(N.C.G.S. §§ 75-1.1, 58-63-15)
(Against Sutton National)

104. The allegations contained in Paragraphs 1-103 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

105. Sutton National committed an unfair and deceptive trade practice by defrauding Mr. Smith through the intentional misrepresentation of inadvertent errors included in Mr. Smith's application for insurance – which is has not asserted to be material – as material misrepresentations that rendered the policy *void ab initio*.

106. Sutton National committed an unfair and deceptive trade practice by intentionally misconstruing the materiality of ownership of the vessel in contravention of the terms of the insurance policy, which focuses on the beneficiary of the policy having an insurable interest in the vessel, and which is immaterial in this case, as Mr. Smith is the *de facto* owner of the vessel by virtue of the ownership structure of the vessel.

107. Sutton National committed an unfair and deceptive trade practice by intentionally misconstruing the longstanding and well-established principles of insurance and admiralty law regarding insurable interests in personal property and vessels in an effort to avoid paying Mr. Smith's claim.

16

108. Sutton National committed an unfair and deceptive trade practice by issuing a written statement that willfully misrepresents the terms, conditions, and benefits included in the insurance policy at issue in this matter.

109. N.C.G.S. § 58-3-115 states: "No insurer shall make or issue, or cause to be issued, any written or oral statement that willfully misrepresents or willfully makes an incomplete comparison as to the terms, conditions, or benefits contained in any policy of insurance for the purpose of inducing or attempting to induce a policyholder in any way to terminate or surrender, exchange, or convert any insurance policy."

110. The provisions of N.C.G.S. § 58-3-115 are enforced by the North Carolina Commissioner of Insurance, but the violation thereof also constitutes an unfair and deceptive trade practice.

111. Sutton National is an insurer.

112. Sutton National issued a written statement that willfully misrepresents the terms, conditions, and benefits included in the insurance policy at issue in this matter, namely that the misrepresentations referenced in the Denial Letter are material under the terms of the policy and render it *void ab initio*.

113. This misrepresentation was made for the purpose of inducing Mr. Smith to surrender the insurance policy.

114. Although the Denial Letter alleges that the policy is *void ab intitio* for material misrepresentations in the insurance application and references the provision in the insurance policy regarding material misrepresentations, nowhere in the Denial Letter does Sutton National specifically allege that the specified misrepresentations in the insurance application are material.

115.    Sutton National's violation of N.C.G.S. § 58-3-115 is an unfair and deceptive trade practice.

116.    Sutton National committed an unfair and deceptive trade practice by declaring the insurance policy at issue in this matter *void ab initio* after a loss occurred for immaterial errors in the application for insurance submitted by Mr. Smith.

117.    Sutton National also violated N.C.G.S. § 58-63-15(1), which specifically prohibits an insurer from making statements that misrepresent the terms of an insurance policy for the purpose of inducing the insured to forfeit or surrender his insurance and statutorily declares such practices to be unfair and deceptive trade practices.

118.    Sutton National's actions were in or affecting commerce, as the sale of insurance is in and affecting commerce.

119.    Sutton National's actions proximately caused injury to Plaintiffs including, but not limited to, the loss of the boat, repair costs, costs of complying with Sutton National's coverage investigation, costs of counsel, costs of storing the vessel at the boat mechanics during Sutton National's coverage investigation, the cost of hiring marine surveyors to inspect the vessel and give opinions on the cause of the loss, and continuing payments towards the purchase money promissory note on a sunken and inoperable vessel.

120.    Mr. Smith relied on Sutton National's misrepresentations regarding the existence of insurance coverage.

121.    Mr. Smith was injured by Sutton National's unfair and deceptive trade practices in an amount to be proven at trial that exceeds $25,000. Mr. Smith is entitled the have the damages trebled, to recover attorney fees and costs as provided by Statute.

## FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT/QUANTUM MERUIT
(Against Sutton National and Kemah Marine)

122.    The allegations contained in Paragraphs 1-121 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

123.    Mr. Smith paid Sutton National, by and through Kemah Marine, for insurance coverage.

124.    Such insurance coverage was of value to Mr. Smith.

125.    The insurance premium paid to Sutton National, by and through Kemah Marine, was of value to Sutton National.

126.    At the time Mr. Smith rendered payment of the insurance premium to Sutton National, Mr. Smith expected to have coverage for the time period specified in the purported insurance policy.

127.    Sutton National voluntarily accepted the payment from Mr. Smith.

128.    Mr. Smith's expectation that there be coverage in accordance with the terms of the insurance policy was reasonable at the time he paid Sutton National, by and through Kemah Marine.

129.    Mr. Smith experienced a loss during the term of what he believed to be the insurance policy.

130.    Sutton National accepted the premium payment knowing that Mr. Smith expected to have insurance coverage for the term included in the insurance policy.

131.    Sutton National had the opportunity to refuse the premium payment before Mr. Smith experienced a loss under the policy and failed to do so.

19

132. Sutton National exercised dominion over the insurance premium for over a year and derived a benefit from its use before attempting to return the premium only after a loss had occurred and after asserting that the insurance policy was *void ab initio*.

133. Sutton National and Kemah Marine's actions proximately caused injury to Plaintiffs including, but not limited to, the loss of the boat, repair costs, costs of complying with Sutton National's coverage investigation, costs of counsel, costs of storing the vessel at the boat yard during Sutton National's coverage investigation, the cost of hiring marine surveyors to inspect the vessel and give opinions on the cause of the loss, and continuing payments towards the purchase money promissory note on a sunken and inoperable vessel.

134. Plaintiffs were damaged, by Defendants' unjust enrichment and quantum meruit, in an amount to be proven at trial that exceeds $25,000. Plaintiffs are entitled to have of and recover from Sutton National and Kemah Marine said damages, jointly and severally.

**SIXTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
(Against Sutton National and Kemah Marine)
(*In the Alternative*)

135. The allegations contained in Paragraphs 1-134 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

136. A contract existed between Mr. Smith, Sutton National, and Kemah Marine in the form of an insurance policy.

137. The contract was supported by adequate consideration at the time it was entered, in the form of insurance premiums exchanged for insurance coverage in accordance with the terms of the insurance policy.

138. The insurance policy covered a specified term during which insurance coverage would be provided up to the amounts specified in the insurance policy and in accordance with the other terms of the policy.

139. Mr. Smith experienced a loss, in excess of $600,000.00, during the term of the insurance policy.

140. Mr. Smith met the requirements in the insurance policy for coverage and reported the loss in a timely manner.

141. Sutton National and Kemah Marine refused to cover the loss.

142. Failure to cover a loss in accordance with the terms of the insurance policy was a material breach of the contract between Mr. Smith, Sutton National, and Kemah Marine.

143. Sutton National and Kemah Marine's breach of contract proximately caused injury to Plaintiffs including, but not limited to, the loss of the boat, repair costs, costs of complying with Sutton National's coverage investigation, costs of counsel, costs of storing the vessel at the boat yard during Sutton National's coverage investigation, the cost of hiring marine surveyors to inspect the vessel and give opinions on the cause of the loss, and continuing payments towards the purchase money promissory note on a sunken and inoperable vessel.

144. Plaintiffs were damaged, by Defendants' material breach of contract, in an amount to be proven at trial that exceeds $25,000. Plaintiffs and are entitled to have of and recover from Sutton National and Kemah Marine said damages, jointly and severally.

**SEVENTH CAUSE OF ACTION**
**JUDICIAL ESTOPPEL**
(Against Sutton National and Kemah Marine)

145. The allegations contained in Paragraphs 1-144 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

146. Sutton National and Kemah Marine assert that the insurance policy is *void ab initio* and have denied Mr. Smith's claim, by and through their third-party claim administrator Raphael & Associates, on such basis, going so far as to purportedly initiate a refund of the insurance premium that Mr. Smith paid.

147. The insurance policy included a purported arbitration provision, choice of law provision, and waiver of consequential, special, indirect, or punitive damages.

148. To attempt to enforce the provisions described in the previous Paragraph, or any other provision contained in the insurance policy, would be in direct contradiction to Sutton National's assertion that the insurance policy is *void ab initio*.

149. To the extent that Sutton National asserts that the insurance policy is *void ab initio*, this Court must judicially estop Sutton National from attempting to enforce the terms of the contract it asserts does not exist.

**EIGHTH CAUSE OF ACTION**
**NEGLIGENCE**
(Against Kemah Marine, Marks Marine and Kenneth Marks)
(*In the Alternative*)

150. The allegations contained in Paragraphs 1-149 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

151. Kenneth Marks, as a purported agent and owner of Marks Marine, filled out an insurance application for "Recreational Yacht Insurance" on behalf of Grady Smith on or about July 26, 2023, and sent it to Kemah Marine, the underwriter to whom the application was addressed.

152.     Kenneth Marks input a variety of inaccurate information into the application which formed the basis of Sutton National's denial of the existence of the policy issued as a result of the application.

153.     Kenneth Marks owed Mr. Smith a duty of care to act in the manner that a reasonably prudent insurance agent would.

154.     An insurance agent acting in a reasonably prudent way would have verified that the information included in the insurance application was true and correct.

155.     Kenneth Marks did not verify the information included in the application prior to sending it to Kemah Marine for underwriting.

156.     Furthermore, Kenneth Marks was aware that the vessel was owned by Wavetamer, as he had written policies for the vessel before and asked Mr. Smith for Wavetamer's "severe storm protection plan" when he was working on acquiring insurance quotes – the "severe storm protection plan" clearly states that the vessel was titled to Wavetamer.

157.     When Kemah Marine received the application, it did not verify record title ownership of the vessel either by verifying with Plaintiffs or by acquiring a title abstract from the United States Coast Guard.

158.     If record title ownership to a recreational vessel were material to the underwriting of an insurance policy, a reasonably prudent underwriter would verify whether the record title ownership denoted on the application is correct prior to writing a $600,000 insurance policy.

159.     Kemah Marine failed to verify record title to the vessel.

160.     Sutton National, the insurer for which Kemah Marine wrote the policy, now denies the existence of the insurance policy on the basis that the policy Kemah Marine wrote is *void ab*

*initio* due to misrepresentations in the application, specifically focusing on the misrepresentation of Mr. Smith as the title holder of record.

161.    Kenneth Marks and Mark's Marine's failure to verify the contents of the application constitutes a failure to exercise the standard of care of a reasonably prudent insurance broker.

162.    Kemah Marine's failure to verify record title ownership to the boat as a part of its due diligence when it is material to the insurer on whose paper it wrote the insurance policy constitutes a failure to exercise the standard of care of a reasonably prudent insurance underwriter.

163.    The negligence of Kenneth Marks, Marks Marine, and Kemah Marine proximately caused injury to Plaintiffs including, but not limited to, the loss of the boat, repair costs, costs of complying with Sutton National's coverage investigation, costs of counsel, costs of storing the vessel at the boat yard during Sutton National's coverage investigation, the cost of hiring marine surveyors to inspect the vessel and give opinions on the cause of the loss, and continuing payments towards the purchase money promissory note on a sunken and inoperable vessel.

164.    Plaintiffs were damaged, by Defendants' negligence, in an amount to be proven at trial that exceeds $25,000. Plaintiffs are entitled to have of and recover from Kenneth Marks, Marks Marine, and Kemah Marine said damages, jointly and severally.

### NINTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
(Against Kemah Marine, Marks Marine and Kenneth Marks)
(*In the Alternative*)

165.    The allegations contained in Paragraphs 1-164 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

166.    In the course of their business, Kenneth Marks, Marks Marine, and Kemah Marine each participated in a transaction in which they each had a financial interest.

167.     Kenneth Marks, Marks Marine, and Kemah Marine each supplied information to Sutton National that they intended Sutton National to rely upon.

168.     Kenneth Marks, Marks Marine, and Kemah Marine each intended for Sutton National to rely on the information given to it for guidance and benefit in the issuance of the insurance policy at issue.

169.     The information that Kenneth Marks, Marks Marine, and Kemah Marine supplied to Sutton National was incorrect.

170.     Kenneth Marks, Marks Marine, and Kemah Marine failed to exercise reasonable care or competence in obtaining, verifying, or communicating the information, specifically that regarding who was the record title owner of the vessel.

171.     Sutton National relied upon the incorrect information given to it, as the responsibility for writing the policy at issue fell upon Kemah Marine, who in turn relied upon Kenneth Marks and Marks Marine.

172.     Plaintiffs relied on Kenneth Marks, Marks Marine, and Kemah Marine to ensure that a valid policy was written covering the vessel.

173.     Plaintiffs were financially damaged by the negligent misrepresentations of Kenneth Marks, Marks Marine, and Kemah Marine when a loss occurred and Sutton National denied coverage of the loss on the basis that the insurance policy never existed since it was *void ab initio* due to the misrepresentation included in the application that Mr. Smith was the record title owner of the vessel and failure to verify the same.

174.     Plaintiffs' damages were proximately caused by Kenneth Marks and Marks Marine's failure to verify the information it included in the insurance application and by Kemah Marine's failure to verify information material to underwriting a policy on Sutton National paper.

175.    The negligent misrepresentations made by Kenneth Marks, Marks Marine, and Kemah Marine proximately caused injury to Plaintiffs including, but not limited to, the loss of the boat, repair costs, costs of complying with Sutton National's coverage investigation, costs of counsel, costs of storing the vessel at the boat mechanics during Sutton National's coverage investigation, the cost of hiring marine surveyors to inspect the vessel and give opinions on the cause of the loss, and continuing payments towards the purchase money promissory note on a sunken and inoperable vessel.

176.    Plaintiffs were damaged, by Defendants' negligent misrepresentations, in an amount to be proven at trial that exceeds $25,000. Plaintiffs and are entitled to have of and recover from Kenneth Marks, Marks Marine, and Kemah Marine said damages, jointly and severally.

**TENTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
(Against Marks Marine and Kenneth Marks)
*(In the Alternative)*

177.    The allegations contained in Paragraphs 1-176 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

178.    A contract existed between Mr. Smith, Marks Marine, and Kenneth Marks.

179.    Marks Marine and Kenneth Marks sold Mr. Smith an insurance policy in exchange for money, which they acquired through their commission received from Kemah Marine and Sutton National for selling the policy.

180.    Mr. Smith paid for an insurance policy.

181.    Mr. Smith did not get a valid insurance policy in exchange for his money.

182.    Failure to provide a valid insurance policy in exchange for the money paid constitutes a material breach of the contract.

26

183.     The failure of Marks Marine and Kenneth Marks to sell Mr. Smith a valid insurance policy proximately caused injury to Plaintiffs including, but not limited to, the loss of the boat, repair costs, costs of complying with Sutton National's coverage investigation, costs of counsel, costs of storing the vessel at the boat yard during Sutton National's coverage investigation, the cost of hiring marine surveyors to inspect the vessel and give opinions on the cause of the loss, and continuing payments towards the purchase money promissory note on a sunken and inoperable vessel.

184.     Plaintiffs were damaged by Defendants' breach of contract, in an amount to be proven at trial that exceeds $25,000. Plaintiffs and are entitled to have of and recover from Kenneth Marks, Marks Marine, and Kemah Marine said damages, jointly and severally.

**ELEVENTH CAUSE OF ACTION**
**ALER EGO/PIERCING THE CORPORATE VEIL**
(Against Marks Marine and Kenneth Marks)

185.     The allegations contained in Paragraphs 1-184 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

186.     Kenneth Marks is the sole owner, upon information and belief, of Marks Marine.

187.     Kenneth Marks exercised complete domination of the entity's finances, policy, and business practices, particularly with regard for the transaction at issue here.

188.     Marks Marine had no separate mind, will, or existence of its own at the time of the transaction.

189.     Kenneth Marks used such control to commit the alleged wrongs against Plaintiffs in contravention of its positive legal duties, as described more particularly in Plaintiff's Eighth through Tenth Causes of Action.

27

190.     The damages Plaintiffs have suffered were proximately caused by Kenneth Marks' control of Marks Marine and the associated breaches of duty.

191.     Marks Marine was suspended by the New Jersey Department of Revenue on January 16, 2012, and has never been reinstated since.

192.     Kenneth Marks has continued to do business as Marks Marine since the entity was suspended by the New Jersey Department of Revenue.

193.     Pursuant to N.J. Rev. Stat. § 14A: 12-9, a corporation can only conduct business after dissolution for the purposes of winding up the affairs of the corporation.

194.     Kenneth Marks never wound up the affairs of Marks Marine and continued to conduct ordinary business activities after the entity was dissolved by virtue of its suspension by the New Jersey Department of Revenue.

195.     Kenneth Marks and Marks Marine never issued any notice to creditors as required by N.J. Rev. Stat. § 14A: 12-12 and never completed the reinstatement process with the New Jersey Department of Revenue.

196.     Pursuant to by N.J. Rev. Stat. § 14A: 4-5(5), upon the New Jersey State Treasurer's revocation of a corporation's certificate of incorporation revokes all powers conferred upon the corporation by law, rendering it inoperative and void.

197.     One power conferred upon corporations by law is the limitation of shareholder liability to the amount of equity invested in such corporation.

198.     Since, at all times relevant to this dispute, Marks Marine has been suspended by the New Jersey Department of Revenue, Kenneth Marks is personally liable for the damages sustained by Plaintiffs as the sole shareholder of Marks Insurance and by virtue of being the broker who sold the policy to Plaintiffs.

28

199.     By operation of New Jersey law, Kenneth Marks should be personally liable for any damages attributable to himself or Marks Marine in this dispute.

200.     The corporate veil should therefore be pierced and Kenneth Marks be declared personally liable for any damages attributable to Marks Marine to the extent Marks Marine cannot satisfy its liabilities to Plaintiffs.

### TWELFTH CAUSE OF ACTION
### DECLARATORY JUDGEMENT
(All Parties)

201.     The allegations contained in Paragraphs 1-200 of this Verified Complaint are hereby reincorporated and alleged by reference as if fully restated herein.

202.     Mr. Smith entered into a contract of insurance with Sutton National that was underwritten by Kemah Marine and sold to Mr. Smith by Kenneth Marks and Marks Marine.

203.     There is an issue as to the existence of the insurance contract and the liability of the insurance company under such policy.

204.     There is a dispute between the parties as to the existence of the insurance contract and liability of Sutton National as the insurer. The insurance policy in question is attached hereto as **Exhibit D.**

205.     Under the North Carolina Declaratory Judgment Act, courts are given the power of construction of instruments, including insurance contracts.  N.C.G.S. § 1-254.

206.     Furthermore, the liability of an insurer under an insurance policy is a proper subject for a declaratory judgement.  Builders Mutual Ins. Co. v. Mitchell, 210 N.C. App. 657, 660, 709 S.E.2d 528, 531 (2011).

207.    Plaintiffs respectfully request that this Court determine the existence of the insurance contract and, if it is in fact an enforceable contract, construe the insurance policy to determine whether Sutton National or Kemah Marine are liable for Plaintiffs' loss under the policy.

208.    Plaintiffs also respectfully request that this Court find that the insurance policy does exist and is enforceable and that Mr. Smith's loss of the vessel was a covered loss.

**WHEREFORE**, Plaintiffs respectfully request of this Court:

1.  That Plaintiffs have of and recover from Sutton National and Kemah Marine an amount in excess of $25,000, to be proven at trial, Pursuant to Plaintiffs' First Cause of Action for fraud;

2.  That Plaintiffs have of and recover from Sutton National and Kemah Marine an amount in excess of $25,000, to be proven at trial, Pursuant to Plaintiffs' Second Cause of Action for constructive fraud;

3.  That Plaintiffs have of and recover from Sutton National an amount in excess of $25,000, to be proven at trial, Pursuant to Plaintiffs' Third Cause of Action for breach of the implied covenant of good faith and fair dealing;

4.  That Plaintiffs have of and recover from Sutton National an amount in excess of $25,000, to be proven at trial, equal to their actual damages Pursuant to Plaintiffs' Fourth Cause of Action for unfair and deceptive trade practices;

5.  That Plaintiffs' actual damages pursuant to their Fourth Cause of Action for unfair and deceptive trade practices be trebled pursuant to N.C.G.S. § 75-16;

6.  That Plaintiffs have of and recover from Sutton National their reasonable attorney's fees pursuant to N.C.G.S. § 75-16.1;

30

7. That Plaintiffs have of and recover from Sutton National an amount in excess of $25,000, to be proven at trial, Pursuant to Plaintiffs' Fifth Cause of Action for unjust enrichment;

8. That, in the alternative, Plaintiffs have of and recover from Sutton National an amount in excess of $25,000, to be proven at trial, equal to their actual damages Pursuant to Plaintiffs' Sixth Cause of Action for breach of contract;

9. That Sutton National be judicially estopped, pursuant to Plaintiffs' Seventh Cause of Action, from simultaneously denying the existence of the insurance policy as *void ab initio* and seeking to enforce the terms of the insurance policy it claims is *void ab initio*;

10. That, in the alternative, Plaintiffs have of and recover from Kemah Marine, Marks Marine, and Kenneth Marks an amount in excess of $25,000, to be proven at trial, Pursuant to Plaintiffs' Eighth Cause of Action for negligence;

11. That, in the alternative, Plaintiffs have of and recover from Kemah Marine, Marks Marine, and Kenneth Marks an amount in excess of $25,000, to be proven at trial, Pursuant to Plaintiffs' Ninth Cause of Action for negligent misrepresentation;

12. That, in the alternative, Plaintiffs have of and recover from Kemah Marine, Marks Marine, and Kenneth Marks an amount in excess of $25,000, to be proven at trial, Pursuant to Plaintiffs' Tenth Cause of Action for breach of contract;

13. That, to the extent that Marks Marine is found liable under any theory of liability, that Kenneth Marks also be found liable by operation of New Jersey Law pursuant to Plaintiffs' Eleventh Cause of Action;

14. That this Court enter a Declaratory Judgment pursuant to N.C.G.S. § 1-254 determining the existence of the insurance policy and whether there is coverage of the loss sustained by Mr. Smith under the policy;

15. That Plaintiffs have of and recover from Defendants their reasonable attorneys' fees as may be allowed under the insurance policy or otherwise provided for by law;

16. That a jury trial be held on all issues of material fact; and

17. For such other and further relief as this Court deems just and proper.

This 30th day of June, 2025.

*/s/Jack W. Ayers*
James M. Ayers II
N.C. State Bar No. 18085
jim@ayershaidt.com
Jack W. Ayers
N.C. State Bar No. 62240
jack@ayershaidt.com
Ayers & Haidt, P.A.
307 Metcalf Street
P.O. Box 1544
New Bern, NC  28563
Telephone (252) 638-2955
Facsimile (252) 638-3293
*Attorneys for Grady Smith*
*and Wavetamer Gyros, LLC*

## VERIFICATION

I, Grady F. Smith, first being duly sworn, deposes and says that I am individually a Plaintiff and I am the manager and sole member of Wavetamer Gyros, LLC, the other Plaintiff in the foregoing document; that I have read the same and the contents thereof are true according to the best of my knowledge, information, and belief.

GRADY F. SMITH
Individually and as member of Wavetamer Gyros, LLC

Sworn to and subscribed before me this 27th day of June, 2025

NOTARY PUBLIC

My Commission expires:

04/03/2030

ERIN K TAYLOR
NOTARY PUBLIC
PITT COUNTY, NC



# EXHIBIT A

## CERTIFIED COPY OF DOCUMENTATION

## NOTICE:

**VESSEL NAME**

WAVETAMER

**OFFICIAL #**

1224042

**CONFIRM OFFICIAL #**

1224042

**YOUR NAME**

Grady Smith

**EMAIL**

grady@scaffoldmart.com

**PHONE**

(252) 341-5100

**YOUR PHYSICAL ADDRESS**

1705 Evans Street
Greenville, NC 27834

- I CERTIFY THAT THE RECITATIONS CONCERNING THE VESSEL: NAME, TONNAGE, DIMENSIONS, PROPULSION, OWNERSHIP, HAILING PORT, RESTRICTIONS, ENTITLEMENTS, REMARKS AND ENDORSEMENTS CONTAINED IN THE CERTIFICATE OF DOCUMENTATION REMAIN ABSOLUTELY THE SAME.

**SIGNATURE**

**CAPACITY OF PERSON SIGNING (E.G., OWNER, AGENT, TRUSTEE, GENERAL PARTNER, CORPORATE OFFICER, MEMBER)**

Owner

**DATE**

05/20/2024

**WOULD YOU LIKE TO RENEW YOUR USCG DOCUMENTATION?**

No

## AUTHORIZATION

• I agree to pay the above total amount according to the card issuer agreement and hereby authorize the charge for the total amount above for the processing of selected USCG documents. I understand that my application will be processed in the order in which it is received by National Doc Center, a private fee for service documentation company, not owned or operated by any governmental agency. I understand that application and processing fees are non-refundable as per National Doc Center's no refund policy and as per 46 CFR 67.500(e). I understand information provided in this online fillable form will be utilized for the completion of form CG-1258 for COD Reinstatement. I understand that submitting another application for vessel documentation will supersede the current/pending application for that vessel.

## CREDIT CARD

MasterCard
XXXXXXXXXXXX0868

## YOUR ADDRESS

1705 EVANS STREET
Greenville, NC 27834
United States

## AGREE TO TERMS AND CONDITIONS

✔ I agree to the terms and conditions below:

By clicking submit you agree to these Terms and Conditions and the above authorization of payment.

## Order

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Certified Copy of Documentation | 1 | $75.00 | $75.00 |
| | | **Total** | **$75.00** |

# EXHIBIT B

Status Report For:    MARKS INSURANCE GROUP, INC.
Report Date:          4/30/2025
Confirmation Number:  251203691499

## IDENTIFICATION NUMBER, ENTITY TYPE AND STATUS INFORMATION

Business ID Number:     0100455298
Business Type:          DOMESTIC PROFIT CORPORATION
Status:                 REINSTATEMENT PROCEDURES PENDING
Original Filing Date:   06/22/1990
Stock Amount:           2500
Home Jurisdiction:      NJ
Status Change Date:     01-30-2012

## REVOCATION/SUSPENSION INFORMATION

DOR Suspension Start    01-16-2012
Date:
DOR Suspension End      N/A
Date:
Tax Suspension Start    N/A
Date:
Tax Suspension End      N/A
Date:

## ANNUAL REPORT INFORMATION

Annual Report Month:    JUNE
Last Annual Report      11/03/2020
Filed:
Year:                   2020

## AGENT/SERVICE OF PROCESS (SOP) INFORMATION

Agent:                  MICHAEL CONTARINO
Agent/SOP Address:      71 COOPER ST ,WOODBURY,NJ,08096
Address Status:         DELIVERABLE
Main Business Address:  1218 CLEMENTS BRIDGE RD, PO BOX 5002,
                        DEPTFORD, NJ, 08096
Principal Business      1218 CLEMENTS BRIDGE RDPO BOX
Address:                5002,DEPTFORD,NJ,08096

## ASSOCIATED NAMES

Associated Name:        MARKS, DOBBINS & ASSOCIATES
Type:                   FC
Associated Name:        MARKS, DOBBINS & ASSOCIATES INSURANCE AGENCY,
                        INC.
Type:                   PV

**PRINCIPALS**

Following are the most recently reported officers/directors (corporations), managers/members/managing members (LLCs), general partners (LPs), trustees/officers (non-profits).

Title:          PRESIDENT
Name:           MARKS,KENNETH
Address:        203 N PRINCETON, WENONAH, NJ, 08090

**FILING HISTORY -- CORPORATIONS, LIMITED LIABILITY COMPANIES, LIMITED PARTNERSHIPS AND LIMITED LIABILITY PARTNERSHIPS**

To order copies of any of the filings below, return to the service page, https://www.njportal.com/DOR/businessrecords/Default.aspx and follow the instructions for obtaining copies. Please note that trade names are filed initially with the County Clerk(s) and are not available through this service. Contact the Division for instructions on how to order Trade Mark documents.

Charter Documents for Corporations, LLCs, LPs and LLPs

Original Filing          1990
(Certificate)Date:

Changes and Amendments to the Original Certificate:

| Filing Type | Year Filed |
| --- | --- |
| NAME CHANGE | 2005 |
| CHANGE OF AGENT AND OFFICE | 1998 |
| CHANGE OF AGENT AND OFFICE | 2007 |
| REVOKED FOR FAILURE TO PAY ANNUAL REPORTS | 2012 |
| ALTERNATE NAME FILING | 1990 |
| REINSTATEMENT PROCESS PENDING | 2012 |

Note:
Copies of some of the charter documents above, particularly those filed before June 1988 and recently filed documents (filed less than 20 work days from the current date), may not be available for online download.

• For older filings, contact the Division for instructions on how to order.

# TEXAS SECRETARY of STATE
## JANE NELSON

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 802693553 | **Entity Type:** | Domestic Limited Liability Company (LLC) |
| **Original Date of Filing:** | April 3, 2017 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32063392412 | **FEIN:** | |
| **Duration:** | Perpetual | | |

| | |
|---|---|
| **Name:** | Kemah Capital Holding, LLC |
| **Address:** | 2600 S SHORE BLVD STE 300 |
| | LEAGUE CITY, TX 77573-2944 USA |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES | INITIAL ADDRESS |
|---|---|---|---|---|---|---|

| Name | Address | Inactive Date |
|---|---|---|
| Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company | 211 E. 7th Street, Suite 620 AUSTIN, TX 78701-3218 USA | |

[ Order ]  [ Return to Search ]

Instructions:

❽ To place an order for additional information about a filing press the 'Order' button.

- For recent filings, allow 20 work days from the estimated filing date, revisit the service center at https://www.njportal.com/DOR/businessrecords/Default.aspx periodically, search for the business again and build a current list of its filings. Repeat this procedure until the document shows on the list of documents available for download.

The Division cannot provide information on filing requests that are in process. Only officially filed documents are available for download.

**Alexandra S. Jacobs**
Partner
Admitted in: New Jersey & Pennsylvania

LibertyView
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002-2220
Tel: 856-488-7700

Direct Dial:    856-488-7746
Fax:          856-488-7720
Email:      ajacobs@mmwr.com

April 25, 2025

***Via Email (jack@ayershaidt.com and jim@ayershaidt.com)***

Jack W. Ayers, Esquire
James M. Ayers II, Esquire
Ayers & Haidt, P.A.
307 Metcalf Street
P. O. Box 1544
New Bern, NC  28563

      Re:     Grady Smith / Wavetamer Gyros, LLC
              Your File No.: 24-86

Dear Messrs. Ayers and Ayers:

     As you know, I represent Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Agency. Thank you for providing numerous materials to my attention to help us evaluate the claim asserted in your March 3, 2025 demand letter.

     Please forward us a copy of your Survey once it is completed, as you previously offered. I understand that Sutton has not yet provided you a copy of their survey. If Sutton does provide its survey, please let us know.

     I understand your goal of moving this matter along quickly. However, because one of the bases of Sutton's denial was unseaworthiness, we are unable to fully evaluate your claim without the benefit of the surveys. Additionally, please preserve and maintain the vessel until we advise whether or not we will seek to conduct our own examination.

     As to your claim that the broker was negligent in preparing the marine insurance application, based on the EUO, it appears that Mr. Smith gave Mr. Marks incorrect ownership information then failed to correct this information despite opportunity to do so. Nonetheless, there is an argument to make to Sutton that the "error" on the application is immaterial since it did not affect the risk and Mr. Smith confirmed he only used the vessel for recreational use. Further, Mr. Smith, as the sole shareholder of the LLC, may himself have had an insurable interest.

**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**

**PENNSYLVANIA • NEW YORK • NEW JERSEY • DELAWARE**

A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP
MICHAEL J. FEKETE, NEW JERSEY RESPONSIBLE PARTNER

Montgomery McCracken Walker & Rhoads LLP

Jack W. Ayers, Esquire
James M. Ayers II, Esquire
Ayers & Haidt, P.A.
April 25, 2025
Page 2

Additionally, any application "error" would also be immaterial if Sutton had a separate and independent basis to deny the claim based on unseaworthiness, which is a defense to coverage. If a vessel sinks in a harbor in calm seas, there is a legal presumption that the vessel was unseaworthy.

It is my understanding that you have not proceeded with contesting or appealing Sutton's denial. If you disagree with Sutton's denial, you may have an obligation to timely institute an appeal process pursuant to the policy. If you fail to do so, we may take the position later that you waived your rights.

In sum, we are not averse to an early resolution of this matter, however, at this time, we have insufficient information to appraise any exposure to our client. We look forward to obtaining the surveys and having a follow up discussion regarding this matter. If there is anything that I can provide you in the interim, please do not hesitate to ask.

Very truly yours,

*s/ Alexandra S. Jacobs*

Alexandra S. Jacobs

ASJ:gme

Home : Business Services : Corp Search : Corp Information

# Entity Summary Information

Select the buttons below to file or place an order.

To view Entity Details there will be a $5.00 charge and you will need to click on **VIEW ENTITY DETAILS** button at the bottom of the page.

If you are ordering documents such as a "Certificate of Good Standing" or "copies" you will need to click on the **ORDER DOCUMENTS** button at the bottom of the page.

If you are filing a legal document such as a trade name, amendment, annual certificate, etc., you will need to click on **FILE A DOCUMENT** button at the bottom of the page.

### SUTTON NATIONAL INSURANCE COMPANY

| Details | |
| --- | --- |
| Filing Number: | 1912862969 |
| Name Type: | Legal Name |
| Status: | In Existence |
| Corp type: | Domestic For Profit Business Corporation |
| Jurisdiction: | Oklahoma |
| Formation Date: | 7 Aug 2020 |

| Registered Agent Information | |
| --- | --- |
| Name: | J. ANGELA ABLES |
| Effective: | 7 Aug 2020 |
| Address: | KERR, IRVINE, RHODES & ABLES |
| | 201 ROBERT S. KERR AVE STE 600 |
| City, State , ZipCode: | OKLAHOMA CITY   OK   73102 |

[View Entity Detail]  [File a Document]  [Order Documents]  [New Search]



# Detail by Entity Name

Foreign Profit Corporation
SUTTON NATIONAL INSURANCE COMPANY

**Filing Information**

| | |
|---|---|
| **Document Number** | F19000003583 |
| **FEI/EIN Number** | 91-0895822 |
| **Date Filed** | 07/26/2019 |
| **State** | OK |
| **Status** | ACTIVE |
| **Last Event** | AMENDMENT |
| **Event Date Filed** | 04/21/2021 |
| **Event Effective Date** | NONE |

**Principal Address**

110 E. Atlantic Avenue
Suite 330
Delray Beach, FL 33444

Changed: 04/02/2025

**Mailing Address**

110 E. Atlantic Avenue
Suite 330
Delray Beach, FL 33444

Changed: 04/02/2025

**Registered Agent Name & Address**

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL 32301

**Officer/Director Detail**

**Name & Address**

Title Director

HITSELBERGER, WILLIAM E
110 E. Atlantic Avenue
Suite 330
Delray Beach, FL 33444

Title Treasurer

ROSSI, JUDITH
110 E. Atlantic Avenue
Suite 330
Delray Beach, FL 33444

Title Officer

FREITAG, MICHELLE
110 E. Atlantic Avenue
Suite 330
Delray Beach, FL 33444

Title CEO, Director

Haverstick, Shane
110 E. Atlantic Avenue
Suite 330
Delray Beach, FL 33444

Title President, COO, Director

Yavener, Lloyd
110 E. Atlantic Avenue
Suite 330
Delray Beach, FL 33444

Title Director

Daddario, George
110 E. Atlantic Avenue
Suite 330
Delray Beach, FL 33444

Title Secretary

GILDENER, SIMON
110 E. Atlantic Avenue
Suite 330
Delray Beach, FL 33444

Title CFO

GRIMES, SIMONE
110 E. Atlantic Avenue
Suite 330
Delray Beach, FL 33444

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2023 | 02/21/2023 |
| 2024 | 04/14/2024 |
| 2025 | 04/02/2025 |

**Document Images**

| | |
|---|---|
| 04/02/2025 -- ANNUAL REPORT | View image in PDF format |
| 04/14/2024 -- ANNUAL REPORT | View image in PDF format |
| 02/21/2023 -- ANNUAL REPORT | View image in PDF format |
| 03/16/2022 -- ANNUAL REPORT | View image in PDF format |
| 04/21/2021 -- Amendment | View image in PDF format |
| 01/28/2021 -- ANNUAL REPORT | View image in PDF format |
| 01/14/2020 -- ANNUAL REPORT | View image in PDF format |
| 07/26/2019 -- Foreign Profit | View image in PDF format |

# EXHIBIT C



## Recreational Yacht Insurance

Application

Applicant: **Grady Smith**                                   Effective Date: 07/26/2023

Address: _____ 1041 East Rock Spring Road, _____

City, State Zip: ____ Greenville, NC, 27834 _____

Home phone: **(252) 341-5100** _____ Mobile phone: _____

Other phone: _____ email: **whitlbg@gmail.com** _____

Vessel ownership, per title: **Self** ___

Manufacturer: **Ocean Yachts** ___ Model: **54 SS** ___ Year built: **2008** ___ LOA: **54**

Hull type: ☑Power ☐Pontoon ☐Houseboat ☐Trawler ☐Sail ☐Other_____

Multi-Hull: ☐Yes ☑ No  Hull material: **FBG** _____ Vessel name: **Wave Tamer**

Documentation/Registration number: **1224042** ___ HIN: **XYU01654G708**

Power type: ☑Inboard ☐ Inboard/Outdrive ☐Pod/Tractor ☐Surface Drive ☐Outboard ☐Jet ☐Sail Only

Number of engines: **2** ___ Total horsepower: **1360** ___ Maximum speed (mph): **35** ___ Fuel: **Diesel**

Requested hull agreed value: **$600,000** _____ Requested hull deductible (%): **2**

Purchase price: **600000** _____ Purchase year: **2022** ___ Year of last survey: **2022**

Live aboard? ☐Yes ☑No  Is vessel raced? ☐Yes ☑No  Mast construction/material: _____

Safety/security equipment on vessel: **All equiment is listed on page 11 on the survey**

Has vessel sustained any loss in last five years? ☑No ☐Yes, details: _____

Any existing damage to vessel? ☑No ☐Yes, details: _____

Tender manufacturer: _____ Model: _____ Year built: _____ Length: _____

HIN: _____ Total horsepower:_____ Carried aboard yacht? ☐No ☐Yes

Tender value: _____ Purchase price: _____ Purchase date: _____

Trailer manufacturer: _____ Year built: _____ Number of axles: _____ Brakes? ☐No ☐Yes

Trailer value: _____ Purchase date: _____ VIN: _____

Protection & Indemnity limit: **$500,000** ____ Med Pay limit: **$25,000**

Personal Property Limit: **$30,000** ___ Towing Limit: **$12,000**

Charter coverage? ☑No (standard) ☐Yes (optional)  Paid captain/crew? ☑No ☐Yes, details: _____

Commercial use? ☑No ☐Yes, details: _____

Navigation: ☐Inland and Coastal ☐Inland only ☐Other _____

Pick one or more of the following: ☑Northeast & Mid-Atlantic ☐South Atlantic ☐Florida & Islands ☐Hawaii

☐Gulf of Mexico ☐Inland East & Great Lakes ☐Inland West ☐Northern Pacific ☐Southern Pacific ☐Alaska

Primary mooring location: ___Atlantic Beach Causeway___

Address: _____308 Atlantic Beach Causeway_____

City, State Zip: _____Atlantic Beach, North Carolina 28512_____

Layup? ☑No ☐Yes, from: _____ to _____ Layup State: _____

Lienholder: ___SunTrust Bank_____

Address: _____PO Box 792270_____

City, State Zip: __San Antonio, TX  78279_____

Breach of warranty? ☑No (standard) ☐Yes (optional), amount of lien on yacht: _____

Years & details of boating experience: ___48' Ocean 5 years_____

(Include length, manufacturer & years owned / operated) _____

Boating/safety courses/licenses: ___State Test_____

Marine accidents/losses, last five years: ___No_____

(Include date, description & amount of damages/settlement) _____

Insurance ever cancelled, declined or refused? ☑No ☐Yes, details: _____

Ever charged with operating a vessel while intoxicated or under the influence of alcohol or drugs? ☑No ☐Yes

Additional information: _____

additional insured:
Atlantic Beach Causeway
308 Atlantic Beach Causeway
Atlantic Beach, North Carolina 28512

Completion and signing of this application does not bind the applicant of the company, however it is agreed that the information herein shall be the basis of the contract should a policy be issued.

*It is unlawful to knowingly provide false, incomplete, or misleading facts or information for the purpose of defrauding or attempting to defraud the Company.  Penalties may include imprisonment, fines, denial of insurance, and civil damages.*

Applicant Signature: *Grady @ Scaffoldmart*                    Date: __Jul 28, 2023__
                      Grady @ Scaffoldmart (Jul 28, 2023 14:25 EDT)

Producer Signature: _____                  Date: __07/26/2023__

Producer: _____



# EXHIBIT D



## Recreational Yacht Insurance Policy
### Underwritten On Behalf Of

## SUTTO NATIONAL

Sutton National Insurance Company
A Stock Company
1855 Griffin Road, Suite B-390
Dania Beach, FL 33004

For questions concerning policy coverage, claims or other assistance please contact:

Kemah Marine

35 Pratt Street, Suite 102, Essex, CT 06246
tom.carroll@kemahcapital.com
+1 844 520 5109 Extension 119



# Recreational Yacht Insurance Policy

Index

1.   Notice of Loss

2.   Policyholder Privacy Statement

3.   Fraud Notice

4.   Declarations Page

5.   Agreement

6.   Property Coverage
     1.   Yacht Physical Damage Coverage
     2.   Tender Physical Damage Coverage
     3.   Trailer Physical Damage Coverage
     4.   Personal Property Physical Damage Coverage
     5.   Property Coverage Conditions
     6.   Emergency Towing & Assistance Coverage

7.   Liability Coverage
     1.   Protection & Indemnity Liability Coverage
     2.   Uninsured & Underinsured Watercraft Liability Coverage
     3.   Medical Expenses Liability Coverage

8.   General Conditions

9.   Exclusions

10.  Definitions

11.  Sanctions Compliance

12.  Signing Page

Endorsements



## TEXAS IMPORTANT NOTICE

### Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company or HMO first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company or HMO. If you don't, you may lose your right to appeal.

**Sutton National Insurance Company**
To get information or file a complaint with your insurance company or HMO:

    Call: Vice President of Compliance
        at 561-226-3351
    Toll-free: 888-846-4238
    Email:
    compliance@suttonnational.com
    Mail: 1855 Griffin Road,
        Suite B-390
        Dania Beach, FL  33004

**The Texas Department of Insurance**
To get help with an insurance question or file a complaint with the state:

    Call with a question: 1-800-252-3439
    File a complaint: www.tdi.texas.gov
    Email:
    ConsumerProtection@tdi.texas.gov
    Mail:

        Consumer Protection, MC: CO-CP,
        Texas Department of Insurance,
        P.O. Box 12030, Austin, TX 78711-2030

### ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros o HMO. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros o HMO. Si no lo hace, podría perder su derecho para apelar.

**Sutton National Insurance Company**
Para obtener información o para presentar una queja ante su compañía de seguros o HMO:

    Llame a: Vice President of
        Compliance al 561-226-3351
    Teléfono gratuito: 888-846-4238
    Correo electrónico:
        compliance@suttonnational.com
    Dirección postal:  1855 Griffin Road,
        Suite B-390
        Dania Beach, FL  33004

**El Departamento de Seguros de Texas**
Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:

    Llame con sus preguntas al: 1-800-252-
    3439 Presente una queja en:
    www.tdi.texas.gov Correo electrónico:
        ConsumerProtection@tdi.texas.gov
    Dirección postal:

        Consumer Protection, MC: CO-CP,
        Texas Department of Insurance,
        P.O. Box 12030, Austin, TX 78711-2030

SNIC TX CCN 07 23



1. Notice of Loss

In the event of a loss please notify us immediately. To expedite handling of your claim, the named insured and policy number must be provided.

**Telephone: 800-466-9165**
**Website: www.raphaelandassociates.com**
**Email: yachtclaims@kemahcapital.com**



## 2. Policyholder Privacy Statement

### 2.1. Who Are We?

Sutton National Insurance Company ("Sutton National") is an insurance company headquartered in Dania Beach, Florida, USA.

If you have any questions or comments about this Privacy Policy or our practices, or wish to make a request regarding your Personal Information, please contact us as follows:

Sutton National Insurance Company
1855 Griffin Road
Suite B-390
Dania Beach, Florida 33004 Phone: 888-846-4238
contact@suttonnational.com

### 2.2. What is Covered by This Privacy Policy?

This Privacy Policy describes Sutton National's policies and practices regarding its collection and use of your personal data and sets forth your privacy rights. This Privacy Policy applies both to our online information gathering and dissemination practices in connection with this website and its various pages (the "Site"), and personal information we collect or receive offline, whether directly from you or from other sources. When you use the Site, you consent to the use of your information in the manner specified in this Privacy Policy.

If you have arrived at this Privacy Policy by clicking through a link on our Site, or by searching for or clicking on a link directing you to any page of our Site, then this Privacy Policy applies to you. This policy may change periodically, as we undertake new personal data practices or adopt new privacy policies, so please check back from time to time. By your continued use of the Site, you consent to the terms of the revised policy.

Use of our Site is strictly limited to persons who are of legal age in the jurisdictions in which they reside. You must be at least eighteen (18) years of age to use our Site. If you are not at least 18 years of age, please do not use or provide any information through this Site.

This Privacy Policy does not apply to any website owned and/or operated by or on behalf of any other entity, including any entities that may have invested in our company or other affiliates or business partners, even if our Site posts a link to those other websites and you click through from our Site. To the extent that you visit and/or disclose information through other sites, you are subject to the privacy policies and practices of those sites.

### 2.3. What Personal Information Do We Collect, From Where, And Why?

The following is a description of: (i) the categories of Personal Information we may have collected in the preceding 12 months, whether offline or online; (ii) the sources from which we may have collected it; and (iii) the business purposes for which we may have collected it.

### 2.4. Information we do NOT knowingly collect.

We do not knowingly solicit, collect, or receive information from or about minors (under the age of eighteen) or persons residing outside the U.S.A.

### 2.5. Information that You provide to us directly.

#### 2.5.1. Through our Site or for Customer Service

You may choose to voluntarily submit or otherwise disclose personal information to us (*e.g.*, name,



email address, phone number, and a personalized message about your inquiry), through the "Contact Us" features on our Site, or through mail, e-mail, telephone, fax or electronically. If you initiate contact or correspond with us, we may keep a record of your contact information and correspondence, whether oral or written, and we reserve the right to use your contact information, and any other information that you provide to us in your message, to respond thereto or to offer customer service and attempt to resolve your request or inquiry.

If you wish to change or correct any information voluntarily submitted to us, please do so by contacting us in the manner described above.

2.5.2. When Applying for our Product or Creating a Contract with Us

You may submit information to us when you apply for services or products that we offer and/or create an account with us. This information typically includes your name, email address, address, phone number, date of birth, social security number, income information, and account information, bank account information, login and passcode, lawsuit or judgment information, insurance information, etc. We use this information to respond to your inquiries and requests; provide support services to you; assess your satisfaction with our services; protect against and detect fraud in relation to your contract. We use this information to determine whether to issue a contract and to administer contracts when issued. We may need similar information to change the owner designation of the contract, support a change of address, or other administrative requirements.

2.5.3. Disbursing Proceeds to You

If we are paying a claim for one of our products, we or our delegees may collect certain information about you or your name, contact information, address, bank account information, and other related facts. We use this information to administer contracts when issued, to determine when you are eligible for payment on a claim, and to make payments on claims.

2.5.4. When Applying for a Job with Us

You may choose to voluntarily submit information to us when you apply to work for us as an employee or independent contractor. This information typically includes your name, email address, address, phone number, resumé (including but not limited to, employment history, education information, skills, interests). We use this information to evaluate your application.

2.6. Information from Third Parties acting on your behalf.

We may receive and maintain personal information (*e.g.*, name, address, telephone number, email address, date of birth, social security number, account numbers, account balances, account values, investments, financial or banking information.) contained in communications with someone other than you, such as your spouse, power of attorney, authorized representative, custodians, or your attorney.

2.7. Information we receive from our Service Providers.

We receive and maintain personal information from our Service Providers. Service Providers are persons or entities that we contract with to provide a material service in connection with property and casualty insurance products. Information that we typically may receive includes IP address, web activity, geolocation, residential address, phone number, financial information, letter vendors, bankruptcy activity letter correspondence, and email communications.



2.8. Information automatically collected by Use of this Site.

As with most websites, our Site automatically collects certain information during a user's visit to the Site. The information may include internet protocol (IP) addresses, the location where the device is accessing the internet, browser type, operating system and other information about the usage of the Site, including a history of pages viewed. We use this information to improve the Site's design, estimate user volume and usage patterns, speed up searches, and improve the user experience by customizing options and recognizing return users.  We may also use this information to help diagnose problems with our server and to administer our website, analyze trends, track visitor movements, and gather broad demographic information that assists us in identifying visitor preferences. More specifically:

IP Address

Each time you visit our Site, we may automatically collect your internet protocol (IP) address and the web page from which you came.  In order to administer and optimize the Site for you and to diagnose and resolve potential issues with or security threats to our Site or to the company, we may use an IP address to help identify users and to gather broad demographic information about them.

Cookies, Pixel Tags, and Web Beacons

Cookies (browser or flash) are small files that a site or its service provider transfers to your device through your web browser (if you allow) that enables the site's or service provider's systems to recognize your browser and capture and remember certain information. We use cookies to optimize Site functionality and improve a user's experience while navigating through the Site. Most or all browsers permit you to disable or reject cookies.  You can do this by adjusting your preferences in the browser. You can also click on the "Privacy and Cookies Policy" banner at the bottom of the Site and adjust Cookie Settings to accept or reject certain cookies used by our Site.

Our Site may incorporate "pixel tags," "web beacons," or similar tracking technologies (collectively, "pixel tags") that track the actions of Site users. Pixel tags are used to collect information, such as the internet service provider, IP address, the type of browser software and operating system being used, the date and time the Site is accessed, the website address, if any, from which a user linked directly to the Site and/or the website address, if any, to which the user travels from the Site and other similar traffic-related information.

We may aggregate information collected from Site visits by various users to help us improve the Site and the services that we provide through the Site.

2.8.3.   Do Not Track

Our Site tracks when visitors to our website enter through a marketing landing page. The Site also keeps a record of third-party websites accessed when a user is on our Site and clicks on a hyperlink. But we do not track users to subsequent sites and do not serve targeted advertising to them.

2.8.4.   Analytics Information

Web servers for the Site may gather certain anonymous navigational information about where visitors go on our Site and information about the technical efficiencies of our Site and services. Anonymous information does not directly or indirectly identify, and cannot reasonably be used to identify, a particular individual. Examples of anonymous information may include certain information about the internet browser, domain type, service provider and IP address information collected



through tracking technologies and aggregated or de- identified data. We use anonymous analytics information to operate, maintain, and provide to you the features and functionality of the Site.

We use Google Analytics ("GA") and other analytics tools for aggregated, anonymized website traffic analysis. In order to track session usage, Google drops a cookie with a randomly generated ClientID in a user's browser. This ID is anonymized and contains no identifiable information like email, phone number, name, etc. We also send Google IP Addresses. We use GA to track aggregated website behavior, such as what pages a user looked at, for how long, etc. This information helps us improve the user experience and determine Site effectiveness. You have the option to delete your cookies and/or install the Google Analytics Opt-Out Browser Add-On. (https://tools.google.com/dlpage/gaoptout).

## 2.9. What Personal Information Do We Share with Others?

### 2.9.1. We Do Not Sell Personal Information

We do not sell any of your Personal Information. Except as described in this Privacy Policy, we also do not disclose to third-parties information about your visits to our Site. **Accordingly, Sutton National has not sold Personal Information since the acquisition of the company on January 1, 2019, by its new owners.**

We do not knowingly collect and do not, and will not, sell Personal Information of minors under 18 years of age without first obtaining affirmative authorization.

### 2.9.2. Sharing Information with our Affiliates and Service Providers.

We may share your non-public personal information and other information that we have collected with our affiliates and Service Providers.

Service Providers are persons and entities that we contract with to provide us a material service in connection with our business activities. Our Service Providers include law firms, accounting firms, accounts receivable management companies, data analytics companies, location service companies, delivery services, technological support companies, banks, or other financial institutions.

In connection with providing business services to us, one or more of our Service Providers may have access to your non-public personal information. This personal information will not be used for any purpose other than as reasonably necessary to perform a business purpose that we authorize, and it will not be further used by the Service Provider or disclosed to any Third Party.

### 2.9.3. Sharing Information with our Investors.

We may share your non-public personal information and other information that we have collected with entities that invest in our company. This information may include a name, address, phone number, e-mail address, date of birth, social security number, financial or banking information, credit information, account numbers, account balances, payment information, information contained on credit, service, or product applications, insurance applications or claims, etc.

An investor may have access to, receive, or use this information for purposes of auditing, risk management, and in connection with the shared services the investor offers to us as a portfolio company, including accounting, legal, capital markets, data analytics, human resources, information technology and marketing services.

### 2.9.4. Sharing Personal Information at Your Direction.

We may share your personal information with Third Parties to whom you authorize us in advance to intentionally disclose to or allow to use your personal information in connection with the services that we provide.



2.9.5. Sale of our Company or Company Assets.

In the event of a sale, assignment, liquidation, or transfer of our assets or of any portion of our business, we reserve the right to transfer any and all information that we collect from individuals, or that we otherwise collect in connection with use of the Site, to unaffiliated third-party purchasers.

2.9.6. Monitoring, Law Enforcement and Legal Requests.

We reserve the right, at all times, to monitor, review, retain and/or disclose any information, including non-public personal information, as may be necessary to satisfy any applicable law, regulation, legal process, or governmental request or to cooperate with or comply with requests from law enforcement and other authorities. We may also use such personal information if required to internally investigate fraud or when it is necessary to protect the Site, the company, our affiliates, or others.

2.9.7. Our Internal Use and Research

We reserve the right to use and disclose de-identified information; anonymized information; aggregated information or publicly available information that has not been combined with nonpublic personal information for purposes including, but not limited to, our own internal use, data mining, and research.

2.10. How Do We Protect Personal Information?

We take reasonable security procedures and practices appropriate to protect personal Information from loss, misuse, unauthorized access, disclosure, alteration, and destruction. We maintain physical, electronic and procedural safeguards designed to protect against the unauthorized disclosure of personal information, and personal information is disposed of properly and securely utilizing industry standards. Our data security policies and practices are periodically reviewed and modified as necessary.

2.11. Terms of Use

Please also visit our "Terms of Use" section establishing the use, disclaimers, and limitations of liability governing the use of our Site.

**THE INFORMATION BELOW APPLIES TO CALIFORNIA RESIDENTS**

2.12. Your Rights Under The California Consumer Privacy Act.

2.12.1    The CCPA and "Personal Information."

The California Consumer Privacy Act ("CCPA"), effective as of January 1, 2020, grants privacy rights to California consumers in connection with their Personal Information.

Personal Information ("PI") is "information that identifies, relates to, describes, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household."

A consumer has rights regarding his/her PI when dealing with a covered business, including:


- A right to know what PI is collected regardless of whether electronically or orally, used, shared or sold by the business;

- A right to access PI collected and retained by the business;

- A right to require businesses and, by extension, their service providers, to delete PI, subject to certain exceptions;

- A right to opt-out of the business' sale of PI; and

- A right to non-discrimination in terms of pricing or service for choosing to exercise a privacy right under the CCPA.

2.12.2. Consumer Right to a Notice of Collection.

A business subject to the CCPA must, at or before the point of collection of PI, inform a consumer as to the categories to be collected and the purposes for which it shall be used. A service provider that receives or collects PI on behalf of, or at the direction of, a covered business may not be required to provide a notice of collection.

2.12.3. Consumer Right to Know.

A covered business must disclose in its privacy policy the PI it has collected, sold, or disclosed for a business purpose in the past 12 months.

<u>Collection</u>: A business must disclose the following in response to a verifiable request:

- The categories of PI the business has collected about the consumer;

- The categories of sources from which that PI was collected;

- The business or commercial purpose for collecting or selling PI;

- The categories of third parties with which the business shares PI; and

- The specific pieces of PI the business has collected about the consumer making the request;

<u>Sale</u>: A business that sells PI or discloses it for a business purpose must disclose, in response to a verifiable request, the following:

- The categories of PI collected about the individual consumer

- The categories of PI the business sold about the individual consumer, and the categories of third parties to which it was sold. Or, if the business has not sold any of the consumer's PI, it must state that fact.

- The categories of PI the business has disclosed about the individual consumer for a business purpose. Or, if the business has not disclosed the consumer's PI for a business purpose, it must state that fact.

2.12.4. Consumer Right to Delete Directed to a Covered Business.

A California consumer has the right to request that a covered business delete his/her PI, subject to certain exceptions. Once a request is reasonably verified by the covered business, the PI requested to be deleted must be removed from the records held by that business. The business must also direct its Service Providers with whom the information was shared to also delete the information, unless it is subject to an exception.

A request to delete may be denied if retaining the information is necessary for the business or its Service Providers to:

1. Complete the transaction for which it collected the PI, provide a good or service requested by the consumer, take action reasonably anticipated within the context of the ongoing business


relationship with the consumer, or otherwise perform a contract with the consumer.

2. Detect security incidents, protect against malicious, deceptive, fraudulent, or illegal activity, or prosecute those responsible for such activities.

3. Debug products to identify and repair errors that impair existing intended functionality.

4. Exercise free speech, ensure the right of another consumer to exercise their free speech rights, or exercise another right provided for by law.

5. Comply with the California Electronic Communications Privacy Act (Cal. Penal Code § 1546 seq.).

6. Engage in public or peer-reviewed scientific, historical, or statistical research in the public interest that adheres to all other applicable ethics and privacy laws, when the information's deletion may likely render impossible or seriously impair the research's achievement, if you previously provided informed consent.

7. Enable solely internal uses that are reasonably aligned with consumer expectations based on the consumer's relationship with the business.

8. Comply with a legal obligation.

9. Make other internal and lawful uses of the information that are compatible with the context in which the consumer provided it.

2.12.5. Consumer Right to Non-Discrimination.

A business must not discriminate against a consumer who exercises CCPA rights. A business may charge different prices or provide a different quality of goods or services, but only if the difference is reasonably related to the value provided to the consumer by the consumer's data. A business may offer financial incentives to a consumer for the collection, sale, or deletion of personal information on a prior, opt-in consent basis.

2.12.6. Consumer Right to Opt-Out.

A covered business that sells PI to third parties must provide notice to consumers and clearly inform them of the right to opt out of the sale. A business that sells PI also must provide a "Do Not Sell My Personal Information" link on its internet homepage that links to a webpage that enables the consumer to opt out of the sale of his or her PI.

A business is prohibited from selling the PI of a consumer the business knows is less than 16 years of age, unless (for a child between 13 and 16 years of age) the child has affirmatively authorized the sale or (for a child less than 13 years of age) the child's parent or guardian has affirmatively authorized the sale.

2.12.7. Privacy Policy Requirements.

A covered business must include the following in its online privacy policy, which should be updated every 12 months:

• A description of consumer CCPA rights, including the right to opt out of the sale of PI and a separate link to a "Do Not Sell My Personal Information" internet webpage if the business sells PI;

• The method(s) by which a CCPA request can be submitted; and

• A list of the categories of PI the business has collected, sold, or disclosed for a business purpose in the preceding 12 months.

2.13. How Do I Make a CCPA Request?

2.13.1. Instructions for Submitting a Request.



If you are a California consumer and wish to make a CCPA request to us, you may submit your request by:

**Fill out a Form on our Website:** https://suttonnational.com/privacy-requests

**Call us, Toll-Free, at:** 1-877-201-1125

We will confirm receipt of your request within 10 days of receiving it. The confirmation will provide a ticket number for your request, information about how we will process and attempt to verify your request, and by when you should expect to receive a response.

Note that we are only required to respond to your request to know - for access or data portability – two times in any 12-month period.

We are required to keep records of your CCPA request for at least 24 months, including any assigned ticket number, the request date and nature of the request, the manner in which the request was made, the date and nature of our response, and the basis for the denial of the request if the request is denied in whole or in part.

2.13.2.   We Need to Verify Your CCPA Request.

We need to be reasonably sure that the person making the request regarding your PI is you, or a representative that you have authorized to make a request on your behalf.

We cannot respond to your request or provide you with PI if we cannot verify your identity or your authority to make a request on behalf of another person. Accordingly, at the time you submit your request, we will request that you provide us certain information, such as your full name, date of birth, and address, that will allow us to attempt to reasonably verify you are either the person about whom we collected PI or an authorized representative of that person.

To the extent possible, we will not ask you for new PI to verify your request but will instead attempt to use the verification data you provide to cross-check information available in existing records. If we are unable to verify your request without requesting new PI, we will delete that new information as soon as practical after processing your CCPA request, except as may be required to comply with the CCPA's request record retention requirements.

You are not required to create an account with us to verify your request. We will only use PI you provide for verification to attempt to verify your identify or your authority to make the request for another person.

Please note that certain requests require different levels of verification, depending on the sensitivity of the information at issue. For example, if you request to know the specific pieces of information we hold, and not just the categories, we will require, in addition to matching data points, your submission of a written declaration under penalty of perjury that you are the consumer whose PI is the subject of the request. In addition, certain pieces of information, such as a social

security number, driver's license number or other government-issued identification number, or financial account information, will not be disclosed in response to a CCPA request.

If you wish to authorize someone else to act on your behalf, we must receive proof that this person is authorized to do so. Proof can be provided by a consumer verifying his/her own identity directly with us and then providing written authority for a designated person to act on the consumer's behalf, or through receipt of a power of attorney or proof that the person is registered with the California Secretary of State as your designated authorized representative. You may also make a verifiable consumer request on behalf of your minor child.



2.13.3.   Our Response to Your CCPA Request.

Within 10 days of receipt of your CCPA request, we will provide an initial confirmation of receipt with an assigned ticket number by email or U.S. Mail.

If you submit a Request to Delete, we must re-confirm your choice to delete the specified information after your request has been verified and before the data is deleted.

We strive to provide a response to a verifiable consumer request within 45 days of its receipt, regardless of the time it takes to verify the request. If we need additional time, we will inform you of the reason.

We will send our response to your request by U.S. mail or email, at your option. Any information we provide will cover only the 12-month period preceding receipt of your request.

If we cannot respond to or comply with your Request to Know or Request to Delete, say because we cannot verify your identity or because an exception applies, we will explain our reasoning and decision in our response.

We do not charge a fee to process or respond to your request unless it is excessive, repetitive, or manifestly unfounded, and we have informed you in writing of the reasoning behind a charge and its estimated cost. We will provide a cost estimate before completing your request if we determine that a charge is warranted.

2.14.  How Do I Get Information Regarding Pending CCPA Requests?

If you have any questions about a pending CCPA request, please contact us as follows, and provide your ticket number:

**Call us, Toll-Free, at:** 1-877-201-1125

**E-mail Us at:** contact@suttonnational.com



## 3. Fraud Notice

3.1. Arkansas   Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance isguilty of a crime and may be subject to fines and confinement in prison.

3.2. California   For your protection, California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

3.3. Colorado   It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

3.4 District of Columbia   It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/orfines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

3.5. Florida   Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

3.6. Kansas   A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares withknowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of,an application for the issuance of, or the rating of an insurance policy for personal orcommercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

3.7. Kentucky   Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially falseinformation or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

3.8. Louisiana   Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance isguilty of a crime and may be subject to fines and confinement in prison.

3.9. Maine   It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits.

3.10. Maryland   Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines andconfinement in prison.



| 3.11 | New Hampshire | Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20. |
| 3.12 | New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| 3.13 | New Mexico | Any person who knowingly presents a false or fraudulent claim for payment of a lossor benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties. |
| 3.14. | New York | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation. The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| 3.15. | Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| 3.16. | Oklahoma | Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| 3.17. | Oregon | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of a fraudulent insurance act which may be a crime and may subject the person to penalties. |
| 3.18. | Pennsylvania | All Commercial Insurance: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. |
| 3.19. | Rhode Island | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| 3.20. | Tennessee | All Commercial Insurance, Except as Provided for Workers' Compensation It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| 3.21. | Utah | Workers' Compensation: Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| 3.22 | Virginia | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |



3.23. Washington     It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

3.24. West Virginia     Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

3.25. All Other States     Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.


KEMAH MARINE

## 4. Declarations Page

**Policy Number:** KMYSN00000003463-24  **Date of Issue:** June 19, 2024

**Policy Period:** From 07/28/2024 through 07/28/2025, beginning and ending at 12:01 AM Eastern Time

**Insured:** Grady Smith
1041 East Rock Spring Rd, Greenville, NC, 27834

| Insured Yacht | Model | Name | HIN | LOA | Year |
|---|---|---|---|---|---|
| Ocean Yachts | 54 SS | Wave Tamer | XYU01654G708 | 54 | 2008 |

| Coverage: | Limit: | Deductibles: | Premium: |
|---|---|---|---|
| 6.1. Yacht – Agreed Value | $600,000 | $12,000 Standard | $5,796 |
| Named Windstorm | $600,000 | $60,000 | |
| Lightning Strike | $600,000 | $60,000 | |
| Theft | $600,000 | $12,000 | |
| 6.2. Tender | $12,000 | $100 | |
| 6.3. Trailer | $6,000 | $100 | |
| 6.4. Personal Property | $30,000 | $100 | |
| 6.6. Emergency Towing & Assistance | $12,000 | | |
| 7.1. Protection & Indemnity | $500,000 | | $444 |
| Pollution | $997,100 | | |
| 7.2. Uninsured & Underinsured Watercraft | $500,000 | | |
| 7.3. Medical Expenses | $25,000 | | |
| Optional Charter | Not Included | | |
| Optional Crew, maximum of 1 at any time | Not Included | | |
| Optional Breach of Warranty | Not Included | | |
| Other Endorsement | Not Included | | |
| Trip Navigation | Not Included | | |
| Terrorism Risk Insurance Act | Included per policy terms | | |
| Taxes / Fees / Surcharges | | | $119 |
| **Total** | | | **$6,359** |

**Navigation Limits:**
Per attached Navigation Page
**Lay-Up Period:**
N/A

**Primary Mooring Location / Additional Insured:**
Atlantic Beach Causeway
308 Atlantic Beach Causeway
Atlantic Beach, North Carolina 28512
USA

**Warranty:** N/A

**Additional Insureds:** (none)

**Lienholder:** SunTrust Bank, PO Box 792270, San Antonio, Texas, 78279, US

**Included Forms & Endorsements at Time of Issue:**

Navigation Endorsement

**These Declarations, together with the Policy Conditions, Coverage Form(s) and any Endorsement(s) complete the above-numbered Policy.**



## 5. Agreement

5.1. This Kemah recreational yacht insurance policy, with your Declarations Page, Navigations Page and other amendatory endorsements, if any, it details the coverages and other conditions of **your** contract with **us**. **We** agree to provide the insurance described, unless stated otherwise or when any exclusion applies, in return for **your** premium, compliance with all contract conditions, and adherence to all representations provided by **you** to **us**.

## 6. Property Coverage

6.1. Yacht Physical Damage Coverage

6.1.1. Coverage Provided: **We** will pay for accidental, direct physical loss of or damage to the yacht

6.1.2. Deductible: The standard Deductible amount applies to each **occurrence** unless stated otherwise.The Standard Deductible will be waived when the **yacht** is a **total loss** as the result of an **occurrence**, however, this does not apply to covered **consequential damage** arising from excluded cause(s) of loss. If the **yacht** is damaged or lost as a result of, or in connection with, a **named storm,** whether directly or indirectly, the Named Storm Deductible applies.  If the **yacht** is damaged or lost as a result of, or in connection with, theft**,** whether directly or indirectly, theTheft Deductible applies. If the yacht is damaged or lost as a result of, or in connection with, lightning, whether directly or indirectly, the Lightning Deductible applies.

6.1.3. Payment of Loss: If the **yacht** suffers partial loss or damage, **we** will pay the reasonable cost to recover, repair or replace the loss or damage, up to the **agreed value**, subject to applicable depreciation as identified below under property coverage conditions. If the **yacht** is a **total loss**, **we** will pay the **agreed value**.

6.1.4. Loss Expense: **We** will pay, beyond the **agreed value**, for all reasonable costs for necessary salvage or loss mitigation **you** incur as a result of a covered loss, subject to a maximum of the **yacht agreedvalue**. This coverage does not apply to **wreck removal**.

6.1.5. **We** will pay half of the reasonable costs **you** incur to protect the **yacht** in the event of a **named storm** or tsunami watch or warning being issued for the location where the **yacht** is located. Expenses for the purchase of lines, anchors or additional equipment to secure the **yacht** are not included in this coverage.  The total amount payable will not exceed $2,500 per **named storm** or
$5,000 per policy term.

6.1.6. Loss of Use: **We** will pay half of the reasonable costs **you** incur for temporary lodging, airfare, train fare, rental car or rental of a replacement watercraft if a covered loss prevents **you** from continuedlodging aboard the **yacht**. **We** will pay half of the reasonable costs **you** incur for rental of a replacement watercraft of like kind and quality if a covered loss that prevents **you** from planned usage of the **yacht**. **We** will pay half of any non-refundable entry or registration fees paid prior to an **occurrence** if **you** incur a covered loss within ten days prior to the start of a tournament or regatta, and the covered loss prevents **you** from participating. The total amount payable will not exceed $5,000 per policy term, not to exceed $100 per day for up to three days lodging, $50 per day for up to three days car rental, or $500 per person for airfare or train fare.


6.1.7. Guaranteed Repair: **We** guarantee repair of faulty workmanship during professional repair of the **yacht** and directly related to an **occurrence**. This coverage only applies within 24 months of the date of **occurrence** and is restricted to faulty workmanship by a person or entity **we** approved in advance, using methods **we** agreed to. There is no coverage if the **yacht** does not remain continuously insured with **us** from the time of the original **occurrence**. **We** reserve the right to recover any payment made due to faulty workmanship. The total amount payable will not exceed 25% of the **yacht agreed value**.

6.2. Tender Physical Damage Coverage

6.2.1. Coverage Provided: **We** will pay for accidental, direct physical loss of or damage to **your tender**. The Coverage Limit is the most **we** will pay for any **occurrence** regardless of the number of **tenders** lost or damaged.

6.2.2. Deductible: The Tender Deductible amount applies to each **occurrence** unless stated otherwise. The Tender Deductible will be waived if the **yacht** is a **total loss** as the result of the same **occurrence**.

6.2.3. Payment of Loss: If any **Tender** suffers loss or damage, **we** will pay the reasonable cost to repair or replace up to the **actual cash value**, subject to applicable depreciation as identified below under property coverage conditions.

6.3. Trailer Physical Damage Coverage

6.3.1. Coverage Provided: **We** will pay for accidental, direct physical loss of or damage to a trailer owned by **you** and used exclusively for storage or transportation of the **yacht** or any **tender**. The Coverage Limit is the most **we** will pay for any **occurrence** regardless of the number of trailers lost or damaged.

6.3.2. Deductible: The Trailer Deductible amount applies to each **occurrence** unless stated otherwise. The Trailer Deductible will be waived if the **yacht** is a **total loss** as the result of the same **occurrence**.

6.3.1. Payment of Loss: If a covered trailer suffers loss or damage, **we** will pay the reasonable cost to repair or replace up to the **actual cash value**, subject to applicable depreciation as identified below under property coverage conditions.

6.4. Personal Property Physical Damage Coverage

6.4.1. Coverage Provided: **We** will pay for accidental, direct physical loss of or damage to **personal property** while onboard, or being loaded onto or offloaded from, the **yacht** or **tender**. The Coverage Limit is the most **we** will pay for any **occurrence**. The most **we** will pay for loss of or damage to **fishing tackle**, or **collectibles** is $5,000 per item or $25,000 per **occurrence**.

6.4.2. Deductible: The Personal Property Deductible amount applies to each **occurrence** unless stated otherwise. The Personal Property Deductible will be waived if the **yacht** is a **total loss** as the result of the same **occurrence**.

6.4.3. Payment of Loss: If any **personal property** suffers loss or damage, **we** will pay the reasonable cost to repair or replace up to the **actual cash value**, subject to applicable depreciation as identified below under property coverage conditions.



6.4.4.   Document Replacement: **We** will pay for the reasonable expenses that **you** or **your** guest incur to replace any required passport, birth certificate, license, permit, title or other legal document accidentally lost or destroyed, provided such loss occurs while travelling aboard the **yacht** outside of the United States and more than 300 miles from any mooring location named in this policy. The total amount payable will not exceed $2,500 per policy term.

6.5.  Property Coverage Conditions

6.5.1.   Property Not Covered: **We** do not cover fuel, perishables, consumables, cargo, contraband, money, travelers' checks, securities or similar documents of monetary value, computer software, electronic data, sunglasses, prescription eyewear or contact lenses, or watercraft other than the **yacht** or **tender** for loss or damage.

6.5.2.   Restricted Coverage: **We** will not pay more than half of the covered costs **you** incur for loss of or damage to spare or uninstalled motors, engines or propulsion units, or to any property not located aboard the **yacht** or **tender** at the time of an **occurrence**. **We** will not pay more than 25% of the **agreed value** for covered costs **you** incur for loss of or damage to any **powertrain**.

6.5.3.   Depreciation: Depreciation will be applied at a factor of 15% per calendar year, or any portion thereof, based on the verifiable age of a component suffering loss or damage. Depreciation will never exceed 70%, and will never exceed 50% on mast or spars, or 25% on props and shafts. Depreciation applies beginning at 1 year of age on all batteries, anti-fouling paint, tires, sails, carpeting, vinyl, canvas, plastic, upholstery, or flexible protective coverings. Depreciation applies beginning at 5 years of age on all outboard motors or outdrive units, or any components thereof. Depreciation applies beginning at 7 years of age on any gasoline fueled inboard motor, or any components thereof. Depreciation applies beginning at 10 years of age on running gear, any diesel fueled inboard motor, or any components thereof, and on any machinery, appliances or electronics, or any components thereof, not otherwise described above. Depreciation applies beginning at 10 years of age on any rigging, or any components thereof, and at 15 years of age on any mast or spars.

6.5.4.   Standards of Repair: **We** have the option of limiting payment to the reasonable cost of replacing damaged components with like kind and quality new components, less any applicable depreciation. **We** are not obligated to compensate **you** for upgrades or betterment. **We** will not be obligated to repair or replace an entire pair, set or series of objects when one or more is not lost or damaged as the result of an **occurrence**. **We** have the option of limiting payment to the reasonable cost of applying suitable patches and repainting or resurfacing a damaged area, in accordance with standard marine repair practice, so that the damaged area will match, as closely as practical, the surrounding surfaces; if one side of the hull of the **yacht** or **tender** is damaged and repainting or recoating is necessary, the most **we** will pay is the cost of repainting or recoating that one side.

6.6.  Emergency Towing & Assistance Coverage

6.6.1.   Towing & Assistance: **We** will pay for the reasonable expenses **you** incur for professional towing to the nearest location where necessary repairs or service can be performed, or for delivery of necessary supplies and emergency labor, if a **covered vessel** is disabled while afloat and away from safe harbor, or if **your** covered trailer becomes disabled on a roadside. The Coverage Limit is the most **we** will pay for any **occurrence**. This coverage shall be deemed excess over all other valid and collectible towing or assistance benefits



6.6.2. Temporary Replacement Captain: **We** will pay for the reasonable expenses **you** incur for a temporary replacement captain necessitated by **bodily injury** to **you** or a covered paid captain during service to **your yacht** which prevents performance of planned navigational duties. The most **we** will pay for replacement captain services is $1,000 per policy term.

## 7. Liability Coverage

7.1. Protection & Indemnity Liability Coverage

7.1.1. Coverage Provided: **We** will pay sums an **insured** is legally obligated to pay as damages for **bodily injury**, **property damage**, **environmental damage**, **pollution** or **wreck removal** resulting from an **occurrence** arising out of the ownership, maintenance, or use of the **yacht**, or **tender**. **We** will pay sums **you** are legally obligated to pay as damages for **bodily injury**, or **property damage** resulting from an **occurrence** arising out of the use of a **non-owned yacht**; however, if other liability coverage applies, **we** will only provide a proportional share of the highest available limit for the **occurrence**

7.1.2. Additional Insured: **We** will pay sums an **additional insured** is legally obligated to pay as damages with respect to their vicarious liability for damages arising out of **your** ownership, maintenance or use of the **yacht** or **tender**.

7.1.3. Payment of Loss: The Coverage Limit is the most **we** will pay for any one **occurrence**, regardless of how many claims, watercraft, people or entities are involved. **We** may investigate, negotiate and settle any such loss at **our** sole discretion. The most **we** will pay for **environmental damage** is the lesser of the Coverage Limit or $500,000. The most we will pay for **pollution** is the greater of the Coverage Limit or your statutory limit of liability as defined by the Oil Pollution Act of 1990 and its subsequent amendments.

7.1.4. Defense: **We** will defend an **insured** or **additional insured** against any suit seeking covered damages for **bodily injury**, **property damage**, **environmental damage, pollution** or **wreck removal** with counsel of **our** choice. **We** will pay accrued interest, or pre-judgment interest awarded, for any portion of a judgment **we** are responsible for paying, ending when **we** pay or make an offer to pay that portion of a judgment. **We** will pay premiums on bonds valued not more than the Coverage Limit. **We** will pay the reasonable costs an **insured** incurs at **our** request, including verifiable lost earnings not to exceed $250 per day or $10,000 per **occurrence**. Costs **we** pay for defense are in addition to the Coverage Limit, up to the Coverage Limit.

7.2. Uninsured & Underinsured Watercraft Liability Coverage

7.2.1. Coverage Provided: **We** will pay sums **you** are legally entitled to recover, from an **uninsured** or **underinsured** owner or operator, as damages for **bodily injury** occurring aboard a **covered vessel** from a collision resulting in verifiable evidence of physical contact between **your covered vessel** and a watercraft owned or operated by an **uninsured** or **underinsured** person. Coverage does not apply under any state or federal compensation law or act, whether directly or indirectly, or to claims settled without **our** prior written consent.

7.2.1. Payment of Loss: The Coverage Limit is the most **we** will pay for any one **occurrence**, regardless of how many claims, watercraft, people or entities are involved. **We** will reduce any payment by the value of any damages paid or payable to **you** under liability coverage limits available to any **uninsured** or **underinsured** owner or operator. If other **uninsured** or **underinsured** watercraft coverage applies to **you**, **we** will only provide a proportional share of the highest available limit for an **occurrence**.


KEMAH MARINE

7.3. Medical Expenses Liability Coverage

    7.3.1. Coverage Provided: **We** will pay for reasonable and necessary **medical expenses** incurred and reported to **us** within 1 year of the date of **occurrence**, secondary to and excess over all other validand collectible insurance applicable to the same **occurrence**. Coverage does not apply to trespassers.

    7.3.2. Cooperation Required: Any person seeking coverage for **medical expenses** must cooperate by participating in any reasonable physical examination **we** request, by a medical professional of **our**choice at **our** expense and provide requested authorization for the release of all related medical reports or records to **us**.

    7.3.3. Emergency Veterinary Expenses: **We** will pay for the reasonable expenses **you** incur for emergencyveterinary services for any domesticated pet legally owned by **you**, due to sudden or unexpected injury received aboard, or while boarding or exiting, the **yacht** or **tender** and reported to us within 30 days of the date of **occurrence**.

    7.3.4. Search and Rescue: **We** will pay for reasonable expenses **you** incur for search and rescueoperations due to a person being lost in the water off a **covered vessel**.

    7.3.5. Payment of Loss: The Coverage Limit is the most **we** will pay for any one **occurrence**, regardless of how many claims or people are involved. Payments made are not an admission of liability.  The most **we** will pay for emergency veterinary services is $2,500 per policy term. The most **we** will payfor search & rescue is $25,000 per policy term.

## 8. General Conditions

8.1. Policy Period: Coverage applies for a term of 1 year, unless stated otherwise, to **occurrences** that fall within the stated policy period, beginning and ending at 12:01 am Eastern Standard Time.

8.2. Territory: Coverage applies, unless stated otherwise, only while the vessel is afloat within the Navigation Limits specified, or while ashore or when being trailered within North America. There is no Property coverage while the Yacht is being loaded onto, unloaded from or transported aboard a cargo vessel, or when being transported more than 500 miles over land by common carrier.

8.3. Lay-Up: If an optional Lay-Up period is included, the **yacht** and any **tender** must remain out of commission and unavailable for immediate navigation during the dates indicated. The **yacht** must not be occupied for more than 2 overnight stays in any 30-day period during lay-up.  There is no coverage for any **occurrence** during, caused by or resulting from any violation of the Lay-Up conditions.

8.4. Held Covered: If the Navigation Limits or Lay-Up period are unwillingly violated for reasonable and necessary reasons beyond **your** control, coverage will remain in effect, provided that **you** notify **us** immediately of the violation and pay any additional premium **we** determine appropriate within 21 days of our request for payment.

8.5. Concealment, Fraud or Misrepresentation: This policy will be void from inception if **you** conceal or misrepresent to **us** any material fact relating to this insurance at any time.

8.6. Policy Authors: Regardless of who may have drafted or prepared this policy, or any portions thereof, the provisions contained herein shall be deemed to have been authorized by **us.**

8.7.  Policy Changes: No changes may be made unless they are agreed to in writing by **us**.



8.8. Cancellation: If the premium payable at inception is not paid by the due date, the policy will be void. **You** may cancel this policy at any time by returning it to **us**, or by notifying **us** in writing of a future cancellation date. **We** may cancel this policy by notifying **you** in writing, at the last mailing address known to **us**, at least 10 days before the stated effective date of cancellation. If this policy is cancelled, **we** will refund unearned premium to **you** pro rata.

8.9. Conforming to Law: Any provision in this policy that conflicts with state or federal law is automatically amended to conform to the minimum provisions of the law. It is agreed that **you** will obtain and maintain current all licenses or permits necessary for legal use and operation of a **covered vessel**.

8.10. Conforming to Trade Sanction Laws: This policy does not apply to the extent that trade or economic sanctions, or other laws or regulations, prohibit **us** from providing insurance.

    8.10.1. Kemah shall not be deemed to provide cover and Kemah shall not be liable to pay any claim nor provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose Kemah to any sanction, prohibition or restrictionunder United Nations or the trade or economic sanctions, laws or regulations of the United Stateof America.

    8.10.2. US Treasure Department's office of Foreign Assets Control: U.S. Treasury Department's Office ofForeign Assets Control (OFAC) administers and enforces economic and trade sanctions based onUS foreign policy and national security goals based on Presidential declarations of "national emergency." OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorist organizations, and narcotics traffickers and "Specially Designated Nationals and Blocked Persons." This list can be found on the United States Treasury's web site – http://www.treas.gov/ofac

    8.10.3. In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated US sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments may also apply.

8.11. Transfer of Interest: **You** cannot transfer interest in the policy to anyone else. When **you** sell, assign, or otherwise transfer title to the **yacht**, or when **your** interest in the **yacht** is legally or equitably removed,dissolved or of no further effect, coverage will terminate immediately. There is no coverage if **you** do not have an insurable interest at the time of an **occurrence**.

8.12. Rights of Recovery: There is no coverage if an **insured** waives any rights to recover damage from any person or entity that may be liable; however, this does not apply to an **additional insured** provided suchcontract or agreement is fully executed prior to an **occurrence**. **We** retain rights of subrogation for any payment of loss on behalf of an **insured**. If **we** pay for a loss to or on behalf of an **insured** who also recovers damages for that loss from others, the **insured** must reimburse **us** to the extent of **our** payment.

8.13. Bankruptcy: **We** will meet **our** obligations under this policy regardless of whether **you** or **your** estate becomes bankrupt or insolvent.



8.14. Duties after a Loss: **Your** failure to cooperate will void coverage under this policy. **You** must notify **us** immediately after any **occurrence** which may be covered or give rise to a claim under this policy. **You** must take all reasonable measures that are necessary to mitigate loss to **your** property. At **our** request, **you** must submit to **us** a complete, sworn proof-of-loss document of **our** choice. **Insureds** must cooperate with **us** in all aspects of investigating and settling any loss and agree to be examined under oath at **our** request. **Insureds** must allow **us** to examine any required loss records and inspect damaged property prior to alteration, repair or disposal. **Insureds** must not assume any liability, obligation, or expense without **our** prior written consent, except loss mitigation costs to protect covered property from further loss. **Insureds** must cooperate with **us** in efforts to recover any loss payment from any person or entity that may be liable for those sums.

8.15. Duplicate Benefits: It is agreed that no person or entity will recover duplicate payments under different applicable coverages for the same elements of an **occurrence**.

8.16. Loss Conditions: No action **we** take after an **occurrence** to mitigate damage or investigate a loss can be considered a waiver of **our** rights, or an admission of coverage or liability. **You** cannot abandon any property to **us**, or to any other person or entity, without **our** prior written consent. **We** will reduce any payment for property damage by the value of any prior loss or damage not repaired or replaced at the time of loss. In the event of a total loss involving covered **consequential damage** arising from excluded cause(s) of loss, we will reduce any payment for property damage by the **actual cash value** of any item,part, or component damaged by excluded cause(s). **We** will pay for a covered loss no later than thirty (30) days after **we** reach agreement with **you**, or after final judgment is entered by the court.

8.17. Loss Payee: Policy coverage, conditions and exclusions apply equally to **you** and any Loss Payee. If a Loss Payee is named, any property loss settlement will be payable to **you** and the Loss Payee. If optional Breach of Warranty coverage is included, a Loss Payee's rights shall not be affected by **your** failure to comply with any warranty or condition over which the Loss Payee has no control, however policy exclusions apply equally to any Loss Payee. Payment to a Loss Payee under optional Breach of Warranty coverage is limited to the value of covered loss or damage to the **yacht** and will not exceed the verifiablebalance of the Loss Payee's primary lien on the **yacht**. Any Loss Payee seeking Breach of Warranty coverage must cooperate with all duties after a loss, as stated above, and remit to **us** any uncollected premium due.

8.18. Total Loss: If the **yacht** is a **total loss** as the result of an **occurrence**, coverage will terminate no later thanthe effective date of total loss settlement, and premium is fully earned. **We** will reduce any payment fortotal loss of the Yacht by the value of any uncollected premium due. When **we** pay for a total loss, **we** reserve the right to keep the remains of the property, or the sale proceeds if sold.

8.19. Disputed Property Coverage: If **we** fail to reach an agreement with **you** regarding cause of loss, extent of related damages or reasonable repairs related to any property loss, either **you** or **we** may make written demand for appraisal. Within 30 days after receipt of an appraisal demand, **we** and **you** will each select a competent, impartial appraiser with no prior involvement with the **yacht** or **occurrence**. The 2 appraisers will review the loss and come to an agreement in regard to the facts in dispute. If the two 2 appraisers cannot reach an agreement, they will select an additional, mutually acceptable, impartial umpire, with no prior involvement with the **yacht** or **occurrence** who will make a binding and enforceable determination. The agreement of the appraisers, or decision of the umpire, will be binding and enforceable against either **you** or **us** in a court of competent jurisdiction. **We** and **you** will each pay the cost of **our** own selected appraiser and will share any umpire's fees equally.



8.20. Arbitration: Any and all disputes, controversies or claims of any nature whatsoever arising out of, in connection with or relating to this policy or any breach thereof, shall be resolved exclusively by binding arbitration in the City of New York, State of New York, in accordance with the rules of the American Arbitration Association, as modified herein, before a panel of three arbitrators. Each party shall appoint their own arbitrator and the two arbitrators so chosen shall appoint a third to serve as the Chair. Each party shall bear the fees and expenses of their appointed arbitrator. All other costs, fees and expenses of the arbitration, including but not limited to the fees and expenses of the Chair, shall be borne equally by the parties. The arbitrator(s) shall have no power to award consequential, special, indirect and/or punitive damages and both parties agree to waive such claim(s). Pre-award interest, if any, on any award, or any judgment subsequently entered thereon, shall be assessed at the federal prime rate prevailing on the date of the award. In the event that the prevailing party in any such arbitration is compelled to resort to further legal proceedings to enforce any arbitration award, all attorneys' fees actually incurred by the prevailing party in any post-arbitration collection proceeding will be collectible from the non-prevailing party. Judgment upon the award rendered may be entered in any court having jurisdiction thereof. In the event the Consumer Arbitration Rules of the American Arbitration Associationapply, then the location of the arbitration, the costs associated with the arbitrator(s) and arbitration andthe power of the arbitrator to award special, indirect and/or punitive damages shall be determined in accordance with said Rules and the applicable law. This arbitration clause applies to everything in this policy except the Disputed Property Coverage condition found in this policy.

8.21. Legal Action Against Us: It is agreed that no legal action can be brought against **us** by an **insured** unless that **insured** has complied with all terms and conditions of this policy. In regard to property coverage, it is agreed that any action against **us** must be filed within 1 year after the date of an **occurrence**.

8.22. Applicable Law: This policy shall be governed by and construed in accordance with the General Maritime Law of the United States. To the extent that the General Maritime Law of the United States does not apply, then this policy shall be governed by and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflicts of laws principles. The parties hereto agree to waive any claim for consequential, special, indirect and/or punitive damages in any arbitration or other legal proceeding.

## 9. Exclusions

9.1. General Exclusions: **We** will not pay for the following, regardless of whether any other cause or event contributed directly or indirectly, concurrently or in any sequence:

    9.1.1. Damage to covered property caused by or resulting from wear and tear, deterioration, weathering,galvanic action, corrosion, rust, or by an insured's failure to exercise due diligence in the maintenance of the yacht or tender; however, **consequential damage** not otherwise excluded is covered;

    9.1.2. Damage to covered property caused by or resulting from manufacturer defect, or design defect, orthe cost of replacing or repairing any item having a **latent defect**; however, **consequential damage**not otherwise excluded is covered;

    9.1.3. Damage to covered property caused by or resulting from electrolytic action; however **consequential damage** not otherwise excluded is covered; further, this exclusion does not apply ifthere is no evidence that the **yacht** or **tender** was a source of electrical current capable of causing or contributing to the condition;



9.1.4. Damage to covered property caused by or resulting from unseaworthiness, inherent vice, or an **insured's** intentional acts, or willful misconduct or neglect;

9.1.5. Damage to covered property caused by or resulting from osmosis, blistering, bubbling, ordelamination, unless caused by fire not otherwise excluded;

9.1.6. Damage to covered property caused by or resulting from **freeze**; however, this exclusion does notapply to a **yacht** or **tender** which has been professionally winterized by a person or entity other than an **insured**;

9.1.7. Damage to covered property caused by insects, animals, vermin or marine life, unless caused bycollision; however, resulting damage not otherwise excluded is covered;

9.1.8. Unexplained disappearance of **personal property**, unless there is physical evidence of theft, or misappropriation of property by any person or entity authorized by **you** for the purpose of storing, transporting, repairing, restoring or selling it;

9.1.9. Damage to covered property caused by or resulting from actual or attempted capture, seizure,arrest, detainment, or confiscation by any government;

9.1.10. Loss or diminution of value, or diminution of function, to covered property;

9.1.11. Liability of an **insured** to another **insured** for **property damage**, or liability of an **insured** to **you** orany **family member** for **bodily injury**;

9.1.12. Damage to covered property, or liability for **bodily injury** or **property damage**, while participatingin, practicing for, or preparing for any kind of prearranged or organized race, speed contest or stunt; however, this does not apply to predicted log cruises or to racing by sailboats;

9.1.13. Damage to covered property, or liability for **bodily injury** or **property damage**, arising from fraudulent or intentional acts, willful misconduct or neglect, or criminal trade or transportation;

9.1.14. Damage to covered property, or liability for **bodily injury** or **property damage**, arising from thepresence of or exposure to asbestos, silica, mold, fungi or bacteria;

9.1.15. Damage to covered property, or liability for **bodily injury** or **property damage**, arising from actualor threatened civil war or revolution, rebellion, political or labor disturbance, civil commotion, riots, insurrection, warlike act or the use of military or naval weapons, nuclear radiation or contamination, chemical or biological weapon or material, or electromagnetic attack;

9.1.16. Damage to covered property, or liability for **bodily injury** or **property damage**, directly or indirectly caused by, or contributed to by, or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software program, malicious code,computer virus or process or any other electronic system;

9.1.17. Liability for **bodily injury** or **property damage** to any person being towed from or behind a **covered vessel**, or participating in any scuba diving activity off a **covered vessel**; however, thisdoes not apply to an **occurrence** as the result of emergency services to a **covered vessel**;



9.1.18. Liability for **bodily injury** or **property damage** arising out of the transportation of a **covered vessel** on land, or the operation of any motorized vehicle other than a **covered vessel**;

9.1.19. Liability for **bodily injury** or **property damage** arising out of the illegal use, sale, manufacture,transport or possession of any controlled substance;

9.1.20. Liability for **bodily injury** or **property damage** arising out of any discrimination, sexual act, physicalabuse, molestation, or corporal punishment by an **insured**;

9.1.21. Liability for **bodily injury** or **property damage** arising out of **commercial use**; however, this exclusion does not apply to **charter** if that optional coverage is included;

9.1.22. Liability to any person for any unemployment compensation, state workers' compensation orfederal Longshoremen's and Harbor Workers' Compensation benefits;

9.1.23. Liability for **bodily injury** under the federal Jones Act, Death on the High Seas Act, Maintenanceand Cure, or General Maritime law, or other disability benefits or lost wages; however, this exclusion does not apply to an **incidental captain**, or if sufficient optional Crew coverage is included;

9.1.24. Punitive damages, governmental fines or penalties; however, this exclusion does not apply to **environmental damage** or **pollution**; or

9.1.25. Liability assumed by an **insured** under any contract or agreement.

9.2. Communicable Diseases

This policy excludes any claim, loss, expense or liability of any kind whatsoever arising from, relating to or to the extent contributed to, by any bacterial, viral, microbial or biological infection causing, anticipated to cause or having been caused by, any communicable infection, epidemic or pandemic event(s) or loss(es), including but not limited to the Covid-19 virus. This absolute exclusion shall apply regardless of whether this policy provides coverage in respect of such an exposure, or is construed, ordered or regulated to provide coverage in respect of such an exposure.

9.3. War and Terrorism Exclusion

9.3.1. Notwithstanding any provision to the contrary within this policy or any endorsement thereto it is agreed that this policy excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

9.3.1.1. War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war bedeclared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or:

9.3.1.2. any act of terrorism.



9.3.2.  An act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s) , committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public in fear.

9.3.3.  This policy also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 10.3.1.1. and/or 10.3.1.2.

9.3.4.  If we allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon you.

9.3.5.  In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

9.3.6.  This exclusion shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA").

The coverage afforded by this clause is only in respect of any "insured loss" of the type insured by this policy directly resulting from an "act of terrorism" as defined in TRIA. The coverage provided by this clause shall expire at 12:00 midnight on the date on which the TRIA Program is terminated by the federal government or the expiry date of the policy, whoever occurs first, and shall not cover any losses or events which arise after the earlier of these dates. This clause applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This policy will not pay any amounts which are not recoverable under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on coverage under this policy for payment for terrorism losses.

## 10.  Definitions

Select words used throughout this policy have specified meanings which are defined as follows:

10.1.  **Actual cash value** means the pre-loss market value of used property of comparable age, material, quality and purpose.

10.2.  **Agreed value** means the stated value of the identified **yacht** or **tender** shown on the Declarations Page, and agreed to by **you** and **us**, unless stated otherwise; however, if the **yacht** is advertised for sale at a price lower than the stated value at the time of loss or for a period of 12 months prior to the loss, **agreed value** shall be the lowest advertised sale price during that period. The **agreed value** for a **newly acquired yacht** is the lesser of its verifiable purchase price or **actual cash value**, never to exceed the stated coverage limit.

10.3.  **Additional insured** means any person or entity so identified in the policy. **Additional insured** also means any marina, yacht club or similar entity when required under a written contract or agreement regarding the **yacht** or **tender** for slip or mooring rental, storage, repair, or participation in a **marine event**, provided such contract or agreement is fully executed prior to an **occurrence**.



10.4. **Bodily injury** means physical harm, sickness or disease sustained by a person, including death resulting from any of these. It does not include non-physical injuries, including emotional distress or mental anguish unless resulting from physical injury to the same person.

10.5. **Charter** means rental or hire of the **yacht**, including the carriage of paying passengers. If optional **charter** coverage is included **you** are restricted to 21 days of **charter** per policy term, not more than 6 paying passengers per **charter**, and no overnight **charter** use is permitted.

10.6. **Coastal** means the offshore and near-shore waters of the Atlantic and Pacific Oceans, their sounds, the Gulfs of California and Mexico, and Caribbean Sea, not more than 300 miles from mainland North America or 100 miles from Hawaii.

10.7. **Collectibles** means antiques, art, paintings, jewelry, gems, precious stones, furs, memorabilia, souvenirs, trading cards, and articles of rarity or antiquity.

10.8. **Commercial use** means a business purpose, including use in any trade, occupation or profession, including **charter**. It does not include business entertainment for which there is no direct compensation, possession of a commercial fishing license for the sole purpose of selling excess catch, or exhibition at a boat show or demonstration.

10.9. **Consequential Damage** means damage to your yacht ensuing from excluded cause(s) of loss. **Consequential damage** does not include any item, part, or component damaged by excluded cause(s) of loss; further, for the purpose of determining **consequential damage** a **powertrain** is considered a single component.

10.10. **Covered vessel** means the **yacht**, **tender**, or **non-owned yacht**.

10.11. **Environmental damage** means governmental fines or penalties **you** incur resulting from damage or injury to, or alteration or destruction of, marine natural habitat arising from contact with a **covered vessel**. It does not include damage caused by or liabilities, fines or penalties resulting from **pollution**.

10.12. **Family** means any person who resides in **your** household and is related to **you** by blood, marriage, legal domestic partnership, or adoption. This includes or any ward or foster child in **your** care who resides in **your** household.

10.13. **Fishing tackle** means the equipment or gear used for fishing, including hooks, lines, sinkers, floats, rods, reels, lures, spears, nets, gaffs, traps, and tackle boxes.

10.14. **Freeze** means ice or freezing within or on the **yacht** or **tender**. It does not include impact of or with floating or falling ice.

10.15. **Incidental captain** means one temporary, professional captain, holding all valid and current licenses necessary for the vessel and activities in question, who is employed, compensated or directed by **you** in service to a **covered vessel** not more than 5 days per policy term. It does not apply if **you** use more than 1 paid captain per policy term.

10.16. **Inland** means interior waters of the United States and Canada at least 5 miles from any **coastal waters**, including bays, lakes, and rivers and excluding oceans, sounds, gulfs and seas; further, inland waters does not include any location in Florida or Hawaii or within 60 miles from the Gulf of Mexico.

10.17. **Insured** means **you** and **your family**, or **your members**, and any Additional Named Insured. **Insured** also means any person using a **covered vessel** with **your** permission, including a captain or crew member employed, compensated or directed by **you**. However, this does not include any person operating or employed by a shipyard, marina, boat repair yard, sales agency or similar business.



10.18. **Latent defect** means a flaw in a material component from the time of manufacture and which is not discoverable through ordinary methods of testing.

10.19. **Marine event** means a pre-arranged or organized activity, occasion or occurrence including yacht club functions, class rendezvous, predicted log contests, fishing tournaments, boat shows, marine parades and charitable events. **Marine event** does not include any prearranged or organized race, speed contest or stunt; however, this does not apply to predicted log contests or to racing by sailboats.

10.20. **Medical expenses** means the reasonable and necessary costs of professional medical care, including ambulance, hospital, first aid, dental, surgical, nursing, prosthetic devices, and funeral costs related to accidental **bodily injury** received aboard, or while boarding or exiting, a **covered vessel**, regardless of fault. It does not include any costs compensable under any state or federal compensation law or act.

10.21. **Member** means any named owner, partner, beneficiary, officer or director of an entity identified as owner of the **yacht**.

10.22. **Named storm** means all conditions related to or resulting from a Tropical Depression, Tropical Storm, Hurricane or other storm system (including extratropical, post-tropical and/or subtropical cyclones) that has been identified and assigned a name by the National Hurricane Center or the National Weather Service including but not limited to wind, lightning, tornado, precipitation, flooding, storm surge or accumulation of water whether driven by wind or any other force, windborne or waterborne debris, or electrical failure. **Occurrences** resulting from a **named storm** also include vandalism or fire occurring within 96 hours of storm conditions, **bodily injury** or **property damage** occurring during or in response to storm conditions, or any claim of negligence related to action or inaction in preparing or responding to storm conditions.

10.23. **Newly acquired yacht** means a watercraft between 26 and 65 feet length overall purchased by **you** for a temporary period not exceeding 30 days from the verifiable purchase date, and for which no other valid insurance benefits apply. **You** must request coverage within 10 days of purchase and pay any additional premium **we** determine appropriate. This coverage does not apply to powerboats designed for or capable of speeds in excess of 55 miles per hour or to sailboats participating in any race or speed contest.

10.24. **Non-owned yacht** means a watercraft with speed capabilities less than 70 miles per hour that is not owned by any **insured** in whole or part, not available for any **insured's** regular use, not rented or chartered by any **insured**, or not used by any **insured** without the permission of the owner.

10.25. **Occurrence** means a loss, damage or accident occurring within the policy period to which this insurance applies. A series of incidents arising from the same originating cause, including continuous or repeated exposure to the same general conditions, is considered to be one **occurrence**.

10.26. **Personal property** means clothing, **fishing tackle**, sports equipment, computer hardware, tools, **collectibles**, or other personal property belonging to an **insured** or guest. It does not include any part of the **yacht**, **tender**, other watercraft or paid cargo.

10.27. **Personal watercraft** means a recreational watercraft less than 16 feet length overall capable of carrying 1 or more people, powered by an inboard motor with jet propulsion, and designed to be operated by a person sitting, straddling, kneeling, or standing on it.

10.28. **Pollution** means the unintentional discharge, leakage, release or escape of liquids or gasses including fuel, oil and petroleum products or derivatives, acids, alkalis, chemicals, waste, vapors, fumes, or other irritants or contaminants.



10.29. **Powertrain** means a motor or engine, transmission, drive, running gear, props, shafts, or any other components thereof.

10.30. **Property damage** means physical injury to, or loss or destruction of, tangible property excluding contraband, money, travelers' checks, securities or similar documents of monetary value.

10.31. **Replacement cost** means the cost to replace property with new equivalent of comparable material, quality and purpose.

10.32. **Tender** means a watercraft, including any dedicated propulsion equipment, owned by **you** that is used in conjunction with and regularly carried aboard the **yacht**. It does not include any **personal watercraft** unless specifically identified in the policy.

10.33. **Total loss** means property is unrecoverable, not located within 30 days from any **occurrence** or discovery of loss, or that the reasonable expense of recovering and repairing covered property equals or exceeds the applicable limit of insured value. In regard to document replacement, a document is considered lost when it is stolen or not located within 48 hours of an **occurrence**.

10.34. **Underinsured** means any owner or operator of a watercraft other than the **yacht** or any **tender**, excluding all **insureds**, for whom applicable liability policy limits are less than the damages which **you** may be legally entitled to recover. It does not include any owner or operator of a watercraft owned by **you** in whole or part or available for **your** regular use, or owned, leased to or contracted by a government agency or authority.

10.35. **Uninsured** means any owner or operator of a watercraft other than the **yacht** or any **tender**, excluding all **insureds**, who cannot be identified or to whom no liability policy or other insurance applies. It does not include any owner or operator of a watercraft owned by **you** in whole or part or available for **your** regular use, or owned, leased to or contracted by a government agency or authority.

10.36. **We, us** and **our** refer to the Company providing this insurance.

10.37. **Wreck removal** means the reasonable expenses **you** incur to raise, remove, destroy or dispose of the wreck of the **yacht** if **you** are legally required to do so.

10.38. **Yacht** means the insured vessel identified on the Declarations Page, or a covered **newly acquired yacht**, including her hulls, spars, sails, engines, machinery, furniture, equipment, and stores. It does not include any **tender** or other watercraft, **personal property**, or paid cargo.

10.39. **You** and **your** refer to any person or entity identified as owner of the **yacht**. **You** also refers to **your** legal representative or temporary legal custodian of the **yacht** in the event of **your** death.

## 11. Sanctions Compliance

11.1. Sanctions Limitation & Exclusion Clause LMA 3100
No Reinsurer shall be deemed to provide cover and no Reinsurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Reinsurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.



**KEMAH MARINE**

## 12. Signing Page

Sutton National Group: Authorized Representative Signatures

Lloyd Yavener, President

Michelle Freitag, Secretary

Kemah Marine : Authorized Representative Signature

Thomas  Carroll, Managing Partner



## Endorsements

1. Navigation Endorsement

1.1    Navigation is permitted in and on the inland and coastal waters of the following states, provinces, territories and nations:

Northeast & Mid-Atlantic: Connecticut, Delaware, District of Columbia, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Vermont, Virginia, New Brunswick, Nova Scotia, Prince Edward Island, and Quebec (south of 48 degrees north latitude).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED



**EXHIBIT E**

October 9, 2024

Sent via: USPS Certified Mail R/R/R
USPS Regular Mail
Email: grady@scaffoldmart.com

Grady Smith
1041 East Rock Spring Rd
Greenville, SC 27834

| Re: | Insured: | **Grady Smith** |
|---|---|---|
| | Date of Event: | **9/9/2024** |
| | Type of Event: | **Sinking** |
| | Event Location: | **Greenville, SC** |
| | Policy No.: | **KMYSN00000003463-24** |
| | Policy Period: | **7/28/2024 through 7/28/2025** |
| | Our File No.: | **1.75455** |

Dear Grady Smith:

We are the duly authorized Third Party Claim Administrators assigned to handle this matter on behalf of Sutton National Insurance Company ("Sutton National" or the "Company"). This acknowledges receipt of the claim for sinking on or about 9/9/2024.

We are conducting our investigation into this matter and Sutton National Insurance Company reserves their rights to deny coverage for the claim for the following reasons.

Sutton National issued **Recreational Yacht Insurance Policy** KMYSN00000003463-24 to insure a 2008 54' Ocean Yachts 4SS "Wave Tamer". The Policy states, in relevant part, the following:

**5. Agreement**

5.1. This Kemah recreational yacht insurance policy, with your Declarations Page, Navigations Page and other amendatory endorsements, if any, it details the coverages and other conditions of **your** contract with **us**. **We** agree to provide the insurance described, unless stated otherwise or when any exclusion applies, in return for **your** premium, compliance with all contract conditions, and adherence to all representations provided by **you** to **us**.

\* \* \*



**8. General Conditions**

*   *   *

8.5. Concealment, Fraud or Misrepresentation: This policy will be void from inception if you conceal or misrepresent to us any material fact relating to this insurance at any time.

*   *   *

8.7. Policy Changes: No changes may be made unless they are agreed to in writing by **us**.

*   *   *

8.11. Transfer of Interest: **You** cannot transfer interest in the policy to anyone else. When **you** sell, assign, or otherwise transfer title to the **yacht**, or when **your** interest in the **yacht** is legally or equitably removed, dissolved or of no further effect, coverage will terminate immediately. There is no coverage if **you** do not have an insurable interest at the time of an **occurrence**.

*   *   *

8.14. Duties after a Loss: **Your** failure to cooperate will void coverage under this policy. **You** must notify **us** immediately after any **occurrence** which may be covered or give rise to a claim under this policy. **You** must take all reasonable means that are necessary to mitigate loss to **your** property. At **our** request, **you** must submit to **us** a complete, sworn proof-of-loss document of **our** choice. **Insureds** must cooperate with **us** in all aspects of investigating and settling any loss and agree to be examined under oath at **our** request. **Insureds** must allow **us** to examine any required loss records and inspect damaged property prior to alteration, repair or disposal. **Insureds** must not assume any liability, obligation, or expense without **our** prior written consent, except loss mitigation costs to protect covered property from further loss. **Insureds** must cooperate with **us** in efforts to recover any loss payment from any person or entity that may be liable for those sums.

*   *   *



8.16. Loss Conditions: No action **we** take after an occurrence to mitigate damage or investigate a loss can be considered a waiver of **our** rights, or an admission of coverage or liability. **You** cannot abandon any property to **us**, or to any other person or entity, without **our** prior written consent. **We** will reduce any payment for property damage by the value of any prior loss or damage not repaired or replaced at the time of loss. In the event of a total loss involving covered consequential damage arising from excluded cause(s) of loss, **we** will reduce any payment for property damage by the actual cash value of any item, part, or component damaged by excluded cause(s). **We** will pay for a covered loss no later than thirty (30) days after **we** reach agreement with **you**, or after final judgment is entered by the court.

8.20. Arbitration: Any and all disputes, controversies or claims of any nature whatsoever arising out of, in connection with or relating to this policy or any breach thereof, shall be resolved exclusively by binding arbitration in the City of New York, State of New York, in accordance with the rules of the American Arbitration Association, as modified herein, before a panel of three arbitrators. Each party shall appoint their own arbitrator and the two arbitrators so chosen shall appoint a third to serve as the Chair. Each party shall bear the fees and expenses of their appointed arbitrator. All other costs, fees and expenses of the arbitration, including but not limited to the fees and expenses of the Chair, shall be borne equally by the parties. The arbitrator(s) shall have no power to award consequential, special, indirect and/or punitive damages and both parties agree to waive such claim(s). Pre-award interest, if any, on any award, or any judgment subsequently entered thereon, shall be assessed at the federal prime rate prevailing on the date of the award. In the event that the prevailing party in any such arbitration is compelled to resort to further legal proceedings to enforce any arbitration award, all attorneys' fees actually incurred by the prevailing party in any post-arbitration collection proceeding will be collectible from the non-prevailing party. Judgment upon the award rendered may be entered in any court having jurisdiction thereof. In the event the Consumer Arbitration Rules of the American Arbitration Association apply, then the location of the arbitration, the costs associated with the arbitrator(s) and arbitration and the power of the arbitrator to award special, indirect and/or punitive damages shall be determined in accordance with said Rules and the applicable law. This arbitration clause applies to everything in this policy except the Disputed Property Coverage condition found in this policy.

\*   \*   \*

8.21. Legal Action Against **Us**: It is agreed that no legal action can be brought against **us** by an **insured** unless that **insured** has complied with all terms and conditions of this policy. In regard to property coverage, it is agreed that any action against **us** must be filed within 1 year after the date of an **occurrence**.

\* \* \*

8.22. Applicable Law: This policy shall be governed by and construed in accordance with the General Maritime Law of the United States. To the extent that the General Maritime Law of the United States does not apply, then this policy shall be governed by and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflicts of laws principles. The parties hereto agree to waive any claim for consequential, special, indirect and/or punitive damages in any arbitration or other legal proceeding.

\* \* \*

## 9. Exclusions

9.1. General Exclusions: **We** will not pay for the following, regardless of whether any other cause or event contributed directly or indirectly, concurrently or in any sequence:

\* \* \*

9.1.1. Damage to covered property caused by or resulting from wear and tear, deterioration, weathering, galvanic action, corrosion, rust, or by an insured's failure to exercise due diligence in the maintenance of the yacht or tender; however, **consequential damage** not otherwise excluded is covered;

9.1.4. Damage to covered property caused by or resulting from unseaworthiness, inherent vice, or an **insured's** intentional acts, or willful misconduct or neglect;

\* \* \*

It has come to our attention that in or about December 2023 you transferred title to the vessel to a limited liability company without notice to Sutton National. In addition, sinking of the vessel at the dock raises questions as to the seaworthiness of the vessel. The Company will continue to investigate the claim subject to a reservation of rights, including the right to deny coverage for the claim and/or to rescind the policy. We request your cooperation.

Once our investigation is completed, we will confer with Sutton National on the findings and advise you of the status at that time.

Sutton National does not and shall not waive any of their rights or defenses under the policy that might now or late become available. Sutton National waives none of its rights or defenses in raising any other applicable provisions, conditions or exclusions which may affect coverage.

Neither this letter nor any investigation conducted by Raphael & Associates into the facts of the above-referenced claim is intended to nor should be construed as a waiver of any terms of the policy, or waiver of any of the obligations thereunder, or waiver of any defenses now or hereafter available to our principle, nor is an admission or denial of liability.

Sutton National reserves the right to amend, alter or supplement this letter should further information become available in the future that would affect its content.

Respectfully,

James Vinci
Senior Claims Examiner
**RAPHAEL & ASSOCIATES**
jvinci@raphaelandassociates.com
Direct Office: (201) 537-7238
JV/lm

cc:     Marks Marine Insurance Agency
        Attn: Chris Plum
        PO Box 5002
        Deptford, NJ 08096

        Email: chris@insuretheboat.com





**EXHIBIT F**

October 16, 2024

Sent via: USPS Certified Mail R/R/R
USPS Regular Mail
Email: jim@ayershaidt.com

Grady Smith
C/O James Ayers
307 Metcalf Street
Post Office Box 1544
New Bern, NC 28563

| Re: | Insured: | **Grady Smith** |
|---|---|---|
| | Date of Event: | **9/9/2024** |
| | Type of Event: | **Sinking** |
| | Event Location: | **Greenville, SC** |
| | Policy No.: | **KMYSN00000003463-24** |
| | Policy Period: | **7/28/2024 through 7/28/2025** |
| | Our File No.: | **1.75455** |

Dear Grady Smith:

We are the duly authorized Third Party Claim Administrators assigned to handle this matter on behalf of Sutton National Insurance Company ("Sutton National" or the "Company"). This acknowledges receipt of the claim for sinking on or about 9/9/2024.

Our Investigation continues into this matter and Sutton National Insurance Company reserves their rights to deny coverage for the claim for the following reasons.

Sutton National issued **Recreational Yacht Insurance Policy** KMYSN00000003463-24 to insure a 2008 54' Ocean Yachts 4SS "Wave Tamer". The Policy states, in relevant part, the following:

**5. Agreement**

5.1. This Kemah recreational yacht insurance policy, with your Declarations Page, Navigations Page and other amendatory endorsements, if any, it details the coverages and other conditions of **your** contract with **us**. **We** agree to provide the insurance described, unless stated otherwise or when any exclusion applies, in return for **your** premium, compliance with all contract conditions, and adherence to all representations provided by **you** to **us**.

\*   \*   \*


Case 25-01021-MN    Document 1-81    Filed 07/30/25    Page 860 of 145

## 8. General Conditions

\* \* \*

8.5. Concealment, Fraud or Misrepresentation: This policy will be void from inception if you conceal or misrepresent to us any material fact relating to this insurance at any time.

\* \* \*

8.7. Policy Changes: No changes may be made unless they are agreed to in writing by **us**.

\* \* \*

8.11. Transfer of Interest: **You** cannot transfer interest in the policy to anyone else. When **you** sell, assign, or otherwise transfer title to the **yacht**, or when **your** interest in the **yacht** is legally or equitably removed, dissolved or of no further effect, coverage will terminate immediately. There is no coverage if **you** do not have an insurable interest at the time of an **occurrence**.

\* \* \*

8.14. Duties after a Loss: **Your** failure to cooperate will void coverage under this policy. **You** must notify **us** immediately after any **occurrence** which may be covered or give rise to a claim under this policy. **You** must take all reasonable means that are necessary to mitigate loss to **your** property. At **our** request, **you** must submit to **us** a complete, sworn proof-of-loss document of **our** choice. **Insureds** must cooperate with **us** in all aspects of investigating and settling any loss and agree to be examined under oath at **our** request. **Insureds** must allow **us** to examine any required loss records and inspect damaged property prior to alteration, repair or disposal. **Insureds** must not assume any liability, obligation, or expense without **our** prior written consent, except loss mitigation costs to protect covered property from further loss. **Insureds** must cooperate with **us** in efforts to recover any loss payment from any person or entity that may be liable for those sums.

\* \* \*

8.16. Loss Conditions: No action **we** take after an occurrence to mitigate damage or investigate a loss can be considered a waiver of **our** rights, or an admission of coverage or liability. **You** cannot abandon any property to **us**, or to any other person or entity, without **our** prior written consent. **We** will reduce any payment



WHERE YOU NEED US, **WHEN YOU NEED US**

for property damage by the value of any prior loss or damage not repaired or replaced at the time of loss. In the event of a total loss involving covered consequential damage arising from excluded cause(s) of loss, **we** will reduce any payment for property damage by the actual cash value of any item, part, or component damaged by excluded cause(s). **We** will pay for a covered loss no later than thirty (30) days after **we** reach agreement with **you**, or after final judgment is entered by the court.

8.20. Arbitration: Any and all disputes, controversies or claims of any nature whatsoever arising out of, in connection with or relating to this policy or any breach thereof, shall be resolved exclusively by binding arbitration in the City of New York, State of New York, in accordance with the rules of the American Arbitration Association, as modified herein, before a panel of three arbitrators. Each party shall appoint their own arbitrator and the two arbitrators so chosen shall appoint a third to serve as the Chair. Each party shall bear the fees and expenses of their appointed arbitrator. All other costs, fees and expenses of the arbitration, including but not limited to the fees and expenses of the Chair, shall be borne equally by the parties. The arbitrator(s) shall have no power to award consequential, special, indirect and/or punitive damages and both parties agree to waive such claim(s). Pre-award interest, if any, on any award, or any judgment subsequently entered thereon, shall be assessed at the federal prime rate prevailing on the date of the award. In the event that the prevailing party in any such arbitration is compelled to resort to further legal proceedings to enforce any arbitration award, all attorneys' fees actually incurred by the prevailing party in any post-arbitration collection proceeding will be collectible from the non-prevailing party. Judgment upon the award rendered may be entered in any court having jurisdiction thereof. In the event the Consumer Arbitration Rules of the American Arbitration Association apply, then the location of the arbitration, the costs associated with the arbitrator(s) and arbitration and the power of the arbitrator to award special, indirect and/or punitive damages shall be
determined in accordance with said Rules and the applicable law. This arbitration clause applies to everything in this policy except the Disputed Property Coverage condition found in this policy.

*   *   *

8.21. Legal Action Against **Us**: It is agreed that no legal action can be brought against **us** by an **insured** unless that **insured** has complied with all terms and conditions of this policy. In regard to property coverage, it is agreed that any action against **us** must be filed within 1 year after the date of an **occurrence**.



* * *

8.22. Applicable Law: This policy shall be governed by and construed in accordance with the General Maritime Law of the United States. To the extent that the General Maritime Law of the United States does not apply, then this policy shall be governed by and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflicts of laws principles. The parties hereto agree to waive any claim for consequential, special, indirect and/or punitive damages in any arbitration or other legal proceeding.

* * *

## 9. Exclusions

9.1. General Exclusions: **We** will not pay for the following, regardless of whether any other cause or event contributed directly or indirectly, concurrently or in any sequence:

* * *

9.1.1. Damage to covered property caused by or resulting from wear and tear, deterioration, weathering, galvanic action, corrosion, rust, or by an insured's failure to exercise due diligence in the maintenance of the yacht or tender; however, **consequential damage** not otherwise excluded is covered;

9.1.4. Damage to covered property caused by or resulting from unseaworthiness, inherent vice, or an **insured's** intentional acts, or willful misconduct or neglect;

* * *

As we continue our investigation, we are requesting copies of any maintenance invoices from the past two years. We also are requesting a copy of the ownership documents of this vessel. Additionally, we have assigned Jim Mercante and Michael Stern from Gallo Vitucci Klar LLP to conduct an examination under oath.

You will receive a separate letter from counsel to coordinate the scheduling of the Examination Under Oath.

Once our investigation is completed, and the examination under oath is concluded, we will confer with Sutton National on the findings and advise you of the status at that time.



Sutton National does not and shall not waive any of their rights or defenses under the policy that might now or late become available.  Sutton National waives none of its rights or defenses in raising any other applicable provisions, conditions or exclusions which may affect coverage.

Neither this letter nor any investigation conducted by Raphael & Associates into the facts of the above-referenced claim is intended to nor should be construed as a waiver of any terms of the policy, or waiver of any of the obligations thereunder, or waiver of any defenses now or hereafter available to our principle, nor is an admission or denial of liability.

Sutton National reserves the right to amend, alter or supplement this letter should further information become available in the future that would affect its content.

Respectfully,

James Vinci
Senior Claims Examiner
**RAPHAEL & ASSOCIATES**
jvinci@raphaelandassociates.com
Direct Office: (201) 537-7238

cc:     Grady Smith
        1041 East Rock Spring Rd
        Greenville, SC 27834
        **grady@scaffoldmart.com**

        Marks Marine Insurance Agency
        Attn: Chris Plum
        PO Box 5002
        Deptford, NJ 08096
        Email: chris@insuretheboat.com

        Jim Mercante
        jmercante@gvlaw.com

        Michael Stern
        Mstern@gvlaw.com



WHERE YOU NEED US, **WHEN YOU NEED US**



**EXHIBIT G**

February 19, 2025

**Sent via: USPS Certified Mail R/R/R**
**USPS Regular Mail**
**Email: grady@scaffoldmart.com**

Grady Smith
1041 East Rock Spring Road
Greenville, SC 27834

| Re: | Insured: | **Grady Smith** |
|---|---|---|
| | Date of Event: | **9/9/2024** |
| | Type of Event: | **Sinking** |
| | Event Location: | **Greenville, SC** |
| | Policy No.: | **KMYSN00000003463-24** |
| | Policy Period: | **7/28/2024 through 7/28/2025** |
| | Our File No.: | **1.75455.1312** |

Dear Grady Smith:

We are the duly authorized Third Party Claim Administrators assigned to handle this matter on behalf of Sutton National Insurance Company ("Sutton National" or the "Company"). The Company has completed its review of the claim for sinking of your 2008 54' Ocean Yacht 4SS "Wave Tamer" on or about 9/9/2024. Based on the circumstances of this loss, misrepresentations made in the application for insurance and the terms and conditions of the applicable policy, please be advised that the policy is void from inception, and there is no coverage for the loss.

**SUMMARY OF FACTS**

On **September 9, 2024**, you submitted an Acord Property Loss Notice indicating that "Boat sank in slip". Raphael & Associates as agent for Sutton acknowledged receipt of the Loss Notice on September 10, 2024, and assigned a marine surveyor to inspect the damaged vessel. On **September 10, 2024**, your broker Ken Marks advised underwriters that:

> "As discussed, insured sent me an email on 12/27/23 that the boat was put into an llc. I totally missed it as I was on vacation...
> I was doing an account audit last nite while watching football game and found said email. Wavetamer Gyros LLC. Boat was never used commercially."



The insurance application you submitted on or about **July 28, 2023** showed you as owner, with no mention of Wavetamer Gyros LLC.[1] This information raised a coverage issue. A Reservation of Rights letter was forwarded to you dated October 9, 2024, advising you that the Company was reserving its rights to disclaim coverage because "*It has come to our attention that in or about December 2023, you transferred title to the vessel to a limited liability company without notice to Sutton National*". You responded to the Reservation of Rights by email, stating

> Not sure why you stated the ownership was changed in January. It has been the same for 9 years since purchase. My LLC was formed 9 years ago as Wavetamers Gyros LLC. My application is enclosed stating Grady Smith DBA Wavetamer Gyros LLC. Dated 9/20/2023. I am enclosing Adobe Document agreement Application stating as much.

You attached a Severe Storm Protection Plan dated September 20, 2023, to this email showing "Vessel Owner Name" as "Wavetamer Gyros". However, this Severe Storm Protection Plan was for Policy Number OMO4807483, which is <u>not</u> the Policy issued by Sutton National. On October 10, 2024, you submitted a <u>notarized</u> statement that you were the "*sole owner of Wavetamer Gyros, LLC. I purchased my Ocean 54 ft…. in December of 2014. The LLC, Wavetamer Gyros LLC, was formed for the sole purpose of ownership and operation of said vessel. The LLC was formed December 19th 2014 just prior to purchase and the yacht has been here this entire time with no changes of ownership*".

Based on this new information, the Company issued a supplemental Reservation of Rights letter dated October 16, 2024, to now include the policy's "*Concealment, Fraud or Misrepresentation*" wordings. The Company commenced a coverage investigation and conducted an Examination Under Oath on **December 17, 2024**.

**The Policy**

Sutton National Insurance Company issued **Recreational Yacht Insurance Policy** KMYSN00000003463-24 to insure a 2008 54' Ocean Yachts 4SS "Wave Tamer". The Policy states, in relevant part, the following:

**5. Agreement**

5.1. This Kemah recreational yacht insurance policy, with your Declarations Page, Navigations Page and other amendatory endorsements, if any, it details the

---

[1] The Application reads "Vessel ownership, per title: Self". *See*, Recreational Yacht Insurance Application.


WHERE YOU NEED US, **WHEN YOU NEED US**

coverages and other conditions of **your** contract with **us**. **We** agree to provide the insurance described, unless stated otherwise or when any exclusion applies, in return for **your** premium, compliance with all contract conditions, and adherence to all representations provided by **you** to **us**.

\* \* \*

**6.1.4** Loss Expense: We will pay, beyond the **agreed value**, for all reasonable costs for all necessary salvage or loss mitigation **you** incur as a result of a covered loss, subject to a maximum of the **yacht agreed value**. This coverage does not apply to **wreck removal**.

## 8. General Conditions

\* \* \*

**8.5.** Concealment, Fraud or Misrepresentation: This policy will be void from inception if you conceal or misrepresent to us any material fact relating to this insurance at any time.

\* \* \*

**8.7.** Policy Changes: No changes may be made unless they are agreed to in writing by **us**.

\* \* \*

**8.11.** Transfer of Interest: **You** cannot transfer interest in the policy to anyone else. When **you** sell, assign, or otherwise transfer title to the **yacht**, or when **your** interest in the **yacht** is legally or equitably removed, dissolved or of no further effect,
coverage will terminate immediately. There is no coverage if **you** do not have an insurable interest at the time of an **occurrence**.

\* \* \*

**8.14.** Duties after a Loss: **Your** failure to cooperate will void coverage under this policy. **You** must notify **us** immediately after any **occurrence** which may be covered or give rise to a claim under this policy. **You** must take all reasonable means that are necessary to mitigate loss to **your** property. At **our** request, **you**



must submit to **us** a complete, sworn proof-of-loss document of **our** choice. **Insureds** must cooperate with **us** in all aspects of investigating and settling any loss and agree to be examined under oath at **our** request. **Insureds** must allow **us** to examine any required loss records and inspect damaged property prior to alteration, repair or disposal. **Insureds** must not assume any liability, obligation, or expense without **our** prior written consent, except loss mitigation costs to protect covered property from further loss. **Insureds** must cooperate with **us** in efforts to recover any loss payment from any person or entity that may be liable for those sums.

*   *   *

8.16. Loss Conditions: No action **we** take after an occurrence to mitigate damage or investigate a loss can be considered a waiver of **our** rights, or an admission of coverage or liability. **You** cannot abandon any property to **us**, or to any other person or entity, without **our** prior written consent. **We** will reduce any payment for property damage by the value of any prior loss or damage not repaired or replaced at the time of loss. In the event of a total loss involving covered consequential damage arising from excluded cause(s) of loss, **we** will reduce any payment for property damage by the actual cash value of any item, part, or component damaged by excluded cause(s). **We** will pay for a covered loss no later than thirty (30) days after **we** reach agreement with **you**, or after final judgment is entered by the court.

*   *   *

8.17.  Loss Payee:  Policy coverage, conditions and exclusions apply equally to **you** and any Loss Payee. If a Loss Payee is named, any property loss settlement will be payable to **you** and the Loss Payee. If optional Breach of Warranty coverage is included, a Loss Payee's rights shall not be affected by **your** failure to comply with any warranty or condition over which the Loss Payee has no control, however policy exclusions apply equally to any Loss Payee. Payment to a Loss Payee under optional Breach of Warranty coverage is limited to the value of covered loss or damage to the **yacht** and will not exceed the verifiable balance of the Loss Payee's primary lien on the **yacht**. Any Loss Payee seeking Breach of Warranty coverage must cooperate with all duties after a loss, as stated above, and remit to **us** any uncollected premium.

*   *   *



8.20. Arbitration: Any and all disputes, controversies or claims of any nature whatsoever arising out of, in connection with or relating to this policy or any breach thereof, shall be resolved exclusively by binding arbitration in the City of New York, State of New York, in accordance with the rules of the American Arbitration Association, as modified herein, before a panel of three arbitrators. Each party shall appoint their own arbitrator and the two arbitrators so chosen shall appoint a third to serve as the Chair. Each party shall bear the fees and expenses of their appointed arbitrator. All other costs, fees and expenses of the arbitration, including but not limited to the fees and expenses of the Chair, shall be borne equally by the parties. The arbitrator(s) shall have no power to award consequential, special, indirect and/or punitive damages and both parties agree to waive such claim(s). Pre-award interest, if any, on any award, or any judgment subsequently entered thereon, shall be assessed at the federal prime rate prevailing on the date of the award. In the event that the prevailing party in any such arbitration is compelled to resort to further legal proceedings to enforce any arbitration award, all attorneys' fees actually incurred by the prevailing party in any post-arbitration collection proceeding will be collectible from the non-prevailing party. Judgment upon the award rendered may be entered in any court having jurisdiction thereof. In the event the Consumer Arbitration Rules of the American Arbitration Association apply, then the location of the arbitration, the costs associated with the arbitrator(s) and arbitration and the power of the arbitrator to award special, indirect and/or punitive damages shall be determined in accordance with said Rules and the applicable law. This arbitration clause applies to everything in this policy except the Disputed Property Coverage condition found in this policy.

\* \* \*

8.21. Legal Action Against **Us**: It is agreed that no legal action can be brought against **us** by an **insured** unless that **insured** has complied with all terms and conditions of this policy. In regard to property coverage, it is agreed that any action against **us** must be filed within 1 year after the date of an **occurrence**.

\* \* \*

8.22. Applicable Law: This policy shall be governed by and construed in accordance with the General Maritime Law of the United States. To the extent that the General Maritime Law of the United States does not apply, then this policy shall



WHERE YOU NEED US, **WHEN YOU NEED US**

be governed by and construed in accordance with the substantive laws of the State of New York, without giving effect to its conflicts of laws principles. The parties hereto agree to waive any claim for consequential, special, indirect and/or punitive damages in any arbitration or other legal proceeding.

*   *   *

## 9. Exclusions

9.1. General Exclusions: **We** will not pay for the following, regardless of whether any other cause or event contributed directly or indirectly, concurrently or in any sequence:

*   *   *

9.1.1. Damage to covered property caused by or resulting from wear and tear, deterioration, weathering, galvanic action, corrosion, rust, or by an insured's failure to exercise due diligence in the maintenance of the yacht or tender; however, **consequential damage** not otherwise excluded is covered;

9.1.2. Damage to covered property caused by or resulting from manufacturer defect, or design defect or the cost of repairing any item having a **latent defect**; however, **consequential damage** not otherwise excluded is covered;

9.1.4. Damage to covered property caused by or resulting from unseaworthiness, inherent vice, or an **insured's** intentional acts, or willful misconduct or neglect;

### <u>SUTTON NATIONAL'S COVERAGE DETERMINATION</u>

The Company has determined through its investigation, review of the Policy and application and your testimony at the Examination Under Oath that the Policy is void from inception and there is no coverage for your claim, for the following reasons:

(i)     The Policy is void from inception based on the misrepresentations made in the application for insurance. (**Policy- 8.5. Concealment, Fraud or Misrepresentation**);

(ii)     There is no coverage for this loss caused by or resulting from unseaworthiness, wear and tear, deterioration or your failure to exercise



due diligence in the maintenance of the yacht. (**Policy-Exclusions – 9.1.1, 9.1.2 and 9.1.4**);

(iii)    There is no "breach of warranty" coverage. (**Policy: General Conditions – 8.17**)

(iv)    The Policy provides coverage for loss expenses incurred "as a result of a covered loss". There is no coverage for the loss and therefore no coverage for the costs incurred in the salvage of the vessel. (**Policy-6.1.4**)

Please be advised that the Policy is void from inception and this denial of coverage is without prejudice to or waiver of any other rights, benefits, conditions, or any other defenses available to the Company under the Policy or otherwise. Because the Policy is void from inception, a return premium payment will be issued under separate cover from Kemah Marine.

Should you wish to take this matter up with the New York State Department of Financial Services, you may file with the Department on its website at www.dfs.ny.gov/complaint or you may write or visit the Consumer Services Bureau, New York State Department of Financial Services, at: 1 State Street, New York, New York 10004; 1 Commerce Plaza, Albany, New York 11257; 1399 Franklin Avenue, Garden City, New York 11530 or 333 East Washington Street, Syracuse, New York 13202.

Respectfully submitted,

James Vinci
Senior Claims Examiner
Fl License #E171259
Adjuster Type: Independent Adjuster
**RAPHAEL & ASSOCIATES**
Raphael and Associates, CA license #6003462
Direct: (201) 537-7238 |Office: (201) 729-0200
jvinci@raphaelandassociates.com

cc:    Marks Marine Insurance Agency
       Attn: Chris Plum
       PO Box 5002
       Deptford, NJ 08096



WHERE YOU NEED US, **WHEN YOU NEED US**

Email: chris@insuretheboat.com

Jim Ayers
jim@ayershaidt.com



NORTH CAROLINA               IN THE GENERAL COURT OF JUSTICE
                                  SUPERIOR COURT DIVISION
CARTERET COUNTY            FILE NO.: 25CV001780-150

| | |
|---|---|
| GRADY F. SMITH and WAVETAMER GYROS, LLC; | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) AFFIDAVIT OF SERVICE BY ) FEDERAL EXPRESS DELIVERY ) |
| SUTTON NATIONAL INSURANCE COMPANY; KEMAH CAPITAL HOLDING, LLC d/b/a KEMAH MARINE; MARKS INSURANCE GROUP, INC. d/b/a MARKS MARINE INSURANCE AGENCY; and KENNETH MARKS; | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

James M. Ayers II, being duly sworn, deposes and says:

1.     He is an attorney at law whose address is 307 Metcalf Street, New Bern, North Carolina, and he is the attorney for the Plaintiff and is counsel of record in this action.

2.     A Complaint was filed in this action on or about June 30, 2025. A copy of said document and a Summons was deposited with a designated delivery service as authorized under North Carolina General Statute §1A-1, Rule 4, to Defendant, Kenneth Marks at 203 N. Princeton Avenue, Wenonah, New Jersey 08090.

3.     The aforesaid copy of said document was in fact received by said Defendant on July 2, 2025, at 1:54 p.m.., as evidenced by the delivery receipt attached as Exhibit "A."

This the 2nd day of July, 2025.

James M. Ayers II
N.C. State Bar No. 18085
jim@ayershaidt.com
Jack W. Ayers
N.C. State Bar No. 62240
jack@ayershaidt.com
Ayers & Haidt, P.A.
307 Metcalf Street
P.O. Box 1544
New Bern, NC 28563
Telephone (252) 638-2955
Facsimile (252) 638-3293

Sworn to and subscribed
before me this the 2nd
day of July , 20 25 .

_____
NOTARY PUBLIC

My Commission Expires: 12-3-29

RHONDA C ACOSTA
NOTARY
PUBLIC
CRAVEN COUNTY, NC



July 02, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 818520078051



| Delivery Information: | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Residence |
| Signed for by: | Signature not required | Delivery Location: | |
| Service type: | FedEx Express Saver | | |
| Special Handling: | Deliver Weekday; Residential Delivery | | WENONAH, NJ, |
| | | Delivery date: | Jul 2, 2025 13:54 |

| Shipping Information: | | | |
|---|---|---|---|
| Tracking number: | 818520078051 | Ship Date: | Jun 30, 2025 |
| | | Weight: | 2.0 LB/0.91 KG |
| Recipient: | | Shipper: | |
| WENONAH, NJ, US, | | NEW BERN, NC, US, | |
| Reference | | GRADY SMITH | |

Proof-of-delivery details appear below; however, no signature is available for this FedEx Express shipment because a signature was not required.

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.

**FedEx** Express

Package
**US Airbill**

FedEx Tracking Number **8185 2007 8051**

From DIN. **0215**

**1 From** Please print and press hard.

Date **6-10-05**

Sender's FedEx Account Number **2115-6133-5**
SENDER'S FEDEX ACCOUNT NUMBER ONLY

Sender's Name **R. Acosta**          Phone **253 638-2955**

Company **AYERS AND HAIRI PA**

Address **307 METCALF ST**                    Dept./Floor/Suite/Room

City **NEW BERN**     State **NC**  ZIP **28562-5687**

**Your Internal Billing Reference**     **Gardner Smith**
First 24 characters will appear on invoice.

**2 To**

Recipient's Name **Kenneth Marks**          Phone (

Company

Address **203 N. Princeton Avenue**          Dept./Floor/Suite/Room
We cannot deliver to P.O. boxes or P.O. ZIP codes.

Address
Use this line for the HOLD location address or for continuation of your shipping address.

City **Wenonah**     State **NJ**  ZIP **08090**

**0141662646**

**Ship, Track, and Pay for it. All online.**
fedex.com.

**4 Express Package Service**     *To most locations.*

☐ FedEx First Overnight
☐ FedEx Priority Overnight
☑ FedEx Standard Overnight

Packages up to 150 lbs.
For packages over 150 lbs., use the FedEx Express Freight US Airbill.

☐ FedEx 2Day A.M.
☐ FedEx 2Day
☐ FedEx Express Saver

**5 Packaging**     *Declared value limit $500.*

☑ FedEx Envelope*     ☐ FedEx Pak*     ☐ FedEx Box     ☐ FedEx Tube     ☐ Other

**6 Special Handling and Delivery Signature Options**

☐ Saturday Delivery

Does this shipment contain dangerous goods?
☐ No     ☐ Yes     ☐ Yes (Dry Ice)     ☐ Cargo Aircraft Only

**7 Payment** Bill to:
☑ Sender     ☐ Recipient     ☐ Third Party     Enter FedEx Acct. No. below.

FedEx Acct. No.

Total Packages     Total Weight     Total Declared Value

MUR3

**611**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 2nd day of July, 2025, a copy of the foregoing document was served upon all parties to this action by depositing a copy of the same in an official depository of the U.S. Mail in a postage-paid envelope addressed as follows:

Sutton National Insurance Company
c/o Corporation Service Company, Registered Agent
1201 Hays Street
Tallahassee, FL 32301

Sutton National Insurance Company
c/o J. Angela Abels, Registered Agent
Kerr, Irvine, Rhodes & Ables
201 Robert S. Kerr Ave., Ste. 600
Oklahoma City, OK 73102

Kemah Capital Holdings, LLC d/b/a Kemah Marine
c/o Registered Agent, Corporation Service Co. d/b/a SCS-Lawyers Inc. Service Co.
211 E. 7th Street, Suite 620
Austin, TX 78701-3218

Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Company
c/o Michael Contarino, Registered Agent
71 Cooper Street
Woodbury, NJ 08096

Kenneth Marks
203 N. Princeton Avenue
Wenonah, NJ 08090

/s/James M. Ayers II
James M. Ayers II
N.C. State Bar No. 18085
jim@ayershaidt.com
Jack W. Ayers
N.C. State Bar No. 62240
jack@ayershaidt.com
Ayers & Haidt, P.A.
307 Metcalf Street
P.O. Box 1544
New Bern, NC 28563
Telephone (252) 638-2955
Facsimile (252) 638-3293

NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
                                  SUPERIOR COURT DIVISION
CARTERET COUNTY                   FILE NO.: 25CV001780-150

GRADY F. SMITH and WAVETAMER        )
GYROS, LLC;                         )
                                    )
        Plaintiffs,                 )
                                    )        AFFIDAVIT OF SERVICE BY
        v.                          )        FEDERAL EXPRESS DELIVERY
                                    )
SUTTON NATIONAL INSURANCE           )
COMPANY; KEMAH CAPITAL              )
HOLDING, LLC d/b/a KEMAH MARINE;    )
MARKS INSURANCE GROUP, INC.         )
d/b/a MARKS MARINE INSURANCE        )
AGENCY; and KENNETH MARKS;          )
                                    )
        Defendants.                 )

James M. Ayers II, being duly sworn, deposes and says:

1.      He is an attorney at law whose address is 307 Metcalf Street, New Bern, North

Carolina, and he is the attorney for the Plaintiff and is counsel of record in this action.

2.      A Complaint was filed in this action on or about June 30, 2025.  A copy of said

document and a Summons was deposited with a designated delivery service as authorized under

North Carolina General Statute §1A-1, Rule 4, to Defendant, Marks Insurance Group, Inc. d/b/a

Marks Marine Insurance Agency, c/o Michael Contarino, Registered Agent, at 71 Cooper Street,

Woodbury, New Jersey 08096.

3.      The aforesaid copy of said document was in fact received by said Defendant on

July 2, 2025, at 10:23 a.m., as evidenced by the delivery receipt attached as Exhibit "A."

RJ

This the 2nd day of July, 2025.

James M. Ayers II
N.C. State Bar No. 18085
jim@ayershaidt.com
Jack W. Ayers
N.C. State Bar No. 62240
jack@ayershaidt.com
Ayers & Haidt, P.A.
307 Metcalf Street
P.O. Box 1544
New Bern, NC 28563
Telephone (252) 638-2955
Facsimile (252) 638-3293

Sworn to and subscribed
before me this the 2nd
day of July , 20 25 .

NOTARY PUBLIC

My Commission Expires: 12-3-29



July 02, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 818520078073



| Delivery Information: | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Residence |
| Signed for by: | Signature not required | Delivery Location: | |
| Service type: | FedEx Express Saver | | |
| Special Handling: | Deliver Weekday | | WOODBURY, NJ, |
| | | Delivery date: | Jul 2, 2025 10:23 |

| Shipping Information: | | | |
|---|---|---|---|
| Tracking number: | 818520078073 | Ship Date: | Jun 30, 2025 |
| | | Weight: | 2.0 LB/0.91 KG |
| Recipient: | | Shipper: | |
| WOODBURY, NJ, US, | | NEW BERN, NC, US, | |
| Reference | GRADY SMITH | | |

Proof-of-delivery details appear below; however, no signature is available for this FedEx Express shipment because a signature was not required.

**FedEx** Express

Package
US Airbill

FedEx Tracking Number **8185 2007 8073**

### 1 From *Please print and press hard.*

Date **10-30-05**

Sender's FedEx Account Number

Sender's Name **R. Acosta**

Company **AYERS AND HAIDT PA**

Address **307 METCALF ST**

City **NEW BERN** State **NC** ZIP **28562-5687**

Phone **(252) 638-2955**

SENDER'S FEDEX ACCOUNT NUMBER ONLY

**2115-6133-5**

### 2 Your Internal Billing Reference

*First 24 characters will appear on invoice.*

### 3 To

Recipient's Name **Michael Contaldino, Registered Agent**

(Carolyn Smith)

Company **Mael's Insurance Group, Inc d/b/a**

**Maers Marine Insurance Agency**

Address **71 Cooper Street**

*We cannot deliver to P.O. boxes or P.O. ZIP codes.*

Dept./Floor/Suite/Room

City **Woodbury** State **NJ** ZIP **08096**

**01416626646**

Ship to: **Track it. Pay for it. All online.**
fedex.com

### 4 Express Package Service

From Date **0215**                                    *Transit times.*

- [ ] FedEx First Overnight
- [ ] FedEx Priority Overnight
- [ ] FedEx Standard Overnight

- [ ] FedEx 2Day A.M.
- [ ] FedEx 2Day
- [x] FedEx Express Saver

### 5 Packaging

- [x] FedEx Envelope
- [ ] FedEx Pak
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

### 6 Special Handling and Delivery Signature Options

- [ ] Saturday Delivery
- [ ] No Signature Required
- [ ] Direct Signature
- [ ] Indirect Signature

Does this shipment contain dangerous goods?

- [x] No
- [ ] Yes
- [ ] Yes
- [ ] Cargo Aircraft Only
- [ ] Dry Ice

### 7 Payment Bill to:

- [x] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

Total Packages    Total Weight    Total Declared Value

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 2nd day of July, 2025, a copy of the foregoing document was served upon all parties to this action by depositing a copy of the same in an official depository of the U.S. Mail in a postage-paid envelope addressed as follows:

Sutton National Insurance Company
c/o Corporation Service Company, Registered Agent
1201 Hays Street
Tallahassee, FL 32301

Sutton National Insurance Company
c/o J. Angela Abels, Registered Agent
Kerr, Irvine, Rhodes & Ables
201 Robert S. Kerr Ave., Ste. 600
Oklahoma City, OK 73102

Kemah Capital Holdings, LLC d/b/a Kemah Marine
c/o Registered Agent, Corporation Service Co. d/b/a SCS-Lawyers Inc. Service Co.
211 E. 7th Street, Suite 620
Austin, TX 78701-3218

Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Company
c/o Michael Contarino, Registered Agent
71 Cooper Street
Woodbury, NJ 08096

Kenneth Marks
203 N. Princeton Avenue
Wenonah, NJ 08090

**/s/James M. Ayers II**
James M. Ayers II
N.C. State Bar No. 18085
jim@ayershaidt.com
Jack W. Ayers
N.C. State Bar No. 62240
jack@ayershaidt.com
Ayers & Haidt, P.A.
307 Metcalf Street
P.O. Box 1544
New Bern, NC 28563
Telephone (252) 638-2955
Facsimile (252) 638-3293

NORTH CAROLINA

CARTERET COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 25CV001780-150

GRADY F. SMITH and WAVETAMER )
GYROS, LLC; )
    )
    Plaintiffs, )
    )
v. )
    )
SUTTON NATIONAL INSURANCE )
COMPANY; KEMAH CAPITAL )
HOLDING, LLC d/b/a KEMAH MARINE; )
MARKS INSURANCE GROUP, INC. )
d/b/a MARKS MARINE INSURANCE )
AGENCY; and KENNETH MARKS; )
    )
    Defendants. )

AFFIDAVIT OF SERVICE BY
FEDERAL EXPRESS DELIVERY

James M. Ayers II, being duly sworn, deposes and says:

1.      He is an attorney at law whose address is 307 Metcalf Street, New Bern, North

Carolina, and he is the attorney for the Plaintiff and is counsel of record in this action.

2.      A Complaint was filed in this action on or about June 30, 2025. A copy of said

document and a Summons was deposited with a designated delivery service as authorized under

North Carolina General Statute §1A-1, Rule 4, to Defendant, Sutton National Insurance

Company, c/o Corporation Service Company, Registered Agent, at 1201 Hays Street,

Tallahassee, Florida 32301.

3.      The aforesaid copy of said document was in fact received by said Defendant on

July 2, 2025, at 9:29 a.m., as evidenced by the delivery receipt attached as Exhibit "A."

RJ

This the 2nd day of July, 2025.

James M. Ayers II
N.C. State Bar No. 18085
jim@ayershaidt.com
Jack W. Ayers
N.C. State Bar No. 62240
jack@ayershaidt.com
Ayers & Haidt, P.A.
307 Metcalf Street
P.O. Box 1544
New Bern, NC 28563
Telephone (252) 638-2955
Facsimile (252) 638-3293

Sworn to and subscribed
before me this the 2nd
day of July, 20 25.

_____
NOTARY PUBLIC

My Commission Expires: 12-3-29

RHONDA C ACOSTA
NOTARY
PUBLIC
CRAVEN COUNTY, NC



July 02, 2025



Dear Customer,

The following is the proof-of-delivery for tracking number: 818520078062

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Shipping/Receiving |
| Signed for by: | S.Black | Delivery Location: | |
| Service type: | FedEx Express Saver | | |
| Special Handling: | Deliver Weekday | | TALLAHASSEE, FL, |
| | | Delivery date: | Jul 2, 2025 09:29 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 818520078062 | Ship Date: | Jun 30, 2025 |
| | | Weight: | 2.0 LB/0.91 KG |

| Recipient: | Shipper: |
|---|---|
| TALLAHASSEE, FL, US, | NEW BERN, NC, US, |

| Reference | GRADY SMITH |
|---|---|

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment.  Please check again later for a signature.

**FedEx** Express

**Package** US Airbill

FedEx Tracking Number  **8185 2007 8062**

**1 From** Please print and press hard.

Date 10-30-05

Sender's FedEx Account Number

Sender's Name R. AcoSta

Phone ( 252 ) 638-2955

Company AYERS AND HAIDT PA

Address 307 METCALF ST

City NEW BERN    State NC    ZIP 28562-5687

**2 Your Internal Billing Reference**

First 24 characters will appear on invoice.

**3 To**

Recipient's Name Canadian Service Company Registered Agent Grady Smith

Company Sutton National Insurance Company

Address 1201 Hays Street

City Tallahassee    State FL    ZIP 32301

0141662648

SENDER'S FEDEX ACCOUNT NUMBER ONLY

2115-6133-5

Dept./Floor/Suite/Room

**4 Express Package Service** *To most locations.*

From FedEx  0215

Packages up to 150 lbs. For packages over 150 lbs, use the FedEx Express Freight US Airbill.

☐ FedEx First Overnight
☐ FedEx Priority Overnight
☐ FedEx Standard Overnight

☐ FedEx 2Day A.M.
☐ FedEx 2Day
☑ FedEx Express Saver

☐ FedEx Envelope*
☐ FedEx Pak*
☐ FedEx Box
☐ FedEx Tube
☐ Other

**5 Packaging** *Declared value limit $500.*

**6 Special Handling and Delivery Signature Options**

☐ Saturday Delivery

☐ No Signature Required
☑ Direct Signature
☐ Indirect Signature

**Does this shipment contain dangerous goods?**

☑ No    ☐ Yes Shipper's Declaration not required    ☐ Yes As per attached Shipper's Declaration    ☐ Dry Ice

☐ Cargo Aircraft Only

**7 Payment** Bill to:

☑ Sender    ☐ Recipient    ☐ Third Party    ☐ Credit Card    ☐ Cash/Check

Total Packages    Total Weight    Total Declared Value

MUR3

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE, NO POUCH NEEDED.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 2nd day of July, 2025, a copy of the foregoing document was served upon all parties to this action by depositing a copy of the same in an official depository of the U.S. Mail in a postage-paid envelope addressed as follows:

Sutton National Insurance Company
c/o Corporation Service Company, Registered Agent
1201 Hays Street
Tallahassee, FL 32301

Sutton National Insurance Company
c/o J. Angela Abels, Registered Agent
Kerr, Irvine, Rhodes & Ables
201 Robert S. Kerr Ave., Ste. 600
Oklahoma City, OK 73102

Kemah Capital Holdings, LLC d/b/a Kemah Marine
c/o Registered Agent, Corporation Service Co. d/b/a SCS-Lawyers Inc. Service Co.
211 E. 7th Street, Suite 620
Austin, TX 78701-3218

Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Company
c/o Michael Contarino, Registered Agent
71 Cooper Street
Woodbury, NJ 08096

Kenneth Marks
203 N. Princeton Avenue
Wenonah, NJ 08090

**/s/James M. Ayers II**
James M. Ayers II
N.C. State Bar No. 18085
jim@ayershaidt.com
Jack W. Ayers
N.C. State Bar No. 62240
jack@ayershaidt.com
Ayers & Haidt, P.A.
307 Metcalf Street
P.O. Box 1544
New Bern, NC 28563
Telephone (252) 638-2955
Facsimile (252) 638-3293

NORTH CAROLINA

CARTERET COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 25CV001780-150

GRADY F. SMITH and WAVETAMER )
GYROS, LLC; )
                                     )
        Plaintiffs, )
                                     )
        v. )
                                     )
SUTTON NATIONAL INSURANCE )
COMPANY; KEMAH CAPITAL )
HOLDING, LLC d/b/a KEMAH MARINE; )
MARKS INSURANCE GROUP, INC. )
d/b/a MARKS MARINE INSURANCE )
AGENCY; and KENNETH MARKS; )
                                     )
        Defendants. )

AFFIDAVIT OF SERVICE BY
FEDERAL EXPRESS DELIVERY

James M. Ayers II, being duly sworn, deposes and says:

1.      He is an attorney at law whose address is 307 Metcalf Street, New Bern, North

Carolina, and he is the attorney for the Plaintiff and is counsel of record in this action.

2.      A Complaint was filed in this action on or about June 30, 2025.  A copy of said

document and a Summons was deposited with a designated delivery service as authorized under

North Carolina General Statute §1A-1, Rule 4, to Defendant, Kemah Capital Holding, LLC d/b/a

Kemah Marine, c/o Registered Agent, Corporation Service Co. d/b/a SCS-Lawyers Inc. Service

Co. at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

3.      The aforesaid copy of said document was in fact received by said Defendant on

July 2, 2025, at 8:47 a.m., as evidenced by the delivery receipt attached as Exhibit "A."

RJ

This the 2nd day of July, 2025.

_____
James M. Ayers II
N.C. State Bar No. 18085
jim@ayershaidt.com
Jack W. Ayers
N.C. State Bar No. 62240
jack@ayershaidt.com
Ayers & Haidt, P.A.
307 Metcalf Street
P.O. Box 1544
New Bern, NC 28563
Telephone (252) 638-2955
Facsimile (252) 638-3293

Sworn to and subscribed
before me this the 2nd
day of July , 20 25 .

_____
NOTARY PUBLIC

My Commission Expires: 12-3-29

RHONDA C ACOSTA
NOTARY
PUBLIC
CRAVEN COUNTY, NC.



July 02, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 818520078110



**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Shipping/Receiving |
| Signed for by: | B.Bazaco | Delivery Location: | |
| Service type: | FedEx Express Saver | | |
| Special Handling: | Deliver Weekday | | AUSTIN, TX, |
| | | Delivery date: | Jul 2, 2025 08:47 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 818520078110 | Ship Date: | Jun 30, 2025 |
| | | Weight: | 2.0 LB/0.91 KG |

| Recipient: | Shipper: |
|---|---|
| AUSTIN, TX, US, | NEW BERN, NC, US, |

| Reference | READY SMITH |
|---|---|

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment. Please check again later for a signature.

**FedEx** Express

# Package US Airbill

FedEx Tracking Number **8185 2007 8110**

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.

Form **0215**

**1 From** Please print and press hard.

Date **10-30-25**

Sender's FedEx Account Number **2115-6133-5**
SENDER'S FEDEX ACCOUNT NUMBER ONLY

Sender's Name **R. Acosta**    Phone ( **253** ) **638-2955**

Company **AYERS AND HAIDT PA**

Address **307 METCALF ST**

                                    Dept./Floor/Suite/Room

City **NEW BERN**    State **NC**    ZIP **28562-5687**

**2 Your Internal Billing Reference**
First 24 characters will appear on invoice.
**Company Smith**

**3 To**

Recipient's Name    Phone ( )

Company **Kemah Capital Holding LLC dba Kemah Marina**

Address **211 E 7th Street Suite 600**
We cannot deliver to P.O. boxes or P.O. ZIP codes.    Dept./Floor/Suite/Room

Address
Use this line for the HOLD location address or for continuation of your shipping address.

City **Austin**    State **TX**    ZIP **78701-3218**

01416262646

**Ship it. Track it. Pay for it. All online.**
Go to fedex.com

**4 Express Package Service** *To most locations.*

Packages up to 150 lbs.
For packages over 150 lbs, use the FedEx Express Freight US Airbill.

☐ FedEx First Overnight
Earliest next business morning delivery to select locations. Friday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

☐ FedEx Priority Overnight
Next business morning.* Friday shipments will be delivered on Monday unless SATURDAY Delivery is selected.

☐ FedEx Standard Overnight
Next business afternoon.*
Saturday Delivery NOT available.

☐ FedEx 2Day A.M.
Second business morning.*
Saturday Delivery NOT available.

☐ FedEx 2Day
Second business afternoon.* Thursday shipments will be delivered on Monday unless Saturday Delivery is selected.

☑ FedEx Express Saver
Third business day.*
Saturday Delivery NOT available.

**5 Packaging** *Declared value limit $500.*

☐ FedEx Envelope*    ☐ FedEx Pak*    ☐ FedEx Box    ☐ FedEx Tube    ☐ Other

**6 Special Handling and Delivery Signature Options** Free may apply. See the FedEx Service Guide.

☐ SATURDAY Delivery
NOT available with FedEx Standard Overnight, FedEx 2Day A.M., or FedEx Express Saver.

☐ No Signature Required
Package may be left without obtaining a signature for delivery.

☐ Direct Signature
Someone at recipient's address may sign for delivery.

☐ Indirect Signature
If no one is available at recipient's address, someone at a neighboring address may sign for delivery. For residential deliveries only.

**Does this shipment contain dangerous goods?**
One box must be checked.

☐ No    ☐ Yes As per attached Shipper's Declaration    ☐ Yes Shipper's Declaration not required    ☐ Dry Ice Dry Ice, 9, UN 1845, ___ kg    ☐ Cargo Aircraft Only

Dangerous goods (including dry ice) cannot be shipped in FedEx packaging.

**7 Payment** *Bill to:*

Enter FedEx Acct. No. or Credit Card No. below.

☑ Sender Acct No. in Section 1 will be billed    ☐ Recipient    ☐ Third Party

FedEx Acct. No.

Total Packages    Total Weight    Total Declared Value

                                        $            .00

Our liability is limited to US$100 unless you declare a higher value. See back for details. By using this Airbill you agree to the service conditions on the back of this Airbill and in the current FedEx Service Guide, including terms that limit our liability.

Rev. Date 4/22 • Part #161314 • ©1994–2022 FedEx • PRINTED IN U.S.A.

**611**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 2nd day of July, 2025, a copy of the foregoing document was served upon all parties to this action by depositing a copy of the same in an official depository of the U.S. Mail in a postage-paid envelope addressed as follows:

Sutton National Insurance Company
c/o Corporation Service Company, Registered Agent
1201 Hays Street
Tallahassee, FL 32301

Sutton National Insurance Company
c/o J. Angela Abels, Registered Agent
Kerr, Irvine, Rhodes & Ables
201 Robert S. Kerr Ave., Ste. 600
Oklahoma City, OK 73102

Kemah Capital Holdings, LLC d/b/a Kemah Marine
c/o Registered Agent, Corporation Service Co. d/b/a SCS-Lawyers Inc. Service Co.
211 E. 7th Street, Suite 620
Austin, TX 78701-3218

Marks Insurance Group, Inc. d/b/a Marks Marine Insurance Company
c/o Michael Contarino, Registered Agent
71 Cooper Street
Woodbury, NJ 08096

Kenneth Marks
203 N. Princeton Avenue
Wenonah, NJ 08090

**/s/James M. Ayers II**
James M. Ayers II
N.C. State Bar No. 18085
jim@ayershaidt.com
Jack W. Ayers
N.C. State Bar No. 62240
jack@ayershaidt.com
Ayers & Haidt, P.A.
307 Metcalf Street
P.O. Box 1544
New Bern, NC 28563
Telephone (252) 638-2955
Facsimile (252) 638-3293

NORTH CAROLINA

CARTERET COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 25CV001780-150

| | | |
|---|---|---|
| GRADY F. SMITH and WAVETAMER GYROS, LLC; | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE |
| SUTTON NATIONAL INSURANCE COMPANY; KEMAH CAPITAL HOLDING, LLC d/b/a KEMAH MARINE MARKS INSURANCE GROUP, INC. d/b/a MARKS MARINE INSURANCE AGENCY; and KENNETH MARKS; | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

---

Plaintiffs, Grady F. Smith and Wavetamer Gyros, LLC, pursuant to Rule 41 of the North

Carolina Rules of Civil Procedure, do hereby dismiss the claims against Defendants, Marks

Insurance Group, Inc. d/b/a Marks Marine Insurance Agency and Kenneth Marks, individually.

**This Dismissal is without prejudice.**

This 30th day of July, 2025.

*/s/James M. Ayers II*
James M. Ayers II
N.C. State Bar No. 18085
jim@ayershaidt.com
Jack W. Ayers
N.C. State Bar No. 62240
jack@ayershaidt.com
Ayers & Haidt, P.A.
307 Metcalf Street
P.O. Box 1544
New Bern, NC 28563
Telephone: (252) 638-2955
Facsimile: (252) 638-3293
*Attorneys for Plaintiffs Grady F. Smith*
*and Wavetamer Gyros, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 30th day of July, 2025, a copy of the foregoing document was served upon all parties to this action by e-mail and/or depositing a copy of the same in an official depository of the U.S. Mail in a postage-paid envelope addressed as follows:

> Seth Peter Buskirk, Esq.
> Clark, Newton & Evans, P.A.
> 509 Princess Street
> Wilmington, NC 28401
> Email: spb@clarknewton.com
>
> Jason R. Harris, Esq.
> Farrell Smith O'Connell Aarsheim Aprans LLP
> 321 North Front Street, Suite 104
> Wilmington, North Carolina 28401
> Email: jharris@fsofirm.com

***/s/James M. Ayers II***
James M. Ayers II
N.C. State Bar No. 18085
jim@ayershaidt.com
Jack W. Ayers
N.C. State Bar No. 62240
jack@ayershaidt.com
Ayers & Haidt, P.A.
307 Metcalf Street
P.O. Box 1544
New Bern, NC 28563
Telephone: (252) 638-2955
Facsimile: (252) 638-3293
*Attorneys for Plaintiffs Grady F. Smith*
*and Wavetamer Gyros, LLC*

Dated: 1 August 2025

CLARK, NEWTON & EVANS, P.A.

/s/ Seth P. Buskirk
N.C. State Bar No. 36664
509 Princess St.
Wilmington, NC 28401
(910) 762-8743 Telephone
(910) 762-6206 Fax
spb@clarknewton.com
*Attorney for Defendants Sutton National Insurance Company and Kemah Capital Holding, LLC d/b/a Kemah Marine*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon the parties through the court's electronic filing or case management system at an email address of record with the court:

James M. Ayers, II
Jack W. Ayers
Ayers & Haidt, P.A.
307 Metcalf St.
New Bern, NC 28563
jim@ayershaidt.com
jack@ayershaidt.com
*Attorneys for Plaintiffs*

Dated: 1August 2025

CLARK, NEWTON & EVANS, P.A.

/s/ Seth P. Buskirk
N.C. State Bar No. 36664
509 Princess St.
Wilmington, NC 28401
(910) 762-8743 Telephone
(910) 762-6206 Fax
spb@clarknewton.com
*Attorney for Defendants Sutton National Insurance Company and Kemah Capital Holding, LLC d/b/a Kemah Marine*